# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CYBERWORLD ENTERPRISE<br>TECHNOLOGIES, INC.<br>d/b/a/TEKSTROM, INC., | ) <br> ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | Civil Action No. 06-cv-402 KAJ |
| v. | ) <br> ) | |
| MICHAEL CHERTOFF, Secretary<br>of the Department of Homeland Security;<br>ALBERTO GONZALES, Attorney<br>General; ELAINE L. CHAO, Secretary<br>of the Department of Labor;<br>EMILIO T. GONZALEZ,<br>Director, United States Citizenship and<br>Immigration Services; | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| Defendants. | ) <br> ) | |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

H. Ronald Klasko
KLASKO, RULON, STOCK & SELTZER, LLP
1800 John F. Kennedy Blvd., Suite 1700
Philadelphia, PA 19103
Phone: 215-825-8600
Admitted *Pro Hac Vice*

Stephen J. Neuberger, Esq. (DE Bar # 4440)
The Neuberger Firm
Two East Seventh Street, Suite 302
Wilmington, DE 19801-3707
Phone: 302-655-0582

Counsel for Cyberworld, Inc.

Dated: September 8, 2006

TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF CITATIONS | ii |
| STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING | 1 |
| SUMMARY OF ARGUMENT | 2 |
| STATEMENT OF FACTS | 4 |
| ARGUMENT | 6 |
|    A. Plaintiff is Likely to Prevail on the Merits | 7 |
|       1. The Administrator's Failure to Comply with Statutory and Regulatory Requirements for the Issuance of the Determination within Thirty Days, Without any Good Cause Shown, Deprived the DOL of Jurisdiction over the Action. | 7 |
|       2. The Administrator's Delays, which Seriously Prejudiced Plaintiff, Create a Valid Defense of Laches. | 14 |
|       3. As a Matter of Statutory Construction, Legislative History and Case Precedent, Debarment is a Discretionary and Not a Mandatory Sanction for Failure to Make Secondary Displacement Inquiries. | 16 |
|       4. The Language of DOL's Regulation Does Not Provide for Mandatory Debarment Where the Sole Violation is Failure to Make Secondary Displacement Inquiries. | 22 |
|       5. Plaintiff is not Required to Make Displacement Inquiries of any Companies Unknown to Plaintiff at which Another/Secondary Employer Places an H-1B Worker. | 26 |
|    B. Plaintiff Will Suffer Irreparable Harm in the Absence of the Requested Injunctive Relief | 30 |
|    C. A Preliminary Injunction Will Cause No Harm to the Defendants or Any Third Party. | 32 |
|    D. The Public Interest Favors the Requested Injunctive Relief | 34 |
| CONCLUSION | 34 |

TABLE OF CITATIONS

Cases

*Atlantic Cleaners & Dyers, Inc. v. United States*
    286 U.S. 427 (1932)...................................................17

*Barnhart v. Peabody Coal Co.*
    123 S. Ct. 748 (2003).............................................10, 12

*Bernard v. Brown*
    4 Vet. App. 384 (1993)..............................................24

*Board of Veterans Appeals*, Docket No. 95-28 091
    1998 BVA LEXIS 128252, BVA 98-18281 (Jun. 15, 1998)...........23

*Board of Veterans Appeals*, Docket No. 97-08296
    1999 BVA LEXIS 27084; BVA 99-27124 (Sept. 22, 1999)............24

*Board of Veterans Appeals*, Docket No. 99-05 941
    2001 BVA LEXIS 25481; BVA 2001-07081 (Mar. 9, 2001)..........24

*Brown-Mitchell v. Kansas City Power & Light Co.*
    267 F.3d 825 (8th Cir. 2001)......................................14

*Brock v. Pierce County*
    476 U.S. 253 (1986)...........................................10, 11, 12

*Cannon v. Univ. of Health Sciences*
    710 F.2d 351 (7th Cir. 1983).......................................16

*City of Olmsted Falls v. U.S. Envtl. Prot. Agency*
    233 F. Supp. 2d 890 (N.D. Ohio 2002)..............................20

*City of Seabrook v. Costle*
    659 F.2d 1371 (5th Cir. 1981).....................................20

*Clean Ocean Action v. York*
    57 F.3d 328 (3d. Cir. 1995).................................6, 31, 33

*Dep't of Labor vs. Nurses PRN of Denver*
    ARB No. 97-131, ALJ No. 94-ARN-1 (June 30, 1999)...............13

*Dubois v. Thomas*
    820 F.2d 943 (8th Cir. 1987)...............................................20

*EEOC v. Bray Lumber Co.*
    478 F. Supp. 993 (M.D. Ga. 1979).....................................16

*EEOC v. Massey-Ferguson, Inc.*
    622 F.2d 271 (7th Cir. 1980)............................................16

*EEOC v. Liberty Loan Corp.*
    584 F.2d 853 (8th Cir. 1978)............................................16

*EEOC v. Peterson, Howell & Heather*
    702 F. Supp. 1213 (D. Md. 1989)..................................15, 16

*Ft. Worth Nat'l Corp. v. Fed. Sav. & Loan Ins. Corp.*
    469 F.2d 47 (5th Cir. 1972)...........................................21

*Heckler v. Chaney*
    470 U.S. 821 (1985)......................................................20

*Helvering v. Stockholms Enskilda Bank*
    293 U.S. 84 (1934) .......................................................17

*Holy Trinity Church v. United States*
    143 U.S. 457 (1892).......................................................28

*Howard v. Apfel*
    17 F. Supp. 2d 955 (W.D. Miss. 1998)................................10

*Inmates of Attica v. Rockefeller*
    477 F.2d 375 (2d Cir. 1973)............................................21

*Kolbusz-Kijne v. Technical Career Inst.*
    1994 WL 897284 (Dep't. of Labor Off. Adm. App. July 19, 1994)...21

*In the Matter of Eva Kolbusz-Kijne*
    1995 WL 848103 (Dep't. of Labor Off. Adm. App. July 3, 1995).....21

*Lehigh Valley Manpower Program v. Donovan*
    718 F.2d 99 (3d Cir. 1983)............................................9, 15

*Loden and Company, Inc.,*
    14 OSAHRC 667, 1974 OSHD (CCH) P19,115, 1975 OSAHRC
    LEXIS 832, (Jan. 6, 1975)..............................................28

*Maldonado v. Houstoun*
    177 F.R.D. 311 (E.D. Penn. 1997)………………………..…………31

*Maldonado v. Houstoun*
    157 F.3d 179 (3d Cir. 1998)……………………………..…...6, 31

*Mickles & Mickles v. Apfel*
    1999 U.S. Dist. LEXIS 6907 (N.D. Cal. 1999)………………..……...10

*Mohasco Corp. v. Silver*
    447 U.S. 807 (1980)………………………………………….…8, 11, 12

*Norris v. United States*
    257 U.S. 77 (1921)………………………………………….…..16

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*
    290 F.3d 578 (3d Cir. 2002)…………………………………....6, 33, 34

*Otto Kahn v. Sec'y Dep't of Veteran Affairs*
    2003 EEOPUB LEXIS 4875 (Aug. 19, 2003)……….…..………….28

*Planned Parenthood of Delaware v. Brady*
    2003 U.S. Dist. LEXIS 10099 (D. Del. June 9, 2003)………………33

*Playboy v. United States*
    918 F. Supp. 813 (D. Del. 1996)………….…………...7, 31, 32, 33, 34

*Santee Sioux Tribe of Nebraska v. Dep't of Labor*
    780 F.2d 1356 (8th Cir. 1985)……………………...……………9

*School District of Allentown v. Marshall*
    657 F.2d 16 (3d Cir. 1981)………………………………………9

*Shire U.S., Inc. v. Barr Labs., Inc.*
    329 F.3d 348 (3d Cir. 2003)………………………………………..6

*Sierra Club v. Whitman*
    268 F.3d 898, 902 (9th Cir. 2001)………………………….…..20

*Sokolove v. City of Rehoboth Beach*
    2005 U.S. Dist. LEXIS (D. Del. July 28, 2005)………………….......6

*Sorenson v. Sec'y of the Treasury*
    475 U.S. 851 (1986)………………………………………………17

*Sullivan v. Stroop*
   496 U.S. 478 (1990)..................................................................17

*Traunig v. Dep't of Veteran Affairs*
   1993 U.S. App. LEXIS 30017 (Fed. Cir. Nov. 18, 1993)..............16

*United States v. Brown*
   333 U.S. 18 (1948)..................................................................28

*United States v. Ritsema*
   31 F.3d 559 (7th Cir. 1994)......................................................28

*United States v. Various Tracts of Land*
   74 F.3d 197 (10th Cir. 1996).....................................................21

*Whitfield v. Anheuser-Busch*
   820 F.2d 243 (8th Cir. 1987).....................................................14

*Wood v. Herman*
   104 F. Supp. 2d 43 (D.D.C. 2000)........................................19, 21


Statutes, Regulations, Congressional Record

8 U.S.C. § 1182...........................................................................*passim*

20 C.F.R. § 655...........................................................................*passim*

65 Fed. Reg. 80110 (Dec. 20, 2000).....................................18, 19, 27

57 Fed. Reg. 1316 (Jan. 13, 1992)...............................................18

LEXSEE 137 Cong. Rec. S. 18242 (Nov. 26, 1991)........................18, 19

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Cyberworld brings this action pursuant to 5 U.S.C. § 702, *et seq*, and 28 U.S.C. §§ 2201 and 2202, as a party suffering legal wrong by a United States agency, after the decision of the Department of Labor to refer Cyberworld to the Department of Homeland Security (DHS) for prohibition of approving H-1B petitions for a period of one year.

Cyberworld is a Delaware-based information technology consulting and staffing company that is dependent on its ability to petition for H-1B nonimmigrants. As such, Cyberworld is classified as an "H-1B dependent employer" under § 212(n)(3) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(n)(3), in that more than fifteen percent of its workforce is H-1B nonimmigrants. In fact, in Cyberworld's case, more than ninety percent of its workforce is H-1B nonimmigrants, and the debarment prevents Cyberworld from extending the legal status and employment authorization of those employees.

The Secretary of the Department of Labor (DOL) is authorized to regulate and sanction H-1B dependent employers who displace United States workers, or fail to inquire into whether a United States worker might be displaced. These sanctions can include monetary civil penalties, as well as the referral to the Department of Homeland Security (DHS) for prohibition of approving H-1B petitions for a period of time.

Cyberworld was investigated and sanctioned by the Wage and Hour Division of DOL for failing to inquire into whether the H-1B nonimmigrants they were placing at a secondary employer were, in fact, displacing United States workers. The Administrator, Wage and Hour Division ("Administrator") ordered that Cyberworld must pay a monetary penalty of $3,400, and would be referred to the Attorney General for

mandatory debarment from filing immigrant and nonimmigrant petitions for employees for a period of one year.

Cyberworld appealed the Administrator's decision to an Administrative Law Judge, which affirmed the findings and sanctions of the Administrator. Subsequent to the decision of the ALJ, Cyberworld filed an appeal with the Administrative Review Board to review the ALJ's decision. The ARB affirmed the ALD's decision and order, making it final on May 24, 2006.

On June 26, 2006, Cyberworld filed a complaint for injunctive and declaratory relief in this Court, seeking to preliminarily and permanently enjoin the Attorney General and the Department of Homeland Security/United States Citizenship and Immigration Services from debarring Cyberworld and refusing to approve or to allow the filing of petitions filed by Cyberworld. In addition, the complaint seeks to preliminarily and permanently enjoin the DOL Employment and Training Administration from invalidating Cyberworld's labor condition applications, and from debarring the filing or approval of any new labor condition applications or labor certification applications.

All named Defendants have been served, in addition to the local United States Attorney's Office. The case has been assigned docket number Civil Action Number 06-cv-402 KAJ.

## SUMMARY OF ARGUMENT

1.    An order enjoining the Determination of the DOL and the Final Decision and Order of the ARB should be granted because Plaintiff is likely to prevail on the merits of its complaint.

2.     An order enjoining the Determination of the DOL and the Final Decision and Order of the ARB should be granted because as an H-1B dependent employer, a prohibition on approval of H-1B petitions filed for a period of one year will unquestionably lead to Plaintiff's dissolution, causing irreparable harm.

3.     An order enjoining the Determination of the DOL and the Final Decision and Order of the ARB should be granted because it will cause no harm to the Defendants or any third party, and a balancing of harms greatly favors the Plaintiff.

4.     An order enjoining the Determination of the DOL and the Final Decision and Order of the ARB should be granted because the public interest favors a grant.

5.     The Determination of the DOL and Final Decision and Order of the ARB should be reversed because the Administrator's failure to comply with statutory and regulatory requirements for the issuance of the Determination within thirty days, without any good cause shown, deprived the DOL of jurisdiction of the action.

6.     The Determination of the DOL and Final Decision and Order of the ARB should be reversed because the delays of the Administrator in making a final determination seriously prejudiced Plaintiff, and created a valid defense of laches.

7.     The Determination of the DOL and the Final Decision and Order of the ARB should be reversed because as a matter of statutory construction, legislative history and case precedent, debarment is a discretionary and not a mandatory sanction for failure to make secondary displacement inquiries.

8.     The Determination of the DOL and the Final Decision and Order of the ARB should be reversed, because the language of the DOL's regulation does not provide for

3

mandatory debarment where the sole violation is failure to make secondary displacement inquiries.

9.     The Determination of the DOL and the Final Decision and Order of the ARB should be reversed because Plaintiff is not required to make displacement inquiries of any companies unknown to plaintiff at which another/secondary employer places an H-1B worker.

**STATEMENT OF FACTS**

Cyberworld is an information technology consulting and staffing agency that is reliant on its ability to petition for and hire foreign nationals. *See* Ex. A, Decl. of Charanjeet Minhas at ¶ 3.  Cyberworld trains individuals in the application and development of software testing tools.  *Id.*  Cyberworld hires individuals who have been trained to use these specialized programs, and provides their services to other companies and businesses in the United States who are in need of expertise in the use of these specialized programs.  *Id.*  To find and staff a sufficient number of qualified workers in its specialized field, Cyberworld files a large number of petitions and applications for nonimmigrant and immigrant workers.  *Id.* at ¶ 4.  Since the company's inception in 1999, Cyberworld has petitioned for and hired approximately 600 nonimmigrant workers with H-1B visas. *See id.* at ¶ 5.

On August 9, 2001, a complaint was filed against Cyberworld, leading to an investigation by the DOL.  On November 5, 2001, Cyberworld was notified by the DOL Wage Hour Division that it was being investigated.  *See* Ex. B, DOL Investigation Notification Letter.  Cyberworld was fully cooperative with the investigation, and conceded that it had failed to make the requisite inquiries. *See* Ex. C, DOL

4

Questionnaire, at 10; *see also* Ex. D, H-1B Investigation Narrative Report. The investigation by the DOL of Cyberworld ultimately revealed that no United States workers were displaced and that Cyberworld paid proper wages to all employees, but that it had failed to make inquiries of secondary employers regarding the displacement of similarly employed U.S. workers at such work sites. *See id.*

The DOL Administrator took no action until March 20, 2003, when the Administrator notified Cyberworld that the investigation had disclosed a violation of 20 C.F.R. § 655.78. *See* Ex. E, Administrator Determination. According to the Administrator, in violation of one of the Labor Condition Application conditions, Cyberworld had failed to make the required displacement inquiry of a secondary employer, after the secondary employer placed the H-1B holder with another employer. *Id.* Due to the violation, the Administrator sought to impose a civil money penalty of $3,400 and directed Cyberworld to comply with 20 C.F.R. § 655.78 in the future. *Id.* Additionally, under the provisions of 20 C.F.R. § 655.855(a), the Administrator intended to inform both the DOL, the Employment and Training Administration (ETA) and the Attorney General of the violation. *Id.* Finally, upon notification, the Attorney General would be required to deny any petitions filed by Cyberworld for a period of at least one year, and the DOL Employment and Training Administration would be required to invalidate any current LCA and not accept any new LCAs for filing. *Id.*

In response, on April 2, 2003, Cyberworld requested a hearing with the Office of Administrative Law Judges to dispute the decision of the Administrator. On December 23, 2003, the ALJ affirmed the Administrator's Determination Letter, ordering that Cyberworld must pay a civil monetary penalty of $3,400, and that the Attorney General,

the DOL, and the ETA must be notified of the violation resulting in debarment for one

year.  *See* Ex. F, ALJ Initial Decision and Order.

Subsequent to the decision of the ALJ, Cyberworld filed an appeal with the

Administrative Review Board to review the ALJ's decision.  The ARB affirmed the

ALJ's decision and order, making it final on May 24, 2006.  *See* Ex. G, ARB Final

Decision and Order.

Cyberworld currently has approximately seventy employees.  *See* Ex. A at ¶ 6.  Of

these seventy employees, approximately ninety percent of them are working as

nonimmigrant or immigrant alien workers.  *Id.*  Cyberworld currently has approximately

sixty five H-1B petitions for nonimmigrant workers pending.  *Id.* at ¶ 7.  Cyberworld

currently has approximately thirty labor certification applications pending.  *Id.* at ¶ 9.

### ARGUMENT

In order to prevail on a motion for preliminary injunction, the Court must consider

four factors: (1) the likelihood of success on the merits; (2) the extent of irreparable harm

from the conduct complained of; (3) the extent of irreparable harm to the defendants if a

preliminary injunction is issued; and, (4) the public interest.  *Clean Ocean Action v. York*,

57 F.3d 328, 331 (3d Cir. 1995).  *See also Novartis Consumer Health, Inc. v. Johnson &*

*Johnson-Merck Consumer Pharms. Co*, 290 F.3d 578, (3d Cir. 2002); *Shire U.S., Inc. v.*

*Barr Labs., Inc.*, 329 F.3d 348 (3d. Cir. 2003); *Maldonado v. Houstoun,* 157 F.3d 179 (3d

Cir. 1998); *Sokolove v. City of Rehoboth Beach*, 2005 U.S. Dist. LEXIS (D. Del. July 28,

2005).

The issues presented for review in the context of this motion are relatively clear.

This Court must determine whether or not Cyberworld is likely to succeed on its claims

that the Administrator, the ALJ, and the ARB misinterpreted the intent of Congress and the language of the regulations and the INA regarding whether debarment is a mandatory or discretionary penalty. In addition, it must determine whether the harm to Cyberworld absent an injunction would be irreparable, whether the government would suffer harm by the granting of an injunction, and the effects an injunction could have on the public interest.

### A. Plaintiff is Likely to Prevail on the Merits

In considering the evidence and arguments presented for a preliminary injunction, the Court must decide whether Plaintiff Cyberworld "has raised serious and substantial questions" as to whether the decisions and penalties issued by the Administrator, the ALJ, and the ARB correctly follow the INA and the governing regulations. *Playboy v. United States*, 918 F. Supp. 813, 821 (D. Del. Mar. 7, 1996). The questions and issues raised by the Plaintiff regarding proper interpretation of the INA and the corresponding regulations regarding enforcement of violations are, in fact, serious and substantial.

1. **The Administrator's Failure to Comply with Statutory and Regulatory Requirements for the Issuance of the Determination within Thirty Days, Without any Good Cause Shown, Deprived the DOL of Jurisdiction over the Action.**

The Immigration and Nationality Act (INA) requires that the Secretary shall provide, within 30 days after the date a complaint is filed, for a determination as to whether or not a reasonable basis exists to make a finding. *See* 8 U.S.C. § 1182(n)(2)(B). Federal regulations also provide that a determination must be issued within 30 calendar days of the date of filing of the complaint. *See* 20 C.F.R. § 655.806(a)(3). Although the complaint in this action was filed on August 9, 2001, the Determination was not filed

until March 20, 2003 -- well over <u>nineteen months</u> after the complaint was filed. This far

exceeded the 30 calendar days provided for by the statute and federal regulations.

The statute and regulation use the word "shall," which indicates that the 30-day

limit is mandatory. For example, in *Mohasco Corp. v. Silver*, 447 U.S. 807, 825-26

(1980), the Supreme Court construed the term "shall" in 42 U.S.C. §§ 2000e-5(c) and (e)

to impose a mandatory requirement of filing a charge with the EEOC within the statutory

time limits. The Court found that it could not simply interject an additional 60 day period

in a statutory scheme in which "Congress prescribed a series of deadlines measured by

numbers of days -- rather than months or years" -- and had to respect the "compromise

embodied in the words chosen by Congress." *Id.* Similarly, here the statutory framework

and the 30-day limit was the result of just such a Congressional compromise involving

the delicate balance of the interests of protecting U.S. workers with the interests of ease

of use by employers. The 30-day limit that resulted from this compromise cannot simply

be ignored.

Although the federal regulations do provide for some exceptions to the 30-day

rule, the INA does not provide for any exceptions; and the exceptions are therefore *ultra

vires*[1]. Even if the exceptions provided for by the federal regulations were not *ultra vires*,

they do not apply here. 20 C.F.R. § 655.806(a)(3) provides that the "time for the

investigation may be increased with the consent of the employer and the complainant, or

if, for reasons outside of the control of the Administrator, the Administrator needs

additional time to obtain information needed from the employer or other sources to

---

[1]    The Administrative Law Judge in the present case has ruled that, where the
regulations are arguably inconsistent with the statutory language and, arguably, do
not encompass Respondent's violation, the statutory language governs. Ex. F,
ALJ Initial Decision and Order, at 12.

determine whether a violation has occurred." It is undisputed that Plaintiff at no time

consented to the increase in time for the investigation. It is also undisputed that there

were no reasons outside of the control of the Administrator that it needed additional time

to obtain information from Plaintiff or other sources. Plaintiff complied with each of

WHD's requests promptly and within three days. *See* Ex. F, ALJ Initial Decision and

Order, at 18.

    The mandatory nature of the 30-day limit indicates that there is no jurisdiction to

act after the 30-day limit has passed. For example, in *Lehigh Valley Manpower Program

v. Donovan*, 718 F.2d 99, 102 (3d Cir. 1983), the Third Circuit held that the Grant

Officer's failure to comply with a 120-day limit of a statute, Section 301 of the

Comprehensive Employment and Training Act, 29 U.S.C. § 871(a), divested the

Secretary of power to act. Noting that Congress was concerned with delay and wanted

the Secretary to promptly resolve complaints, the court stated that whether the party had

suffered prejudice from the delay is not relevant. *Id.; see also School District of

Allentown v. Marshall*, 657 F.2d 16 (3d Cir. 1981) (court enforced limitation period for

filing an administrative complaint and rejected agency attempt to overlook deficiency).

    The failure of parties to comply with deadlines set forth in statutes and

administrative regulations often results in dismissal of the case, even if the statute does

not explicitly state that failure to meet the deadline deprives the agency of jurisdiction.

For example, in *Santee Sioux Tribe of Nebraska v. Dep't of Labor*, 780 F.2d 1356, 1357

(8th Cir. 1985), the Comprehensive Employment and Training Act statute, codified at 29

U.S.C. § 816(i)(2), provided that a hearing must be requested within 10 days of receipt of

the Secretary's notice. The party did not file a request for a hearing until approximately

three years after the 10-day period.  Although the Department conceded that the 10-day

time deadline was not jurisdictional and can be excused in exceptional circumstances, the

court still found that the Administrative Law Judge did not abuse his discretion in finding

a lack of exceptional circumstances in this case and in dismissing the request for a

hearing as untimely.  *Id.*  Similarly here, although the statute does not explicitly provide

that the 30-day deadline is jurisdictional, the action should have been dismissed because

the Determination was untimely, there has been no consent by the Plaintiff and WHD has

shown no reasons for the delay "outside of the control" of the Administrator.  *See also*

*Howard v. Apfel,* 17 F. Supp. 2d 955, 960-61 (W.D. Miss. 1998) (ALJ dismissed request

for hearing because it was not received within the 60 day deadline provided by statute

and no good cause was shown for extension of deadline); *Mickles & Mickles v. Apfel,*

1999 U.S. Dist. LEXIS 6907, at *4-5, *11 (N.D. Cal. 1999) (affirming ALJ decision

dismissing claim because of failure to comply with 60-day time period to request a

hearing and finding that no good cause was shown for extension of time period).

    *Brock v. Pierce County,* 476 U.S. 253 (1986), and *Barnhart v. Peabody Coal Co.,*

123 S. Ct. 748 (2003), do not support the proposition that the statutory and regulatory

deadlines are meaningless even in the face of completely unaccounted for and

unjustifiable delays on the part of the government agency.

    *Brock,* 476 U.S. 253, is, by the express language of the Supreme Court, limited to

the facts of that particular case:

> "We need not, and do not, hold that a statutory deadline for
> agency action can never bar later action unless that
> consequence is stated explicitly in the statute.  In this case,
> we need not go beyond the normal indicia of congressional
> intent to conclude that 106(b) permits the Secretary to

> recover misspent funds after the 120-day deadline has
> expired."

*Id.* at 267 n.9. The holding in the *Brock* case that the Court was not divested of

jurisdiction was premised upon a number of factors, most especially the fact that (a) the

Secretary had a very substantial task to complete, (b) the Secretary was unable to

complete that task for factors beyond the Secretary's control and (c) voiding agency

action in that particular case would prejudice important rights of the taxpaying public.  In

addition, the Court cited legislative history that undercut any argument that the Secretary

should be divested of jurisdiction.

Significantly, the Supreme Court made clear that its holding in *Mohasco Corp. v.

Silver*, 447 U.S. 807 (1980), remains valid precedent.  A review of the three grounds

given by the Court for distinguishing *Mohasco* reveals that the facts of the present case

are dictated by the results of *Mohasco* rather than by the results of *Brock*.  Specifically, in

*Brock*, the Secretary was required to resolve the entire dispute within 120 days, whereas

in *Mohasco* (as in the present case) the Secretary's burden was far less substantial since it

only had to file the complaint within the requisite time period.  Secondly, the Court

distinguished *Mohasco* because in *Brock* the Secretary proved facts beyond the

Secretary's control for failing to meet the deadline.  In the present case, the Administrator

offered no facts beyond its control for failing to meet the deadline and, in fact, refused to

answer discovery leading to a determination of whether there were any factors beyond

the Administrator's control.  Finally, the *Brock* Court stated that, unlike in *Mohasco*

which involved prejudice only to the respondent, in *Brock* the rights of the taxpaying

public would be prejudiced by the loss of $373,000.  In the present case as in *Mohasco*,

11

only the Plaintiff was prejudiced by the delay, and there is no prejudice to the taxpaying public that would result in the sacrifice of important public rights.

Unlike the *Brock* case, which involves a deadline on the filing of a complaint imposed upon the Secretary of Labor, the *Barnhart* case has no relationship to the Department of Labor or to a deadline imposed by statute for the filing of a complaint. Rather, it involves a question of the timeframe within which the Commissioner of Social Security shall be responsible for assigning coal industry retirees eligible for benefits to operating companies which would be responsible for funding the assigned beneficiary's benefits under the Coal Industry Retiree Health Benefit Act of 1992. In that case, the Court received a full factual record detailing the reasons why the Commissioner of Social Security could not comply with the statutory assignment deadline. The determination involved whether the failure to meet the deadline should require a refund by the government of $57,000,000 in premium payments, with a permanent charge on public funds, heavier financial burdens on other companies, siphoning funds set aside for different public purposes and rendering beneficiaries permanent wards of public funds rather than assigning them to the appropriate companies. The Court expressly noted the three important factors in common between *Brock* and *Barnhart*. First, in both cases the responsibility imposed on the government agency is "substantial." Second, in both cases the agency was able to prove factors beyond its control for failing to meet the statutory deadline. Finally, rights of the taxpaying public would be prejudiced by enforcing the statutory deadline.

None of these factors exists in the Plaintiff's case. As in *Mohasco*, the agency's responsibility was not "substantial" since it only had to file a charging document rather

than resolve an entire dispute. In the present case, the agency showed no factors beyond

its control for the delay and, in fact, has refused to respond to discovery raising that issue.

Finally, in the present case, there is no prejudice to the rights of the taxpaying public

created by enforcement of the statutory deadline.

The ALJ cited *Dep't of Labor vs. Nurses PRN of Denver*, ARB No. 97-131, ALJ

No. 94-ARN-1, at 8 (June 30, 1999), apparently for the proposition that the thirty day

requirement is meaningless and that the Administrator does not need to provide any

reason whatsoever for an unduly and unreasonably lengthy delay that prejudiced the

Plaintiff. However, that is not a proper reading of that decision. The language of that

decision expressly referenced the possibility that "conducting an investigation and issuing

a determination may pose unanticipated difficulties, and the ability of the Administrator

to meet the limitation may be subject to factors beyond his control." As previously

indicated, the Plaintiff's case involved no unanticipated difficulties and involved no

factors beyond the Administrator's control. It simply involved an unreasonable delay for

no reason whatsoever. Plaintiff submits that no precedent of the Administrative Review

Board stands for this proposition; and if any precedent of the Administrative Review

Board did stand for this proposition, it would not stand muster under Supreme Court

precedent.

In fact, the facts of the present care are perhaps as compelling as any that might

be conceived for enforcement of the statutory deadline. For no reason whatsoever, the

agency took more than 1-1/2 years beyond the required 30 days to issue a determination.

The sole charge levied against the Plaintiff was admitted by the Plaintiff at the very

commencement of the investigation. The government and the Administrative Law Judge

admitted that the Plaintiff was completely cooperative and provided timely information at all times during the investigation. The government provided no reasons for its delay. The government and the Administrative Law Judge admitted that the Plaintiff was in full compliance with the complex set of governing regulations other than the conceded failure to make a secondary displacement inquiry. The government and the Administrative Law Judge also admitted that there was no actual displacement and that all proper wages were paid to all employees. Yet the government, with the sanction of the ALJ and the ARB, imposed on Plaintiff a one-year bar to filing any immigration applications or petitions which, as a practical matter, will put Plaintiff out of business. Based upon these facts that are not in dispute in the present case, there is absolutely no basis for failing to enforce the statutory and regulatory deadlines. Rather, enforcing the deadlines in the Plaintiff's case would be consistent with the statute, regulation and Supreme Court precedent.

## 2. The Administrator's Delays, which Seriously Prejudiced Plaintiff, Create a Valid Defense of Laches

The DOL's action is also barred by the equitable doctrine of laches. Laches is used to bar a lawsuit when the plaintiff is guilty of 1) unreasonable and unexcused delay 2) resulting in prejudice to the defendant. *Whitfield v. Anheuser-Busch*, 820 F.2d 243, 244-45 (8th Cir. 1987) (finding that the length of delay was unreasonable); *Brown-Mitchell v. Kansas City Power & Light Co.*, 267 F.3d 825, 827-28 (8th Cir. 2001) (finding that plaintiff's delay in filing suit was neither reasonable nor excusable). Courts have found that laches applies when the delay is the fault of an administrative agency. *Brown-Mitchell*, 267 F.3d at 828; *Whitfield v. Anheuser-Busch*, 820 F.2d at 244-45.

For no asserted reason, it took the Administrator 19 months -- 18 months more than the prescribed 30 day maximum -- to issue the Determination. This was clearly an

unreasonable and unexcused delay. Plaintiff at no time consented to an extension of the

investigation. The Administrator has provided no reasons or excuses for the delay. The

investigation was straightforward and simple, and Plaintiff responded promptly to every

request for information from the Administrator. By February 2002, sixteen Cyberworld

employees had provided information to the investigator. Plaintiff's Answers and

Objections to Plaintiff's First Set of Interrogatories at 8. However, there was an

inexplicable full ten-month lapse between the last recorded event (Cyberworld faxing

cover sheets to the investigator) in May 2002 and the issuance of the Determination in

March 2003. [Plaintiff's Answers and Objections to Plaintiff's First Set of

Interrogatories at 8.]

Although prejudice is not a requirement for a time limit to be enforced, *see, e.g.,*

*Lehigh Valley Manpower Program v. Donovan*, 718 F.2d 99, 102 (3d Cir. 1983), here the

Plaintiff was severely prejudiced by the Administrator's extensive delay. During the

nineteen months between the filing of the Complaint and the issuance of the

Determination, employees who could serve as witnesses or who had knowledge of the

events at issue left the company. The employees who are still present at the company are

not able to testify as effectively due to the passage of time. As a result, Cyberworld's

ability to defend the action was diminished, and it has been materially prejudiced. *See,*

*e.g., EEOC v. Peterson, Howell & Heather*, 702 F. Supp. 1213, 1223 (D. Md. 1989).

Furthermore, Plaintiff was prejudiced by having to operate in a state of uncertainty for an

unduly lengthy period of time, which in practical effect extended the period of time

during which Plaintiff was penalized by the government's action.

Therefore, the WHD's action against Plaintiff should be dismissed on the basis of laches. Courts routinely find delays to be unreasonable and dismiss actions on that basis. For example, in *EEOC v. Peterson, Howell & Heather,* 702 F. Supp. at 1223, the court concluded that the defendants established substantial prejudice in defense of their claims and granted summary judgment on the grounds of laches. *See also Norris v. United States,* 257 U.S. 77, 82 (1921) (delay of eleven months was deemed sufficient to preclude plaintiff's recovery); *Cannon v. Univ. of Health Sciences,* 710 F.2d 351, 363 (7th Cir. 1983) (finding that summary judgment in favor of defendants was supported by district judge's findings that the defendants were prejudiced by Cannon's unreasonable and inexcusable delay in bringing the action); *EEOC v. Massey-Ferguson, Inc.,* 622 F.2d 271, 276 (7th Cir. 1980) (upholding finding that delay between the time charges were filed with the agency and the time the complaint was filed was unreasonable, but there was genuine issue of material fact as to whether company suffered prejudice); *EEOC v. Liberty Loan Corp.,* 584 F.2d 853, 855-57 (8th Cir. 1978) (granting summary judgment because the government had not met its evidentiary burden to explain why the delay had occurred and the company would be unfairly prejudiced); *EEOC v. Bray Lumber Co.,* 478 F. Supp. 993, 997-98 (M.D. Ga. 1979) (granting summary judgment dismissing suit because agency delay prejudiced company); *Traunig v. Dep't of Veteran Affairs,* 1993 U.S. App. LEXIS 30017, at *3 (Fed. Cir. Nov. 18, 1993) (board dismissed petition on ground that it was barred by laches).

**3. As a Matter of Statutory Construction, Legislative History and Case Precedent, Debarment is a Discretionary and Not a Mandatory Sanction for Failure to Make Secondary Displacement Inquiries.**

As the two Decisions and Orders of the ALJ in this case were adopted by the Administrative Review Board, the agency's legal position held that the same term ("shall") used by Congress in the same statutory section was intended by Congress to be discretionary when applied to the obligations of the Administrator and mandatory when applied against the Plaintiff. This is clearly an incongruous result, which violates all canons of statutory construction that mandate that the same term be interpreted consistently within the same statutory scheme.

If the word "shall" is considered directory, rather than mandatory, in 8 U.S.C. § 1182(n)(2)(B), then that same word should likewise be considered merely directory in the following paragraph of the same section. It is a well established judicial presumption that "identical words used in different parts of the same act are intended to have the same meaning." *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990) (quoting *Sorenson v. Secretary of the Treasury*, 475 U.S. 851, 860 (1986) (quoting *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 87 (1934) (quoting *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932))). In the present context, Congress used the identical word, "shall," to describe the actions to be taken both in 8 U.S.C. § 1182(n)(2)(B) and in 8 U.S.C. § 1182(n)(2)(C)(i)(I). Therefore, in keeping with the presumption that Congress intended that word to have the same meaning in both subsections, the Secretary should have given the same meaning to the word "shall" in both places.

Specifically, the ALJ ruled that the requirement that the Secretary "shall" issue a Determination within thirty (30) calendar days of the issuance of the Complaint is discretionary and not mandatory. 8 U.S.C. § 1182(n)(2)(B). However, when interpreting the language of the same statute, and the same section, and the same subsection, and the

same subparagraph, which states that the Secretary "shall" notify the Attorney General of

a failure to make secondary displacement inquiries (8 U.S.C. §1182(n)(2)(C)(i)(I)), and

the Attorney General "shall not" approve the employer's visa petitions for at least one (1)

year (8 U.S.C. §1182(n)(2)(C)(i)(II)), the word "shall" is determined to be mandatory,

not allowing for the exercise of discretion.

This result is incorrect as a matter of statutory construction, legislative history and

case law.  It is also incorrect as a matter of policy, especially as applied to the facts in the

present case.

The legislative history indicates that Congress viewed debarment as a possible

penalty, but not a required one.  For example, the Congressional Record states that the

sanction for secondary displacement "is a $1,000 civil penalty per violation and a

*possible* debarment."  65 Fed. Reg. 80110, 80150 (Dec. 20, 2000).  The Congressional

Record also clarifies that the one year bar "*may*" be imposed and emphasizes that there

must be a *knowing* disregard for the requirements and an *intentional* violation:

> Other administrative remedies, including civil fines and
> debarment, *may* be imposed on a wage complaint only if
> the Secretary find a willful failure to meet a condition...by
> which we mean a *knowing disregard* for the requirements
> of these subparagraphs.  If an employer establishes a good
> faith basis for its determinations, that will be a complete
> defense to a charge of willful failure to meet its obligations.
> Of course, if it is determined that the employer
> *intentionally* violated its other obligations in regard to the
> H-1B worker, administrative remedies *may* also be
> imposed, such as a one year bar on petitioning for alien
> workers.

LEXSEE 137 Cong. Rec. S. 18242, *18243 (Nov. 26, 1991) (emphasis added); 57 Fed.

Reg. 1316 (Jan. 13, 1992).  Plaintiff did not demonstrate a knowing disregard of the

requirements and did not intentionally violate any of the requirements.  Pursuant to the

legislative history, Congress intended that, even where an intentional violation occurred, a one year bar "may" be imposed.

It is clear that Congress wanted sanctions imposed only if the placing employer knew or had reason to know of displacement at the time of placement and did not want to sanction employers where displacement resulted from a good faith or inadvertent failure to follow requirements. "[A]n H-1B employer may be debarred for a secondary displacement 'only if the Secretary of Labor found that such placing employer . . knew or had reason to know of such displacement at the time of the placement of the nonimmigrant with the other employer.'" 65 Fed. Reg. 80110, 80113 (Dec. 20, 2000). Therefore, where no displacement occurred, it follows that Congress would not have wanted such harsh sanctions to be imposed. "[W]e clarify the standards by which complaints against employers of H1-B workers are to be handled and that the complaint process must differentiate between inadvertent or good faith failures or mistakes on the one hand and willful violations of employer obligations on the other." LEXSEE 137 Cong. Rec. S. 18242, at *18245. Plaintiff at no time willfully violated its employer obligations, and any failure to adhere to requirements was an inadvertent or good faith failure that, in any case, did not result in any displacement of U.S. workers.

Furthermore, the courts have found that the use of the word "shall" in a statute does not indicate a mandatory action when used in the administrative enforcement context. See Wood v. Herman, 104 F. Supp. 2d 43, 47 (D.D.C. 2000) (recognizing that the use of the word "shall" as a command "has not been applied in cases involving administrative enforcement decisions").

For example, in *Heckler v. Chaney*, 470 U.S. 821, 831 (1985), the United States Supreme Court refused to impose mandatory enforcement action on the FDA even though the statute utilized the word "shall" (in the phrase "shall be imprisoned"). The *Chaney* court reasoned, "An agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. . . The agency generally cannot act against each technical violation of the statute it is charged with enforcing." *Id.* Similarly, in *Dubois v. Thomas*, 820 F.2d 943 (8th Cir. 1987), the court construed the use of "shall" in the Federal Water Pollution Control Act as imposing a discretionary rather than mandatory duty, stating that although the use of the word "shall" may arguably be read to impose a mandatory duty, its use does not automatically result in the finding of a nondiscretionary duty. *See also City of Seabrook v. Costle*, 659 F.2d 1371, 1374-75 n.3 (5th Cir. 1981) (reading "shall" in the Clean Air Act provision as discretionary and not imposing a mandatory enforcement obligation, stating "when duties within the traditional realm of prosecutorial discretion are involved, the courts have not found this maxim controlling."); *Sierra Club v. Whitman*, 268 F.3d 898, 902 (9th Cir. 2001) (concluding that both the duty to investigate and make findings as well as the duty to initiate enforcement proceedings upon the finding of a violation are discretionary acts despite use of word "shall"); *City of Olmsted Falls v. U.S. Envtl. Prot. Agency*, 233 F. Supp. 2d 890, 901-904 (N.D. Ohio 2002) (finding the reasoning of the Eighth and Ninth Circuits persuasive, court found that section 309[2] of the Federal Water Pollution Control

---

[2]    33 U.S.C. § 1319(a)(3) provided: "Whenever on the basis of any information available to him the Administrator finds that any person is in violation of [permit conditions], he shall issue an order requiring such person to comply with such section or requirement, or he shall bring a civil action in accordance with subsection (b) of this section." *Id.* at 901-02.

Act imposes no mandatory duty on the Administrator to investigate or take enforcement action despite the use of the word "shall"); *Inmates of Attica v. Rockefeller*, 477 F.2d 375, 381 (2d Cir. 1973) (use of "shall" does not preclude exercise of prosecutorial discretion).

This principle has been applied when examining other types of statutes as well. For example, the court in *Wood v. Herman*, 104 F. Supp. 2d 43, 47 (D.D.C. 2000), found that the use of the word "shall" in § 11(c) of the Occupational Safety and Health Act, 29 U.S.C. § 660(c), imposed discretionary rather than mandatory duties. *See also United States v. Various Tracts of Land*, 74 F.3d 197, 198 (10th Cir. 1996) (rejecting argument that use of "shall" in 28 U.S.C. § 1355(c) imposes mandatory duty); *Ft. Worth Nat'l Corp. v. Fed. Sav. & Loan Ins. Corp.*, 469 F.2d 47, 58 (5th Cir. 1972).

The Administrative Law Judge cited *Kolbusz-Kijne v. Technical Career Inst.*, 1994 WL 897284 (Dep't of Labor Off. Adm. App. July 19, 1994), apparently for the conclusion that debarment is a mandatory sanction. However, in that case, and *In the Matter of Eva Kolbusz-Kijne*, 1995 WL 848103, at 7 n.3 (Dep't of Labor Off. Adm. App., July 3, 1995), the Office of Administrative Appeals found simply that debarment in the facts of that case was appropriate. Those cases do not stand for the proposition that debarment is never discretionary under any circumstances. Since Plaintiff is not claiming that debarment can never be imposed, those cases are not relevant or dispositive.

In conclusion, a finding that debarment is a discretionary remedy is not inconsistent with the statutory scheme and case precedent, and is completely consistent with longstanding precedent finding in favor of agency prosecutorial discretion.

**4. The Language of DOL's Regulation Does Not Provide for Mandatory Debarment Where the Sole Violation is Failure to Make Secondary Displacement Inquiries.**

The Determination's proposed remedy stated that the "U.S. Department of Labor's Employment and Training Administration and the Attorney General ('AG') shall be notified of this violation" and cites 20 C.F.R. § 655.855(a). It also stated the "AG, upon notification, is required to deny any petitions filed by Cyberworld under 8 U.S.C. § 1154, § 1184(c) for a period of at least one year from the date of receipt of the notification" and cites 20 C.F.R. § 655.855(c)). *See* Determination's Summary of Violation and Remedy. The regulation cited in the Determination, 20 C.F.R. § 655.855(a)[3], provides that "[v]iolations requiring notification to the Attorney General are identified in § 655.810(f)." 20 C.F.R. § 655.855(a) (2003). However, Cyberworld's alleged sole violation--failure to make secondary displacement inquiry--is referenced in 20 C.F.R. § 655.738, which is not referenced to at all in § 655.810(f).[4] Another

---

[3]    The entirety of 20 C.F.R. § 655.855(a) is as follows:

> The Administrator shall notify the Attorney General and ETA of the final determination of any violation requiring that the Attorney General not approve petitions filed by an employer. The Administrator's notification will address the type of violation committed by the employer and the appropriate statutory period for disqualification of the employer from approval of petitions. *Violations requiring notification to the Attorney General are identified in § 655.810(f).* 20 C.F.R. § 655.855(a) (2003) (emphasis added).

[4]    20 C.F.R. § 655.810(f) provides:

> The civil money penalties, back wages, and/or any other remedy(ies) determined by the Administrator to be appropriate are immediately due for payment or performance upon the assessment by the Administrator, or upon the decision by an administrative law judge where a hearing is timely requested, or upon the decision by the Secretary where review is granted. The employer shall remit the amount of the civil money penalty by certified check or money order made payable to the order of "Wage and Hour Division, Labor." The remittance shall be delivered or mailed to the Wage and Hour Division office in the manner directed in the Administrator's notice of determination. The payment or

regulation cited in the Determination, 20 C.F.R. § 655.855(c), provides: "The Attorney

General, upon receipt of notification from the Administrator pursuant to paragraph (a) of

this section, shall not approve petitions filed with respect to that employer under sections

204 or 214(c) of the INA . . . for nonimmigrants to be employed by the employer, <u>for the

period of time provided by the Act and described in § 655.810(f)</u>."  However, <u>nowhere</u> in

§ 655.810(f) is there any description of the one year time period in the Administrator's

Determination.

Therefore, by the plain language of the regulations cited in the Administrator's

Determination, Cyberworld's alleged violation of § 655.738 is not among the violations

requiring notification to the Attorney General for the denial of petitions for a one-year

period.  Although another regulation, 20 C.F.R. § 655.810(d)(1), does identify violations

for which denial of petitions may apply, the Administrator did not cite this provision in

its Determination; and it therefore cannot be applied.  Nowhere in the Administrator's

Determination is there any citation to 20 CFR § 655.810(d), and the regulations that are

cited in the Determination do not refer in any way to § 655.810(d).

A remedy that is not authorized by the regulations cited in the Determination

cannot be applied.  For example, in *Board of Veterans Appeals*, 1998 BVA LEXIS

128252, BVA 98-18281, at *1-2 (Jun. 15, 1998), the statement of the case and

subsequent supplemental statement of the case did not cite particular regulations.  The

Board of Veterans Appeals found that the "agency of original jurisdiction should

reference the appropriate legal authorities, and the veteran should be provided notice of

---

performance of any other remedy prescribed by the Administrator shall follow
procedures established by the Administrator. Distribution of back wages shall be
administered in accordance with existing procedures established by the
Administrator.  20 C.F.R. § 655.810(f) (2003).

such reliance, in any event, so that he is properly informed of the basis of the decision and can respond appropriately in his argument and presentation of evidence." *See also, e.g, Board of Veterans Appeals*, Docket No. 99-05 941, 2001 BVA LEXIS 25481; BVA 2001-07081, at *5 (Mar. 9, 2001) (citing *Bernard v. Brown*, 4 Vet. App. 384, 394 (1993)) (Board remanded case because issued document did not include citation to the laws and regulations concerning finality of agency of original jurisdiction decisions, and omission may have been prejudicial to the veteran); *Board of Veterans Appeals*, Docket No. 97-08296, 1999 BVA LEXIS 27084; BVA 99-27124, at *17-18 (Sept. 22, 1999) (whether BVA must remand an appeal to the agency of original jurisdiction to cure a deficiency in the statement of the case relating to citation of statutes and regulations will depend upon the circumstances of the individual case). Further, the regulations that are cited by the Administrator, such as § 655.855, cannot be read to include § 655.810(d) when the plain language refers only to § 655.810(f). It would be prejudicial to Plaintiff for it to be forced to guess which violation and remedies were being alleged and to respond to regulations not cited in the Determination.

Even if § 655.810(d) were applied absent any citation to it, it is not clear that it applies to violations regarding displacement inquiries and, in any case, should be viewed as discretionary rather than mandatory. Section 655.810(d), "Disqualification from approval of petitions," provides: "The Administrator shall notify the Attorney General pursuant to § 655.855 that the employer shall be disqualified from approval of any petitions filed by, or on behalf of, the employer pursuant to section 204 or section 214(c)

24

of the INA for the following periods: (1) at least one year for violation(s) of any of the provisions specified in paragraph (b)(1)(i)[5] through (iii) of this section."

Section 655.810(b)(1)(i), referred to for the civil penalty and the one year bar, lists a violation "pertaining to . . . displacement of U.S. workers" but does <u>not</u> include violations pertaining to "failure to make secondary displacement inquiries". Displacement of U.S. workers (20 C.F.R. § 655.805(a)(7)) is clearly a distinct violation from failure to make displacement inquiry(20 C.F.R. § 655.805(a)(8)).  Therefore, from the plain language of the regulation, the penalty and one year bar should not be imposed on Plaintiff for the alleged failure to make a displacement inquiry.

The ALJ summarily dismissed all of these deficiencies in the Administrator's Determination and in the regulatory scheme on the basis that the regulatory errors have a "de minimis" effect and that the statutory language overrides any contrary regulatory language.  Acknowledging that the regulatory section which Plaintiff was charged with violating and pursuant to which the Administrator asserts its authority to impose a mandatory debarment does not, in fact, reference any violation committed by Plaintiff, the ALJ asserted that this is "an administrative error" on the part of the Department of Labor that should not prejudice the Department of Labor.  One reason given by the ALJ is that the statute should override the regulation.  However, here again, Plaintiff is subject to a "heads I win, tails you lose" fate.  When the statute requires action by the Administrator within thirty days as an absolute requirement with no exceptions, the contrary language of the regulation that provides exceptions is considered to be

_____

[5]    20 C.F.R. 655.810(b)(1)(i) provides:  "The Administrator may assess civil money penalties for violations as follows: (1) an amount not to exceed $1,000 per violation for: (i) A violation pertaining to strike/lockout (§ 655.733) or displacement of U.S. workers (§ 655.738)."

governing when it is to the prejudice of the Plaintiff. However, when the regulatory language prejudices the Department of Labor, the ALJ applies the language of the statute to the prejudice of the Plaintiff.

Perhaps aware of this inconsistency, the ALJ presented an alternative argument. Specifically, he noted that another regulatory section provides the authority that is not provided for in the regulatory section cited in the Determination. However, as noted above, the alternative regulatory section which was not cited--20 C.F.R. § 655.810(b)-- applies to displacement of U.S. workers, which the ALJ expressly found did not occur as a result of the Plaintiff's actions. Here again, the ALJ went back to the statute to clarify "regulatory uncertainty." The ALJ further tried to clarify the regulatory uncertainty by engaging in a rather convoluted regulatory analysis that concludes that the regulatory language referencing "displacement of U.S. workers" could be deemed to include the completely separate regulatory violation of "secondary displacement," and that if it is deemed to include "secondary displacement," it should be deemed to include the failure to make "secondary displacement inquiries."

**5.    Plaintiff is not Required to Make Displacement Inquiries of any Companies Unknown to Plaintiff at which Another/Secondary Employer Places an H-1B Worker.**

The Plaintiff was found to be subject to mandatory debarment for failure to make secondary displacement inquiries of secondary/tertiary employers the existence of which are unknown to Plaintiff. The ALJ stated that, even though it is impossible for the Plaintiff to know the existence of these employers, and even though Plaintiff does not and cannot obtain knowledge of the relevant facts, Plaintiff is subject to mandatory debarment under a strict liability theory since, under the ALJ's interpretation, there is no knowledge element contained in the violation.

26

The ALJ asserted that the Plaintiff could meet its obligation through insertion of a non-displacement contract clause, even though the clause might be in a contract with a secondary employer which itself has no knowledge of or authority with respect to the ultimate placement of the employees. Such an interpretation results in form being placed completely over substance, and it has no practical impact on any goal that Congress might have sought to obtain.

Plaintiff does not dispute that where displacement has occurred, the H-1B employer can be sanctioned, even if it is the secondary/other employer rather than the H-1B employer who displaces U.S. workers. However, Congress also declared in legislative history that debarment should be imposed only when there has been a knowing or intentional displacement. *See* 65 Fed. Reg. 80110, 80113 (Dec. 20, 2000) ("[A]n H-1B employer may be debarred for a secondary displacement 'only if the Secretary of Labor found that such placing employer . . . knew or had reason to know of such displacement at the time of the placement of the nonimmigrant with the other employer.'"); 8 U.S.C. § 1182(n)(2)(E) (the Attorney General may impose a sanction "only if the Secretary of labor found that such placing employer (i) knew or had reason to know of such displacement at the time of the placement of the nonimmigrant with the other employer..."). Therefore, Congress could not have intended that a debarment be imposed when there was no knowing or intentional violation of a regulatory requirement and no displacement even occurred.

Furthermore, the requirement of inquiry applies "in every case where there will be indicia of an employment relationship". However, in the present case, Plaintiff does not

know if there will be "indicia of an employment relationship" since Plaintiff does not even know where the employees will be placed.

The ALJ referred to one particular employee [Mr. Sharma].  Plaintiff does not dispute that it ultimately became aware that Mr. Sharma worked at Skire, Inc.  However, the inquiry obligation arises before the placement.  There is nothing in the record to indicate that, at the relevant time, Plaintiff knew that Mr. Sharma would actually work at Skire, Inc. or whether Skire, Inc. would place Mr. Sharma elsewhere.

20 C.F.R. § 655.738 should not be construed to allow for sanctions to be imposed against Cyberworld for what is not under Cyberworld's control or within its knowledge. *See, e.g., United States v. Brown*, 333 U.S. 18, 27 (1948) ("No rule of construction necessitates our acceptance of an interpretation resulting in patently absurd consequences.").  The legislators could not have intended such an interpretation of the regulations that penalizes an employer for failing to do something that is not within its control.  Any interpretation of 20 C.F.R. § 655.738 that would impose these impracticable or impossible obligations on Cyberworld should be rejected.  *Cf. United States v. Ritsema*, 31 F.3d 559, 566-67 (1994) (citing *Holy Trinity Church v. United States*, 143 U.S. 457, 459 (1892)); *see also, e.g., Loden and Company, Inc.*, 14 OSAHRC 667, 1974 OSHD (CCH) P19,115, 1975 OSAHRC LEXIS at *17 (Jan. 6, 1975) (Plaintiff was not in violation of section 5(a)(2) of the Act for failure to conform with 29 C.F.R. 1926.451(a)(4) due to a valid defense that compliance with the regulation was impossible under the circumstances); *Otto Kahn v. Sec'y Dep't of Veteran Affairs*, Appeal No. 01A10663, 2003 EEOPUB LEXIS 4875, at *6 (Aug. 19, 2003) (settlement agreement reformed, as it was impossible for the agency to comply with its obligation under certain

provision to arrange for packing and shipping of petitioner's belongings to his address of record).

The regulations do not address whether the H-1B dependent employer is subject to a finding of violation if the secondary employer places the worker at another company which then displaces U.S. workers. Even if Cyberworld were to make all the necessary inquiries pursuant to § 655.738(d) and (e), it still cannot prevent other/ secondary employers from placing workers at other companies that then displace U.S. workers or fail to make the displacement inquiries of yet other companies at which they place the worker. In this situation, which is the normal business practice of Cyberworld, it would be impossible for Cyberworld to know at which company the worker ultimately is employed down the chain of employers.

It is clear from the text of 8 U.S.C. § 1182(n)(2)(E) that Congress did not intend for H-1B-dependent employers to be sanctioned when they did not know or had no reason to know of such far-removed displacement:

> If an H-1B-dependent employer places a nonexempt H-1B nonimmigrant with another employer . . . and the other employer has displaced or displaces a United States worker employed by such other employer . . ., such displacement shall be considered . . . a failure, by the placing employer, to meet a condition . . .; except that the <u>attorney general may impose a sanction</u> described in subclause (ii) of subparagraph (C)(i), (C)(ii), or (C)(iii) <u>only if the Secretary of labor found that such placing employer (i) knew or had reason to know of such displacement at the time of the placement of the nonimmigrant with the other employer</u>; or (ii) has been subject to a sanction under this subparagraph based upon a previous placement of an H-1B nonimmigrant with the same other employer.

8 U.S.C. § 1182(n)(2)(E) (emphasis added). Therefore, if Congress did not want sanctions imposed when the placing employer did not know or had no

reason to know of displacement by an other/secondary employer with whom the

placing employer placed the worker, it follows that Congress did not want

sanctions imposed when there is no displacement and when the sanctioned

conduct is failure to make a displacement inquiry even further down the chain--

by an employer with whom the other/secondary employer placed the worker.  In

such a situation, a company such as Cyberworld would be even less likely to

know and have even less reason to know of any displacement that occurred,

since it would have no means of communication with those companies.

Therefore, 20 C.F.R. § 655.738 should not be interpreted as requiring Cyberworld

to follow procedures outlined in § 655.738 with companies at which an other/secondary

employer places the worker, the identity of which is unclear and to which Cyberworld

has no access.

As is clear in the above discussion, Plaintiff Cyberworld has raised serious and

substantial questions as to whether the decisions and penalties issued by the

Adminstrator, the ALJ, and the ARB correctly follow the INA and the governing

regulations.

### B. Plaintiff Will Suffer Irreparable Harm in the Absence of the Requested Injunctive Relief

Unless the rulings of the Administrator, the ALJ, and the ARB are enjoined, and

in the event that Plaintiff is debarred from filing petitions with U.S. Citizenship and

Immigration Services, from having pending petitions approved, and from filing labor

condition applications and labor certification applications with DOL, Plaintiff will lose its

workforce, be unable to recruit new employees, and be forced to terminate its business operations.

Precedent case law has established that significant financial losses and threats to the continued existence to an applicant for injunctive relief qualify as "irreparable harm." *Maldonado v. Houstoun,* 177 F.R.D. 311, at 333 (E.D. Penn. October 6, 1997), *aff'd in Maldonado v. Houstoun,* 157 F.3d 179 (3d Cir. 1998); *Playboy v. United States,* 918 F. Supp. 813, 822; *Clean Ocean Action v. York,* 57 F.3d 328, 334 (3d Cir. 1995). In *Playboy,* the movant was a cable-television company that showed compliance with a regulation of the Federal Communications Commission would effectively turn its channel off the air for long periods of time. As such, the Court found that cessation of operations and the financial harm it would suffer without a preliminary injunction prohibiting enforcement of the regulation was irreparable.

In *Maldonado,* the movant was a class of individuals who sought welfare relief, and were restricted in the amount of benefits received because they had not lived as a resident of the state for a period of 12 months prior to applying. The Court found that the plaintiffs would be irreparably harmed because of the loss of much of their cash assistance benefits, as well as their ability to adequately survive, and were granted a preliminary injunction accordingly.

In Cyberworld's case, the financial harms and threats to its continued existence caused by a continued debarment would be severe and catastrophic. Cyberworld's very existence depends on its ability to file petitions and labor condition applications for employees. Cyberworld currently has approximately seventy employees. Of these seventy employees, approximately ninety percent of them are working as nonimmigrant

31

or immigrant alien workers. Since the date of the decision of the ARB, Cyberworld has had zero labor certification applications approved. *See* Ex. A, Declaration of Charanjeet Minhas. Labor certification applications are a requisite step to applying for immigrant petitions for alien workers. Maintaining the ability to file immigrant and nonimmigrant petitions for alien workers lies at the heart of Cyberworld's business.

The harms done to Cyberworld without an injunction are factually similar to those in *Playboy* and *Maldonado*. The harms suffered by Cyberworld without an injunction of the Administrator's Determination are unquestionably irreparable, as it will lose its workforce, be unable to recruit new employees and be forced to terminate its business operations. As an H-1B dependent employer, a prohibition on approval of H-1B petitions filed for a period of one year will unquestionably lead to Cyberworld's dissolution. It is a penalty that is starkly disproportionate to the alleged transgression, considering that no worker was displaced or adversely affected, there was no history of previous violations, the failure to make the required inquiry was neither substantial nor willful, Cyberworld promptly and fully cooperated with the investigation, and it has since initiated procedures to assure future compliance.

**C. A Preliminary Injunction Will Cause No Harm to the Defendants or Any Third Party.**

Allowing a preliminary injunction of debarment will harm neither the Defendants nor any third party. Throughout Plaintiff's operations as a consulting and staffing agency, and during its history of frequent petitions for foreign employees, no US or nonimmigrant worker was adversely affected by its mistake in failing to make secondary inquiries. The Plaintiff's alleged violation was an administrative error. The Plaintiff has

32

no history of any previous violation. The failure to make the secondary displacement inquiries was neither substantial nor willful. The Plaintiff had no knowledge nor way of obtaining knowledge of the ultimate placement of the employees. The Plaintiff promptly cooperated with the Administrator's investigation. The Plaintiff has since initiated procedures to assure future compliance.

The order of referral for debarment by the Administrator, the ALJ, and the ARB was a strictly punitive measure issued for Plaintiff's alleged failure to properly follow procedure and regulations. The order was not issued due to any harm caused to a US or nonimmigrant worker. Allowing for Plaintiff to continue to petition for employees and file labor condition applications following established filing procedures during this litigation will cause no harm to Defendants nor any other third party, including US or nonimmigrant workers.

Before granting an injunction, a district court must also balance the relative harm to the parties, i.e., the potential injury to the plaintiff if an injunction does not issue versus the potential injury to the defendant if the injunction is issued. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002). Courts have balanced harms where the economic and institutional harm is significant to one party and negligible to the party representing the enforcement of specific regulations. *See, Maldonado*, 157 F.3d 179, *Playboy*, 918 F.Supp 813 and *Planned Parenthood of Delaware v. Brady,* 2003 U.S. Dist. LEXIS 10099 (D. Del. June 9, 2003). *Cf. Clean Ocean Action v. York,* 57 F.3d 328 (3d Cir. 1995). In all of these cases, the courts found that the balancing of harms favored the party that was suffering economic harm over the party representing the enforcement of specific regulations.

In this case, the irreparable harm that Cyberworld will suffer if injunctive relief is denied substantially outweighs any harm the Government will suffer by enforcing regulations if injunctive relief is granted.

### D. The Public Interest Favors the Requested Injunctive Relief

Where the plaintiff has demonstrated a likelihood of success on the merits, the public interest leans toward granting the injunction. *Novartis Consumer Health*, 290 F.3d at 597. The Court also looks to whether the public interest will be negatively affected if preliminary injunctive relief is granted, to ensure that maintaining the status quo will not harm the public interest. *Playboy v. United States*, 918 F.Supp. at 822. In *Playboy*, the Court found that the grant of preliminary injunctive relief permitting a cable-television company to continue its current practice, despite new FCC regulations to the contrary, would not negatively affect the public interest. *Id.* at 822.

In the Plaintiff's case, there was no harm caused to any US worker by its failure to make secondary inquiries. Allowing Cyberworld to continue to file petitions and labor certification applications would not harm the public interest. In fact, it is very much in the public interest to grant a preliminary injunction against debarment, allowing Cyberworld to continue to petition for and supply qualified employees for much needed positions in business and technology settings throughout the United States. The likelihood of success on the merits, and the actual benefits presented by allowing Plaintiff to continue to operate, clearly benefit the public interest.

### CONCLUSION

The Plaintiff has clearly established that a preliminary injunction preventing the Department of Labor from referring Cyberworld to the Department of Homeland Security

and the Attorney General for debarment is warranted. Specifically, the Plaintiff has shown a likelihood of success on the merits, irreparable harm if relief is denied, that the Government will not be irreparably harmed if relief is granted and that a granting of relief will not adversely affect the public interest. A balancing of all the relevant factors weighs in favor of granting preliminary injunctive relief.

For the foregoing reasons, Plaintiff's motion for a preliminary injunction should be granted. Plaintiff asks that the Court, pursuant to Fed. R. Civ. P. 65, schedule a hearing on this motion at the earliest practicable date.

*/s/ H. Ronald Klasko*

Dated: 

H. Ronald Klasko
KLASKO, RULON, STOCK & SELTZER, LLP
1800 John F. Kennedy Blvd., Suite 1700
Philadelphia, PA 19103
Admitted *Pro Hac Vice*


*/s/ Stephen J. Neuberger*

Stephen J. Neuberger, Esq. (DE Bar # 4440)
The Neuberger Firm
Two East Seventh Street, Suite 302
Wilmington, DE 19801-3707
Phone: 302-655-0582

35

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Stephen J. Neuberger, hereby certify that on September 8, 2006, I have Federal

Expressed the documents to the following non-registered participants:

Colm Connoly
U.S. Attorney's Office
The NeMours Building
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899-2046

Elaine Chao
U.S. Department of Labor
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210

Emilio T. Gonzalez
Office of the Chief Counsel
20 Massachusetts Ave., N.W.
Room 4025
Washington, DC 20536

Michael Chertoff
Office of the General Counsel
U.S. Department of Homeland Security
Washington, DC 20528

Alberto Gonzales
Attorney General
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530-0001

By:    */s/ Stephen J. Neuberger*
_____
Stephen J. Neuberger, Esq. (DE Bar # 4440)
The Neuberger Firm
Two East Seventh Street, Suite 302
Wilmington, DE 19801-3707
Phone: 302-655-0582