# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CYBERWORLD ENTERPRISE TECHNOLOGIES, INC. d/b/a/TEKSTROM, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 06-cv-402-KAJ |
| v. | ) ) ) | |
| MICHAEL CHERTOFF, Secretary of the Department of Homeland Security; ALBERTO GONZALES, Attorney General; ELAINE L. CHAO, Secretary of the Department of Labor; EMILIO T. GONZALEZ, Director, United States Citizenship and Immigration Services; | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

### Appendix in Support of Plaintiff's Motion and Brief for Preliminary Injunction

H. Ronald Klasko
KLASKO, RULON, STOCK & SELTZER, LLP
1800 John F. Kennedy Blvd., Suite 1700
Philadelphia, PA 19103
Phone: 215-825-8600
Admitted *Pro Hac Vice*

Stephen J. Neuberger, Esq. (DE Bar # 4440)
The Neuberger Firm
Two East Seventh Street, Suite 302
Wilmington, DE 19801-3707
Phone: 302-655-0582

Counsel for Cyberworld, Inc.

Dated: September 8, 2006

## **TABLE OF CONTENTS**

| | **Page** |
|---|---|
| EXHIBIT A, Declaration of Charanjeet Minhas, President of Cyberworld | 4 |
| EXHIBIT B, DOL Investigation Notification Letter | 8 |
| EXHIBIT C, DOL Questionnaire | 11 |
| EXHIBIT D, H-1B Investigation Narrative Report | 33 |
| EXHIBIT E, DOL Administrator Determination | 41 |
| EXHIBIT F, ALJ Initial Decision and Order | 46 |
| EXHIBIT G, ARB Final Decision and Order | 70 |

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CYBERWORLD ENTERPRISE TECHNOLOGIES, INC. d/b/a/TEKSTROM, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 06-cv-402 – KAJ |
| v. | ) ) | |
| MICHAEL CHERTOFF, Secretary of the Department of Homeland Security; ALBERTO GONZALES, Attorney General; ELAINE L. CHAO, Secretary of the Department of Labor; EMILIO T. GONZALEZ, Director, United States Citizenship and Immigration Services; | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **CYBERWORLD ENTERPRISE TECHNOLOGIES, INC.** d/b/a/TEKSTROM, INC., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No. 06-cv-402 ‑KAJ ) |
| **MICHAEL CHERTOFF**, Secretary of the Department of Homeland Security; **ALBERTO GONZALES**, Attorney General; **ELAINE L. CHAO**, Secretary of the Department of Labor; **EMILIO T. GONZALEZ**, Director, United States Citizenship and Immigration Services; | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## DECLARATION OF CHARANJEET MINHAS

I, Charanjeet Minhas, declare and say:

1.      I am over 18 years of age and a resident of the State of Delaware.  I have personal knowledge of the facts set forth in this declaration and, if called upon as a witness, I could and would competently testify thereto.

2.      I am the President of Cyberworld Enterprise Technologies, Inc,. d/b/a/ Tekstrom, Inc., previously known as Cyberworld, Inc.  I have been working in this position since March 2003  I was previously Vice President of Cyberworld from May 1999, the date of the formation of the company, until March 2003.

3.      Cyberworld is an information technology development and consulting company. Cyberworld trains individuals in the application and development of software testing

4

tools belonging to Mercury Interactive. In addition, we hire individuals who have been trained to use these specialized programs, and provide their services to other companies and businesses in the United States who are in need of professionals trained in these specialized programs.  In this sense, we serve as a staffing agency for companies and businesses in need of expertise in the use of these specialized programs.  Cyberworld's ability to generate revenue depends upon its access to workers who can provide these services to its clients; without its current workforce, Cyberworld will be unable to generate any revenue and will have to cease operations.

4.     To find and staff a sufficient number of workers in our specialized field, we file a large number of petitions and applications for nonimmigrant and immigrant workers.

5.     Since the company's inception in 1999, we have petitioned for and hired approximately 600 nonimmigrant workers with H-1B visas. This year already, we have filed approximately 80 H-1B petitions for nonimmigrant workers.

6.     We currently have approximately seventy (70) fulltime employees working for Cyberworld.  Of those seventy employees, approximately ninety percent (90%) of them are working on H-1B nonimmigrant visas.

7.     Cyberworld currently has approximately sixty-five (65) H-1B petitions for nonimmigrant workers pending.

8.     Cyberworld currently has approximately nine (9) immigrant petitions for alien workers pending.  It also has approximately twenty (20) applications for permanent residence pending.

9.     Cyberworld currently has approximately thirty (30) labor certification applications pending.

10.     Since May 26, 2006, Cyberworld has had approximately fifteen (15) H-1B petitions for nonimmigrant workers approved.  It has had three (3) immigrant petitions approved, and zero (0) applications for permanent residence approved.

11.     Since May 26, 2006, Cyberworld has had zero (0) labor certification applications approved.

12.     Cyberworld continues to be dependent on its ability to petition for nonimmigrant and immigrant workers to fill highly specialized positions in the field of information technology.


I declare, under penalty of perjury and under the laws of the State of Delaware, that the forgoing is true and correct.  Executed this 2 9th day of August, 2006 at Newark, Delaware.

_____

Charanjeet Minhas

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CYBERWORLD ENTERPRISE TECHNOLOGIES, INC. d/b/a/TEKSTROM, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. 06-cv-402 ⊣KAJ |
| v. | ) ) | |
| MICHAEL CHERTOFF, Secretary of the Department of Homeland Security; ALBERTO GONZALES, Attorney General; ELAINE L. CHAO, Secretary of the Department of Labor; EMILIO T. GONZALEZ, Director, United States Citizenship and Immigration Services; | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

# EXHIBIT B

7





**UNITED STATES DEPARTMENT OF LABOR**
**WAGE HOUR DIVISION**
Federal Building, Room 2100
844 King Street
Wilmington, Delaware 19801
(302) 573-6112 or Fax: (302) 573-6365

November 5, 2001

Mr. Suresh K. Kakkirala
President
**Cyberworld Enterprise Technologies, Inc.**
**1406 Forrest Avenue**
**Suite B-2**
**Dover, DE. 19904**

Dear Mr. Kakkirala,

The Wage and Hour Division is responsible for conducting investigations to determine compliance with the H-1B Labor Condition Application (LCA) provisions of the Immigration and Nationality Act (INA). This is to notify you that your firm has been scheduled for investigation pursuant to and under authority of INA and implementing regulations at 20 CFR Part 655. I will visit your establishment on December 4, 2001, at 10AM, to initiate this investigation.

At that time I will need to meet with you or a designated representative to obtain current information about your company and its operations. The initial period covered by this investigation will be from December 5, 1999 through December 4, 2001.

The following records must be available for inspection and copying at the time of our meeting. Please have a workspace and a copy machine available for me if you wish to have the records remain on your premises.

1.  A copy of all public access documentation required by the Federal Regulations Part 655.760 including:

    (a) All Labor Condition Applications (LCA -ETA Form 9035) submitted to the U.S. Department of Labor Employment and Training Administration (ETA) by your firm for the employment of H-1B workers during the designated investigative period;
    (b) A full, clear, explanation of the system used to set the actual wage you paid for all occupations in which the H-1B workers were employed during the designated period;
    (c) The documentation used to establish the prevailing wage for all occupations and all areas of employment in which the H-1B workers were employed during the designated period;
    (d) A copy of the document(s) used to satisfy the notification requirements with respect to the employment of the H-1B workers;



> (e) A summary of benefits offered to U.S. Workers;
> (f) For H-1B dependent and/or willful violator employers;
>> (1) List of exempt H-1B worker(s), and
>> (2) A summary of recruitment methods used and the time frames of the recruitment of U.S. Workers.

2. A list of every H-1B nonimmigrant worker employed during the period December 5, 1999 through December 4, 2001 and a report with the following information for each worker listed, in each week they were employed:

> (a) The LCA that was included as part of their H-1B visa application,
> (b) Their actual hours of work and gross earnings received
> (c) An explanation of the deductions made from their weekly wages,
> (d) The actual site where their work was performed each week (Site, City, State),
> (e) The actual rate of pay,
> (f) The date of entry into the U.S.,
> (g) The date of hire/termination, and
> (h) A copy of each Petition for Nonimmigrant Worker (Form I-129 and H Supplement) and subsequent INS Approval Form (I-797) for each H-1B worker employed during the designated period.

Other documents and information will be requested as needed to complete the investigation and must be produced as soon as possible.

Please contact me immediately at the number given above if you have any questions regarding this visit.

Sincerely,


Ron Zylstra (302-573-6112
Wage and Hour Investigator

---

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Suresh K. Kakkirala
Cyberworld Enterprise
Technologies, Inc.
1408 Forrest Ave., Suite B-2
Dover, DE 19904

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery
Suresh Kakkirala

C. Signature
X                                    ☐ Agent
                                     ☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)   7001 1940 0007 0590 2696

PS Form 3811, March 2001        Domestic Return Receipt        102595-01-M-1424

329

9

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

CYBERWORLD ENTERPRISE                )
TECHNOLOGIES, INC.                   )
d/b/a/TEKSTROM, INC.,                )
                                     )
                    Plaintiff,       )
                                     )          Civil Action No. 06-cv-402 -KAJ
          v.                         )
                                     )
MICHAEL CHERTOFF, Secretary          )
of the Department of Homeland Security; )
ALBERTO GONZALES, Attorney           )
General; ELAINE L. CHAO, Secretary   )
of the Department of Labor;          )
EMILIO T. GONZALEZ,                  )
Director, United States Citizenship and )
Immigration Services;                )
                                     )
                    Defendants.      )
                                     )

# EXHIBIT C



# TEKSTROM, Inc.

**(FKA Cyberworld Enterprise Technologies, Inc)**
**1406 Forrest Av, Suite #B-2, Dover DE 19904**
**Ph: (302) 734 1810/9720, Fax: (302) 734 7115**

February 14, 2002

Ron Zylstra
Wage and Hour Investigator
US DOL
Wage and Hour Division
Federal Building, Room 2100
844 King Street
Wilmington, Delaware 19801

Re: Response to your questionnaire fax dated 1/16/02
Employer: Tekstrom, Inc. (formerly known as Cyberworld Enterprise
Technologies, Inc.)

Dear Mr. Zylstra,

Enclosed please find the completed response to your questionnaire, which was sent to us
by fax on 1/16/02. We did have confusion in answering some questions, which were
presented to us. This is why we left a couple of messages to your office for clarification.
We have completed all the response truthfully and to the best of our ability. Should you
require further clarification on the question, which we did not fully understand, please let
us know, we will be more than happy to respond to you.

Thank you for your time and consideration.

Very truly yours,

Suresh Kakkarila
President

302-734-9720
Trish

355                                                          11

Date *FEBRUARY 14, 2002*

12 Month Window:_____ to _____(for Agency use only)

Employer Information:

Contact person for firm: *MR. SURESH KAKKIRALA*
Official(s):_____

*Pres: Suresh Kakkirala*
*V.P.: Charan MinKas*

_____

Legal Name: *TEKSTROM, INC.*

TradeName:___*N/A*_____

Telephone: *302 734 1810*

OtherBranches: *CALIFORNIA & FLORIDA*

_____

Nature of Business: *SOFTWARE DEVELOPMENT, CONSULTING*

*& MAINTENANCE*

Other Corp. Data:
Date of Inc.:____*5/4/1999*____ State of Inc.:__*DELAWARE*__

Jan 16 02 02:33p    ●mployment Standards Admi ●02) 573-6365    P.3

Employer Info. (continued):

ADV: *ANNUAL DOLLAR VALUE*
     *1.7 MILLION*

Change in ownership/corp. structure? [X]no  [ ]yes

when?_____

_____

Employee Information:
Total # of EEs (hrly):_____ (salary):_____
        full-time _18_ part-time _0_

H-1B workers:

(hrly):_____ Rate_____Per/

(salary):_____ Range *$46,000 - $90,000* per/*YEAR*

H-1B "dependency test": ⟨1-25 FTE  EEs & 8 or more H1Bs,⟩
                        26-50 FTE & 13 or more H1Bs
                        51 or more FTE & 15% or more of total
                        workforce

H-1B Occupations: *SOFTWARE DEVELOPMENT & CONSULTING*

_____

_____

(request a list of the US/H-1B workers identifying status, salary,
period of employment for window period.)

357

13

Jan 16 02 02:34p    Employment Standards Admi   (302) ●73-6365        p.4

**Public Access Documentation:**

Where is your public access documentation maintained?_____

*IN THE COMPANY'S OFFICE IN DOVER, DELAWARE*

In your public access file do you have:

[X] LCA - ETA-9035
[X] Documentation that provides wage rate to be paid to the H-1B workers.
[X] Full/clear explanation of system that you used to set the actual wage rate paid or documentation used to establish PW.
[X] Copies of documents that would satisfy employee notification requirements (postings).
[X] Summary of benefits offered to US workers.

if change in corporate structure:
[ ] Sworn statement by successor accepting all liabilities.
[ ] List of H-1B workers transferred.
[ ] Each affected LCA (number and date).
[ ] Successor actual wage computation.
[ ] Successor's EIN.
[ ] List of entities included as a "single employer".

if H-1B dependent or willful violator employer: (LCAs filed after 1/19/01):
[X] Summary of recruitment methods used and the time frame of recruitment.
[X] All payroll records and supporting documentation.

if hire only exempt workers (LCAs filed after 1/19/01)(Masters or 60K)
[ ] List of exempt H-1B workers, education background & salary.


For each H-1B worker:

Do you have copies of I-129? [X]yes  [ ]no,reason_____

_____


Do you have copies of I-797? [X]yes  [ ]no, reason_____

_____

358

14

Jan 16 02 02:34p    E⬤oyment Standards Admi  (30⬤) 573-6365    P.5

H-1B worker (continued):

Do you have payroll/timekeeping info.? [X]yes  [ ]no, reason,_____

_____    _____


Payroll:

How is H-1B worker's pay determined? *ACCORDING TO THE WORKER'S*
*LEVEL OF EDUCATION, EXPERIENCE & KNOWLEDGE OF SOFTWARE*
     Is it documented [X]yes  [ ]no, reason_____ *DATABASES.*

    _____


Wage Additions (travel, per diem)  *N/A*_____

_____

     Is it documented [ ]yes  [ ]no, reason_____

    _____


Wage Deductions (loans, housing, cars, visa processing): *N/A*_____

_____

     Is it documented [ ]yes  [ ]no, reason_____

    _____


If you have any voluntary payroll deductions, do you have a copy of
the agreement [ ]yes  [ ]no, reason_____
_____ *N/A*_____


359

15

How is time worked recorded: [ ]time clock  [ ]time sheets
[X]other  *ON A MONTHLY BASIS*

How/when do workers have to report their time?: (fax, phone, mail)_____

[ ]weekly  [ ]bi-weekly  [ ]other_____
                    *WORK WEEK*
When is your w/w: *MONDAY - FRIDAY*    Pay day: *FIRST DAY OF THE MONTH*

Where are your records maintained: *IN THE OFFICE*

Who does your payroll: *ADP*

Where is it prepared: *AT THE ADP's OFFICE IN PENNSYLVANIA*


"Benching"

Have you "benched" or "parked" any H-1B worker? [X]no  [ ]yes
If yes, why?_____

_____

_____

_____


Did you pay them while they were "benched" or "parked" [ ]yes
[ ]no. If yes, what rates were they paid (actual or PW)?_____
_____  *N/A*

360

*1b*

**Benefits:**

Are the same fringe benefits offered to US workers offered to H-1B workers? [ ]no  [X]yes

What are those benefits? _100 % INSURANCE COVERAGE FOR THE WORKERS,_ _50% INSURANCE COVERAGE FOR THE WORKER'S DEPENDENTS_ & RELOCATIO

What benefits are different?_____    EXPENSES

_____

Are there any H-1B workers receiving benefits from their home country [X]no  [ ]yes, If yes, what are the benefits?_____

_____

**Early Cessation Penalty:**

Do you charge a penalty if employment is terminated before the end of the contract: [X]no  [ ]yes  Ask Er. to explain terms, etc_____

_____

**"Fees"**

Have you required any H-1B worker to pay any of your business expenses (attorney fees)? [X]no  [ ]yes. If yes, what expenses were required to have been paid?_____

_____

_____

Have you required any H-1B worker to pay any part of the filing fees? [X]no  [ ]yes. If yes, who was required?_____

_____

17

"Fees" (continued):


How much was the worker(s) required to pay?   *N/A*

_____

     (have Er. identify who and provide a list.)



LCAs:

# of LCAs applied for: _____

_____

ETA Regions where applied: _____

_____

# of LCAs in use:   *18*

_____


Do you have an LCA for all locations where you have H-1B workers
working? [X]yes  [ ]no

What are the sites that you have LCAs for? *DOVER, DELAWARE ;*
*SACRAMENTO, CA ; BRIDGETON, MO ; MINNEAPOLIS, MN ;*
*BUFFALO, NY ; CHICAGO, IL ; EDISON, NJ ; HOUSTON, TX ;*
*PALO ALTO, CA ; KALMAZOO, MI .*

Do you have workers working in an area different from the one
specified on the LCA? [ ]yes  [X]no. If yes, what sites don't you
have an LCA for?_____

_____

_____

Jan 16 02 02:35p     E●loyment Standards Admi  (30●) 573-6385                    p.9

LCAs (continued):

Are these placements which you do not have a LCA for temporary or
permanent placements?_____ *N/A*

How long are the placements for?  *N/A*

(request that the Er. provide you with a list.)

How do you pay those H-1B workers while they are traveling?_____
*RELOCATION EXPENSES AND ACTUAL SALARY ABOVE PW*

How do you pay any H-1B worker placed at a site different from the
one on the LCA? *SAME AS ABOVE*

*PW OF THE SITE IN QUESTION*

Have you sought to hire any H-1B workers or filed any LCAs on or
after 1/19/01? [✓]yes  [ ]no

Do you have any H-1B workers placed with a secondary Er.? [ ]yes
[ ]no. If so, who and for how long for each? *N/A*  *yes*

363

19

Jan 16 02 02:35p    ●loyment Standards Admi  (3●C) 573-6365    P.10

LCAs (continued):

Are you an H-1B dependent or a willful violator? [X]yes  [ ]no

Do you hire only exempt H-1B workers? [ ]yes  [X]no
      If no:
      Do you have any documentation pertaining to each US worker for
      whom a termination of layoff occurred during the period
      starting 90 days before or ending 90 days after the filing of
      H-1B petition? _No_

      Have you inquired of the secondary Er. whether he/she has
      displaced or intends to displace a similarly employed U.S.
      worker 90 days before or 90 days after the placement of the
      H-1B worker? [X]no  [ ]yes. Is it documented? [ ]no
      [ ]yes. If yes, where is it documented?_____

      _____    _____    _____

      Is there a clause in the employment contract regarding
      displacement of similarly employed US workers? [X]no
      [ ]yes. (request a copy)

      What steps did you take to recruit US workers?_____

      _INTERNET POSTINGS AND NEWSPAPER ADVERTISEMENTS_

      _____    _____    _____

      Did you offer the job to any equally or better qualified US
      worker who applied for the job for which the H-1B worker was
      sought? [ ]no  [X]yes

      If yes:
      If you employ only exempt H-1B workers, please provide a list
      of names, salary and education background and applicable LCA.

20

Notice

Is there a union [X]no   [ ]yes
      Was the Union notified of the filing of the LCA? [ ]yes
      [ ]no. If yes, do you have evidence that a Collective
      Bargaining Association was notified?_____

      Provide name, address_____

      _____


If no Union,
      Did you post a hard copy in two places or give electronic
      notice to workers for 10 days in the place of employment?
      [X]yes   [ ]no

      Do you have evidence that the LCA was posted for 10 days?
      [X]yes   [ ]no


Did you provide each H-1B worker with a copy of an ETA certified
copy of his/her LCA(s)? [X]yes  [ ]no, reason_____

_____


Prevailing Wage Data:

What prevailing wage source was used? _WATSON WAYTT_____

_____

      Is it documented? [X]yes   [ ]no


Does the prevailing wage documentation/determination match the
information on the LCA? [X]yes  [ ]no


365

Jan 16 02 02:33p      Employment Standards Admi   (302) 573-6365          P.2

Date _FEBRUARY 14, 2002_

12 Month Window: _____ to _____ (for Agency use only)

**Employer Information:**

Contact person for firm: _Mr. SURESH KAKMIRALA_

Official(s): _____

_____

_____

_____

Legal Name: _TEKSTROR, INC._

TradeName: _N/A_

Telephone: _302 734 1810_

OtherBranches: _CALIFORNIA & FLORIDA_

_____

Nature of Business: _SOFTWARE DEVELOPMENT, CONSULTING_

_& MAINTENANCE_

Other Corp. Data:
Date of Inc.: _5/4/1999_   State of Inc.: _Delaware_

22

02/14/2002  17:49     212  7382                    GREENCARDMAKER              PAGE  84

Jan 16 02 02:39p          Employment Standards Admi   (302) 678-8365              p.9

Employer Info. (continued):

ADV: _ANNUAL DOLLAR VALUE_
     _1.7 MILLION_

Change in ownership/corp. structure? [X]no  [ ]yes
when?_____

_____

Employee Information:
Total # of EEs (hrly):_____  (salary):_____
                full-time _18_   part-time _0_

H-1B workers:

(hrly):_____  Rate_____Per/

(salary):_____  Range $45,000-$90,000  per/YEAR

H-1B "dependency test": 1-25 FTE  EEs & 8 or more H1Bs.
                        26-50 FTE & 13 or more H1Bs
                        51 or more FTE & 15% or more of total
                        workforce

H-1B Occupations: _SOFTWARE DEVELOPMENT & CONSULTING_

_____

_____

(request a list of the US/H-1B workers identifying status, salary,
period of employment for window period.)

23

Jan 16 02 02:34p     Employment Standards Admi   (302) 573-6365        p.4

Public Access Documentation:

Where is your public access documentation maintained?_____

*IN THE COMPANY'S OFFICE IN DOVER, DELAWARE*

In your public access file do you have:

[X] LCA - ETA-9035
[X] Documentation that provides wage rate to be paid to the H-1B workers.
[X] Full/clear explanation of system that you used to set the actual wage rate paid or documentation used to establish PW.
[X] Copies of documents that would satisfy employee notification requirements (postings).
[X] Summary of benefits offered to US workers.

if change in corporate structure:
[ ] Sworn statement by successor accepting all liabilities.
[ ] List of H-1B workers transferred.
[ ] Each affected LCA (number and date).
[ ] Successor actual wage computation.
[ ] Successor's EIN.
[ ] List of entities included as a "single employer".

if H-1B dependent or willful violator employer: (LCAs filed after 1/19/01):
[X] Summary of recruitment methods used and the time frame of recruitment.
[X] All payroll records and supporting documentation.

if hire only exempt workers (LCAs filed after 1/19/01) (Masters or 60K)
[ ] List of exempt H-1B workers, education background & salary.

For each H-1B worker:

Do you have copies of I-129? [X] yes  [ ] no, reason_____


Do you have copies of I-797? [X] yes  [ ] no, reason_____

Jan 16 02 02:34p     Employment Standards Admi  (902) 573-6385            P.5

H-1B worker (continued):

Do you have payroll/timekeeping info.? [X]yes  [ ]no, reason,

_____

Payroll:

How is H-1B worker's pay determined? _ACCORDING TO THE WORKER'S_
_LEVEL OF EDUCATION, EXPERIENCE & KNOWLEDGE OF SOFTWARE_
        Is it documented [X]yes  [ ]no, reason_____ _DATABASES._

_____

Wage Additions (travel, per diem)  _N/A_____

_____

        Is it documented [ ]yes  [ ]no, reason_____

_____

Wage Deductions (loans, housing, cars, visa processing): _N/A_____

_____

        Is it documented [ ]yes  [ ]no, reason_____

_____

If you have any voluntary payroll deductions, do you have a copy of
the agreement [ ]yes  [ ]no, reason_____
            _N/A_

_____

Jan 16 02 02:34p      Employment Standards Admi   (302) 573-6365          p.6

How is time worked recorded: [ ]time clock  [ ]time sheets
[X]other *ON A MONTHLY BASIS*

How/when do workers have to report their time?: (fax, phone,
mail)_____

[ ]weekly  [ ]bi-weekly  [ ]other _____
*WORK WEEK*
When is your w/w: *MONDAY - FRIDAY* ___ Pay day: *FIRST DAY OF THE MONTH*

Where are your records maintained: *IN THE OFFICE*

Who does your payroll: *ADP*

Where is it prepared: *AT THE ADP's OFFICE IN PENNSYLVANIA*


"Benching"

Have you "benched" or "parked" any H-1B worker? [X]no  [ ]yes
If yes,why?_____

_____

_____

_____

Did you pay them while they were "benched" or "parked" [ ]yes
[ ]no. If yes, what rates were they paid (actual or PW)?_____
____ *N/A*

Jan 18 02 02:35p     Employment Standards Admi  (302) 573-6965              p.7

**Benefits:**

Are the same fringe benefits offered to US workers offered to H-1B workers? [ ]no  [X]yes

What are those benefits? *100 % INSURANCE COVERAGE FOR THE WORKERS,*
*50% INSURANCE COVERAGE FOR THE WORKER'S DEPENDENTS & RELOCATION*
What benefits are different?_____  *EXPENSES*

_____

Are there any H-1B workers receiving benefits from their home country [X]no  [ ]yes, If yes, what are the benefits?_____

_____


**Early Cessation Penalty:**

Do you charge a penalty if employment is terminated before the end of the contract: [X]no  [ ]yes Ask Er. to explain terms, etc_____

_____


**"Fees"**

Have you required any H-1B worker to pay any of your business expenses (attorney fees)? [X]no  [ ]yes. If yes, what expenses were required to have been paid?_____

_____

_____

Have you required any H-1B worker to pay any part of the filing fees? [X]no  [ ]yes. If yes, who was required?_____

_____

02/14/2002 17:49   21  7302          GREENCARDMAKER  M                   PAGE  09

Jan 15 02 02:35p      Employment Standards Adm;   (303) 573-6955         P.3

"Fees" (continued):

How much was the worker(s) required to pay?   N/A

(have Er. identify who and provide a list.)

LCAs:

# of LCAs applied for:

ETA Regions where applied:

# of LCAs in use:  18

Do you have an LCA for all locations where you have H-1B workers
working? [X]yes  [ ]no

What are the sites that you have LCAs for? DOVER, DELAWARE;
SACRAMENTO, CA; BRIDGETON, MO; MINNEAPOLIS, MN;
BUFFALO, NY; CHICAGO, IL; EDISON, NJ; HOUSTON, TX;
PALO ALTO, CA; KALHAZOO, MI.

Do you have workers working in an area different from the one
specified on the LCA? [ ]yes  [X]no. If yes, what sites don't you
have an LCA for?

02/14/2002  17:49    21   7302          GREENCARDMAKER   M          PAGE  10

Jan 16 02 02:35p      Employment Standards Admi   (302) 579-6365          p.8

LCAs (continued):

Are these placements which you do not have a LCA for temporary or permanent placements?____N/A

How long are the placements for?____N/A

    (request that the Er. provide you with a list.)

How do you pay those H-1B workers while they are traveling?____
_RELOCATION EXPENSES AND ACTUAL SALARY ABOVE PW_

How do you pay any H-1B worker placed at a site different from the one on the LCA? _SAME AS ABOVE_
_PW OF THE SITE IN QUESTION_

Have you sought to hire any H-1B workers or filed any LCAs on or after 1/19/01? [✓]yes  [ ]no

Do you have any H-1B workers placed with a secondary Er.? [ ]yes [ ]no. If so, who and for how long for each?  _N/A_

Jan 16 02 02:35p        Employment Standards Adm    (302) 573-6386              P.10

LCAs (continued):

Are you an H-1B dependent or a willful violator? [X]yes  [ ]no

Do you hire only exempt H-1B workers? [ ]yes   [X]no
   If no:
   Do you have any documentation pertaining to each US worker for
   whom a termination of layoff occurred during the period
   starting 90 days before or ending 90 days after the filing of
   H-1B petition? _No_____

   Have you inquired of the secondary Er. whether he/she has
   displaced or intends to displace a similarly employed U.S.
   worker 90 days before or 90 days after the placement of the
   H-1B worker? [X]no  [ ]yes. Is it documented? [ ]no
   [ ]yes. If yes, where is it documented?_____

   Is there a clause in the employment contract regarding
   displacement of similarly employed US workers? [X]no
   [ ]yes. (request a copy)

   What steps did you take to recruit US workers?_____

   _INTERNET POSTINGS AND NEWSPAPER ADVERTISEMENTS_

   Did you offer the job to any equally or better qualified US
   worker who applied for the job for which the H-1B worker was
   sought? [ ]no  [X]yes

   If yes:
   If you employ only exempt H-1B workers, please provide a list
   of names, salary and education background and applicable LCA.

Jan 18 02 02:36p     Employment Standards Admi  (302) 573-6385         p.11

Notice

Is there a union [X]no  [ ]yes
    Was the Union notified of the filing of the LCA? [ ]yes
    [ ]no. If yes, do you have evidence that a Collective
    Bargaining Association was notified?_____

    Provide name, address_____

    _____


If no Union,
    Did you post a hard copy in two places or give electronic
    notice to workers for 10 days in the place of employment?
    [X]yes  [ ]no

    Do you have evidence that the LCA was posted for 10 days?
    [X]yes  [ ]no

Did you provide each H-1B worker with a copy of an ETA certified
copy of his/her LCA(s)? [X]yes  [ ]no, reason_____

_____


Prevailing Wage Data:

What prevailing wage source was used? *WATSON WYATT*_____

_____

    Is it documented? [X]yes  [ ]no


Does the prevailing wage documentation/determination match the
information on the LCA? [X]yes  [ ]no

375

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

CYBERWORLD ENTERPRISE )
TECHNOLOGIES, INC. )
d/b/a/TEKSTROM, INC., )
)
               Plaintiff, )
)      Civil Action No. 06-cv-402 - KAJ
     v. )
)
MICHAEL CHERTOFF, Secretary )
of the Department of Homeland Security; )
ALBERTO GONZALES, Attorney )
General; ELAINE L. CHAO, Secretary )
of the Department of Labor; )
EMILIO T. GONZALEZ, )
Director, United States Citizenship and )
Immigration Services; )
)
             Defendants. )
)

# EXHIBIT D

Tekstrom, Inc.
1406 Forrest Ave.
Suite B-2
Dover, DE.19904
FKA: Cyberworld Enterprise Technologies, Inc.


## H-1B Narrative Report


### GENERAL BACKGROUND:

This compliance action ("C/A") was ███████████████████
filed with the Wage and Hour Division by ████████████  H-1B
████████████. ███████████ identified ███████████████
nonimmigrant employee of the subject firm. ██████████████

███████████ alleges that the employer supplied incorrect or false
information on the Labor Condition Application ("LCA") and that the
subject firm failed to pay ████ for time off due to a decision by
the employer. In this case, the ███████████ is an "aggrieved
party". (Title 20, CFR, 655.806.) ████████████


### COVERAGE:

The subject firm in this case is Tekstrom, Inc., (hereafter
referred to as Tekstrom). Tekstrom is formerly known as Cyberworld
Enterprise Technologies, Inc., ("Cyberworld"). The case file has
the name of Cyberworld; however, for purposes of this
investigation, the firm is referred to and submitted as Tekstrom.
Although the name of the firm has changed, there was no change in
the corporate ownership or control.

Tekstrom is primarily engaged in computer software development and
consulting. The firm also furnishes computer maintenance services.
Tekstrom recruits and employs educated and skilled computer
professionals and furnishes these employees to client businesses.
The individual employee furnished by Tekstrom to the client
business is jointly employed by Tekstrom and the client firm.
However, for purposes of enforcement of the applicable LCA
provisions, Tekstrom is deemed to be the primary employer; the
client's place of business is considered to be the "secondary" work
site.

Tekstrom's main office is located at 1406 Forrest Avenue, Suite B-
2, Dover, DE. 19904. The President of Tekstrom is Mr. Suresh
Kakkirala. The subject firm's Vice President is Charan Minkas.
Tekstrom operates branch facilities in California and Florida.

At the time of the investigation visit, Tekstrom had 18 current LCAs on file with the Employment and Training Administration ("ETA"). The subject firm did not have any equivalent U.S. employees at its main office site. Since ETA has certified a LCA for each one filed by the subject firm, coverage is asserted under the H-1B provisions of the Immigration and Nationality Act ("INA"). Therefore, Tekstrom is subject to all of the LCA elements.

Tekstrom is an H-1B "dependent" employer: the firm employs fewer than 25 full-time equivalent employees who are employed in the U.S. and employs more than seven H-1B nonimmigrant workers. (20 CFR 655.736.)

STATUS OF COMPLIANCE:

Immigration and Nationality Act - INA 212(n); 8 U.S.C. 1182(n):

Final Rule - 20 CFR Part 655:

LCA Element: Wage Payment Requirement to H-1B Nonimmigrant - (20 CFR, Part 655.731):

In this case, the ███████████, ████████████████, was placed by Tekstrom at a client site known as ███████████, which is located at ██████████████████████████████. The ████████████ was employed as a Quality Assurance Analyst at this site. ████ commenced ████ employment at the client site in ██████████████.

In ███████████ statement furnished to Wage and Hour, █████ ████████ states that the project on which █████ working was completed ██████████████. Tekstrom ███████████████████████████████████████ ████████████████████████████ The ██████████ goes on to say that this period of non productive time was due to a decision by Tekstrom; ████████████

34



**LCA Element: Working Conditions of Similarly Employed Workers Will Not Be Adversely Affected - (CFR 655.732):**

During the investigation period the subject firm did not employ any U.S. workers at its main office location in occupations specified on any of the LCA's filed. (See Element: "H-1B Dependent Employer and Willful Violators" below.)

**LCA Element: There is No Strike, Lockout or Labor Dispute - (CFR 655.733):**

**LCA Element: Notice Has Been Provided to Workers - (CFR 655.734):**

A copy of the required notice for each position for which a LCA had been approved was posted on the firm's main office bulletin board for the specified period of time.

Furthermore, the subject firm gave electronic notice to all affected workers, (employees in the occupational classification for

which N-1B nonimmigrant workers were sought), at each place of employment where the H-1B nonimmigrant was or would be employed.

LCA Element: H-1B Dependent Employer and Willful Violators - (CFR 655.736):

As reported above, Tekstrom is a H-1B "dependent" employer.



LCA Element: Non-displacement of U.S. Workers Obligations Applicable to H-1B Dependent Employers - CFR 655.736 and 738:

As an H-1B "dependent" employer, Tekstrom is subject to specified non displacement obligation standards as set forth in CFR 655.736 and 738. One of these obligations concerns the placement of a H-1B nonimmigrant worker at a secondary work site. In accordance with CFR 655.738, a H-1B "dependent" employer is prohibited from placing non exempt H-1B workers with another employer unless and until the H-1B employer makes certain inquiries and/or has certain information concerning that other employer's displacement of similarly employed U.S. workers in its work force.

In this case, the subject firm placed fourteen (14) H-1B workers with other employers after 01/19/01. (Exhibit C-1.) In that connection, the investigation disclosed that Tekstrom failed to inquire of any secondary employer where the worker(s) was placed whether he/she had displaced a similarly employed U.S. worker 90 days before or 90 days after the placement of the H-1B worker(s). Furthermore, the investigation found that there was no clause in any of the firm's secondary placement employment contracts regarding displacement of similarly employed U.S. workers.

36

. In this connection, note that the President of the subject firm, Suresh Kakkarila, indicated on the initial conference questionnaire that the firm failed to inquire of the secondary employer whether he/she had displaced or intended to displace a similarly employed U.S. worker 90 days before or 90 days after the placement of the H-1B worker. (Exhibit E-10.) Neither could the firm produce affirmative evidence to the contrary.

## Civil Money Penalties ("CMP's"):

The LCA's filed for the H-1B workers placed after 01/19/01 were filed for non-exempt employees. Note that in each case the employer checked box B, in Item F, of the LCA. If the LCA is filed for an exempt worker(s), the employer must check box C. (Refer to copies of the LCA's found in the C Exhibit Section of the case file.)



Based on the foregoing analysis, the CMP's are computed as follows:

      50% reduction X $1,000 X 2 non exempt ees. = $1,000.
      80% reduction X $1,000 X 12 exempt ees. = $2,400.
      Total CMP's: $3,400.00

## Debarment:

The U.S. Attorney General (AG) shall be notified of the occurrence of the violation as cited in this case. Upon notification, the AG is required to deny any petitions filed by the subject firm under sections 204 of the INA for a period of at least one year from the

37

date of receipt of the notification. Furthermore, the DOL's Employment and Training Administration, upon receipt of the notification, will be required to invalidate any current LCA(s) and not accept for filing any new LCA(s) for the period of time for which the firm is debarred by the AG.


DISPOSITION:

On 10/07/02, the INV. conducted a final conference, via telecom, with Charan Minkas. Minkas is the subject firm's Vice President. Minkas agreed to represent the firm in the final conference. The general H-1B provisions for dependent employers were reviewed with respect to all applicable elements on the LCA.

The INV. notified Minkas of the firm's H-1B dependent status and the additional attestation obligations that come with this H-1B status determination. In this regard, the INV. apprised Minkas of the firm's failure, after 01/19/01, to make, on behalf of 14 H-1B workers, the required inquiries of the secondary employers regarding the displacement of similarly employed U.S. workers at such work sites. Minkas conceded the violation, but he stated that the firm was simply unaware of this dependent employer obligation at the time the LCA's were filed and at the time the placements were made. Minkas also claimed that the firm was not aware that box C is to be checked in Item F of the LCA if the LCA is filed for an exempt employee.

The INV. explained that, even though the evidence indicated that 12 of the 14 placed H-1B workers proved to be exempt, since the firm identified them all as non exempt on the LCA's filed, the firm had an obligation to make the inquiry on their behalf. For future purposes, the INV. explained to Minkas that the firm is not required to make the inquiry of the secondary employer if the LCA filed for the placed worker identifies the worker as exempt and, in fact, the worker meets the exempt criteria, as set forth in CFR 655.737.

The INV. apprised Minkas of the potential remedies in this case. In that connection, he was advised that the firm would be sent a letter of determination wherein the violation would be summarized and the remedy imposed for such violation would be set forth. The INV. explained to Minkas that the remedy would in all likelihood include the prohibition of the firm to sponsor any aliens for employment for a period of time as well as the assessment of a CMP. However, the INV. advised Minkas that since 12 of the 14 H-1B workers in question met the exempt criteria, the INV. would recommend that this reality be a significant mitigating factor in the consideration of the amount of CMP's to assess. The INV. also notified Minkas that the determination letter would explain the

procedure for filing a request for a hearing. Minkas stated that the firm had already corrected the violation by incorporating into each secondary employer contract a clause regarding the displacement of similarly displaced U.S. workers. Minkas indicated moreover that the firm in now following up with verbal confirmation from the secondary employer prior to making the placement. Minkas also assured the INV. that the firm had properly documented all such inquiries made on behalf of non exempt employees.

Regarding the claim ███████████ ██████████████████, the INV. advised Minkas that the collective evidence disclosed in this case did not support his allegation that he was not paid for compensable non productive time or that the firm had supplied incorrect or false information on the LCA.

## Recommendation:



## Complainant:



Ron Zylstra / INV.
10/07/02

39

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

CYBERWORLD ENTERPRISE )
TECHNOLOGIES, INC. )
d/b/a/TEKSTROM, INC., )
)
               Plaintiff, )
)       Civil Action No. 06-cv-402-KAJ
   v. )
)
MICHAEL CHERTOFF, Secretary )
of the Department of Homeland Security; )
ALBERTO GONZALES, Attorney )
General; ELAINE L. CHAO, Secretary )
of the Department of Labor; )
EMILIO T. GONZALEZ, )
Director, United States Citizenship and )
Immigration Services; )
)
           Defendants. )
)

# EXHIBIT E

40



**U.S. Department of Labor**    **Employment Standards Administration**
**Wage and Hour Division**
**207 Appraisers Building**
**103 Gay Street**
**Baltimore, Maryland 21201-4061**
**Telephone: (410) 962-4984**
**Fax:        (410) 962-9512**

CERTIFIED MAIL RETURN RECEIPT REQUESTED:   # 7099 3220 0002 5262 8454

March 20, 2003

Mr. Suresh K. Kakkirala, President
Cyberworld Enterprise Technologies, Inc.
d/b/a/ Tekstrom, Inc.
1406 Forrest Avenue, Suite B – 2
Dover, Delaware 19904

Subject:       Administrator's Determination Pursuant to Regulations at 20 CFR Part 655.815 – H-1B
                   Specialty Occupations under the Immigration and Nationality Act (INA) administered
                   by the Department of Labor (DOL)
                   Reference #:  1159397

Dear Mr. Kakkirala:

Based on the evidence obtained in the recently concluded Wage and Hour Division investigation
of Cyberworld Enterprise Technologies, Inc. d/b/a/ Tekstrom, Inc., under the H-1B provisions of
the INA, as amended, (8 U.S.C. §1182(n)), it has been determined that your firm committed the
following violation: failed to make the required displacement inquiry of the secondary employer.
Any Labor Condition Application (LCA) (Form ETA 9035 and/or ETA 9035E) included in this
investigation is attached.

The specific violation and the remedy imposed for such violation are set forth on the enclosed
Summary of Violation and Remedy.  As a result of the violation, a civil money penalty in the
total amount of $3,400 is assessed.

You must pay the civil money penalty as aforesaid no later than 15 days after the date of this
determination, unless you appeal this determination within that time period. The civil money
penalty must be paid by sending a certified check or money order payable to "Wage and Hour
Division, U.S. Department of Labor," Curtis Center, Suite 850 West, 170 South Independence
Mall West, Philadelphia, PA  19106

This debt is subject to the assessment of interest, administrative cost charges and penalties in accordance with the Debt Collection Improvement Act of 1995 and Department of Labor policies. Interest will be assessed at the Treasury Tax and Loan Account rate on any principal that becomes delinquent. The rate is currently 2%. Administrative cost charges will be assessed to help defray the Government's cost of collecting this debt. A penalty at the rate of 6% will be assessed on any portion of the debt remaining delinquent for more than 90 days. In order to avoid these charges, you must forward payment to the Wage and Hour Division, U.S. Department of Labor," Curtis Center, Suite 850 West, 170 South Independence Mall West, Philadelphia, PA 19106 by the indicated due date. Please note that any pending bankruptcy action may affect the foregoing remedies.

The investigation has found the following violation which requires that your firm be denied the opportunity to sponsor any aliens for employment for a certain period of time: failed to make the required displacement inquiry of the secondary employer. Pursuant to 20 CFR §655.855(a), the U.S. Department of Labor's Employment and Training Administration (ETA) and the Attorney General (AG) shall be notified of the occurrence of this violation when this determination becomes final. The AG, upon notification, is required to deny any petitions filed by your business under sections 204 (8 U.S.C. §1154) and 214(c) (8 U.S.C. §1184(c)) of the INA for a period of at least one year from the date of receipt of the notification. Upon receipt of the notification, ETA will be required to invalidate any current LCA(s) (with respect to future hires only) and not accept for filing any new LCA(s) for the period of time for which the firm is debarred by the AG.

You and any interested party have the right to request a hearing on this determination. Such a request must be dated, be typewritten or legibly written, specify the issue(s) stated in this notice of determination on which a hearing is requested, state the specific reason(s) why the requestor believes this determination to be in error, be signed by the requestor or by an authorized representative, an include the address at which the requestor or the authorized representative desires to receive further communications relating to the hearing request.

This request must be made to and received by the Chief Administrative Law Judge (OALJ) at the following address no later than 15 calendar days after the date of this determination:

> U.S. Department of Labor
> Chief Administrative Law Judge
> ATTN: Deputy Secretary of BALCA
> 800 K Street NW, Room 400 North
> Washington, DC 20001-8002

If you or any interested party do not make a timely request for a hearing, this determination will become a final and unappealable order of the Secretary of Labor.

447

42

The procedure for filing a request for a hearing is provided in 20 CFR §655.820. Please note that 20 CFR §655.820(f) requires that a copy of any such request for a hearing must also be sent to me <u>and</u> to those parties listed below who were provided a copy of this determination. The Department of Labor will notify any complainant of any appeal. Due to the delayed delivery of mail in certain areas, you may wish to transmit your request to the OALJ via facsimile at 202-693-7365 to ensure timely receipt.

A copy of 20 CFR Part 655 subparts H and I is enclosed for your reference and assistance.

Sincerely,

Bezarah Gaither
District Director

Attachments:    Copy of LCAs
                Summary of Violation and Remedy
                20 CFR Part 655 subparts H and I

cc:     Chief Administrative Law Judge
        800 K Street NW, Room 400 North
        Washington, DC 20001-8002
        (with attachment and with copy of complaint per 20 CFR §655.815(b))

        Administrator
        U.S. Department of Labor
        Wage and Hour Division
        Room S-3510
        200 Constitution Ave., NW
        Washington, DC 20210

        U.S. Department of Labor
        Office of the Solicitor
        Room N-2716
        200 Constitution Ave., NW
        Washington, DC 20210

        U.S. Department of Labor
        Office of the Solicitor
        Curtis center, Suite 630 East
        170 South Independence Mall West
        Philadelphia, PA 19106

        Complainant

43

**Summary of Violation and Remedy – Cyberworld Enterprise Technologies, Inc.
d/b/a Tekstrom, Inc.**

**Violation:** Cyberworld Enterprise Technologies, Inc. d/b/a/ Tekstrom, Inc. failed to make the required displacement inquiry of another employer at a worksite where an H-1B nonimmigrant was placed as required under 20 CFR §655.738.  See 20 CFR §655.805(a)(8).

**Remedy:**  A civil money penalty in the amount of $ 3400.00 is assessed. Cyberworld Enterprise Technologies, Inc. d/b/a/ Tekstrom, Inc. is ordered to comply with §655.738 in the future.

The U.S. Department of Labor's Employment and Training Administration (ETA) and the Attorney General (AG) shall be notified of this violation.  See 20 CFR §655.855(a).  The AG, upon notification, is required to deny any petitions filed by your business under 8 U.S.C. §1154, §1184(c) for a period of at least one year from the date of receipt of the notification.  See 20 CFR §655.855(c).  Upon receipt of the notification, ETA is required to invalidate any current LCA(s) and not accept for filing any new LCA(s) for the period of time set by the AG. See 20 CFR §655.855(d).

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CYBERWORLD ENTERPRISE TECHNOLOGIES, INC. d/b/a/TEKSTROM, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 06-cv-402-KAJ |
| v. | ) ) | |
| MICHAEL CHERTOFF, Secretary of the Department of Homeland Security; ALBERTO GONZALES, Attorney General; ELAINE L. CHAO, Secretary of the Department of Labor; EMILIO T. GONZALEZ, Director, United States Citizenship and Immigration Services; | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

# EXHIBIT F

45

**U.S. Department of Labor**

Office of Administrative Law Judges
800 K Street, NW, Suite 400-N
Washington, DC 20001-8002

(202) 693-7300
(202) 693-7365 (FAX)



**Issue Date: 23 December 2003**

---

CASE NO.:   2003 LCA 17
In the Matter of

ADMINISTRATOR, WAGE AND HOUR
DIVISION, UNITED STATES
DEPARTMENT OF LABOR
    Prosecuting Party

       v.

CYBERWORLD ENTERPRISE TECHNOLOGIES, INC.
d/b/a TEKSTROM, INC.
    Respondent

Appearances:

          Ms. Maria L. Spitz, Attorney
          Mr. Alfred Fisher, Attorney
          For the Administrator

          Mr. H. Ronald Klasko, Attorney
          For the Respondent

Before:

          Richard T. Stansell-Gamm
          Administrative Law Judge

## INITIAL DECISION AND ORDER

    This case arises under Section 1182 (n) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1182 (n), as amended ("INA"), and the implementing regulations, 20 C.F.R. Part 655, Subpart H. In November 2003, both parties submitted Motions for Summary Decision/Judgment and response briefs. Since the joint stipulation of facts indicates no factual dispute exists between the parties, I have essentially adjudicated this case as a decision on the record, based on the stipulated facts.

### Background

    On March 20, 2003, the District Director, on behalf of the Administrator, notified Mr. Suresh K. Kakkirala, President of Cyberworld Enterprise Technologies, d/b/a Tekstrom, Inc. ("Tekstrom"), that an investigation had disclosed a violation of 20 C.F.R. § 655.738. According to the Administrator, in violation of one of the Labor Certification Application ("LCA") conditions, Tekstrom had failed to make the required displacement inquiry of a secondary employer. Due to the violation, the Administrator sought to impose a civil money penalty of

$3,400 and directed Tekstrom to comply with 20 C.F.R. § 655.738 in the future. Additionally, under the provisions of 20 C.F.R. § 655.855 (a), the Administrator also intended to inform both the U.S. Department of Labor ("DOL"), Employment and Training Administration ("ETA") and the Attorney General ("AG") of the violation. Upon such notification, the AG is required to deny any additional petition related to an LCA for at least one year. In turn, ETA is required to invalidate any current LCAs (in regards to future hires) and not accept any new LCAs from Tekstrom for the period established by the AG.

In response, on April 2, 2003, Tekstrom requested a hearing with the Office of Administrative Law Judges ("OALJ") "for the simple reason that one year debarment penalty imposed on Tekstrom is out of proportion."

Pursuant to a Revised Notice of Hearing, dated July 16, 2003, I set a hearing date for this case of October 7, 2003 in Wilmington, Delaware. Subsequently, after issuing a decision on pre-hearing motions[1] and a conference call with the parties, I continued the hearing pending resolution of their respective motions for summary decision/judgment.

### Applicable Regulations

20 C.F.R. Part 655. In general, 20 C.F.R. Part 655 sets out the procedures adopted by the Secretary, U.S. Department of Labor, for employers who seek nonimmigrant aliens for temporary work within the United States. As part of that process, DOL obtains information to determine whether employment of nonimmigrant workers for temporary work will adversely affect the working conditions of similarly employed U.S. workers. 20 C.F.R. § 655.0 (a). Subpart H establishes the process an employer must follow to file for, and obtain, approval from DOL for an LCA which then may be used to petition the Immigration and Naturalization Service ("INS") for a H-1B visa under the INA to enable temporary employment of foreign workers in certain specialty occupations. 20 C.F.R. § 655.0 (d).

20 C.F.R. § 655.736. According to 20 C.F.R. § 655.736 (g) (1), an H-1B dependent employer[2] is subject to the additional attestation obligations regarding the displacement of U.S. workers for all LCAs it submits to support petitions for H-1B visas.

20 C.F.R. § 655.737. An H-1B dependent employer is not required to make additional LCA attestations concerning the displacement of U.S. workers if the LCA involves a nonimmigrant worker who satisfies the criteria for "exempt" status. 20 C.F.R. § 655.737 (a). A nonimmigrant worker qualifies for exempt status if the worker receives wages at an annual rate equal to, or greater than, $60,000 or the worker has a masters or higher degree. 20 C.F.R. §655.737 (b). If an employer does not designate the exempt status of the nonimmigrant worker

---

[1] I denied the Respondent's motion to dismiss the case due to the Administrator's failure to comply with statute's provision to render a determination within 30 days of a complaint, 8 U.S.C. § 1182 (n) (2) (B).

[2] The designation of H-1B dependent employer is based on total number of employees and the percentage of employed H-1B employees. 8 U.S.C. 1182 (n) (3). For example, an employer with 26 to 50 employees is an H-1B dependent employer if more than 12 H-1B employees are in its workforce.

47

on the LCA, then it has waived the option of not being subject to the additional LCA attestation obligations. 20 C.F.R. § 655.737 (e) (3).

20 C.F.R.§ 655.738.  As one means to protect U.S. workers, 20 C.F.R. § 655.738 prohibits an H-1B dependent employer from either directly (in its own workforce) or secondarily (in the workforce of a secondary employer) displacing any U.S. worker.  To ensure compliance in regards to secondary displacement, prior to placing a nonimmigrant worker, the H-1B dependent employer must make certain inquiries of, and/or obtain information from a prospective secondary employer of the nonimmigrant worker concerning whether the secondary employer has displaced, or intends to displace, similarly employed U.S. workers.  20 C.F.R. § 655.738 (d).  Specifically, the H-1B dependent employer can not place a nonimmigrant worker with a secondary employer without asking the secondary employer whether within 90 days of the placement of the nonimmigrant worker, the secondary employer has displaced or intends to displace a similarly employed U.S. worker.  20 C.F.R. § 655.738 (d) (5).

Not every placement of a nonimmigrant worker with another employer will trigger the secondary displacement prohibition.  The prohibition applies when the placement of the nonimmigrant worker occurs at worksite owned by the other/secondary employer and the relationship between the nonimmigrant worker and the other/secondary employer carries indicia of a typical employer-employee relationship.  20 C.F.R. § 655.738 (d) (2).  Notably, even if the H-1B dependent employer makes the required inquiry of the secondary employer, the "employer shall be subject to a finding of a violation of the secondary displacement prohibition if the secondary employer, in fact, displaces any U.S. worker(s). . ." *Id.*

The employer must exercise due diligence in making the secondary employer inquiries.  Reasonable efforts of compliance include: written assurance; memorandum of an oral assurance; or, inclusion of a provision in a contract in which the secondary employer agrees that it has not, and will not, displace any U.S. worker in a similar job.  20 C.F.R. §§ 655.738 (d) (5) (i) (A) to (C).  If the H-1B dependent employer has information that some U.S. workers have been displaced, then the employer must exercise more than due diligence by making a particularized inquiry.  20 C.F.R. § 655.738 (d) (5) (ii).  Finally, the H-1B dependent employer must document the means it utilized to satisfy its obligation concerning displacement of U.S. workers by secondary employers.  20 C.F.R. § 655.738 (e) (2).

20 C.F.R. § 655.805.  To further ensure compliance, the regulations require investigation by the Administrator to determine whether an H-1B dependent employer has displaced a U.S. worker employed by a secondary employer where the nonimmigrant worker was placed in violation of 20 C.F.R. § 655.738.  20 C.F.R. § 655.805 (a) (7).  The Administrator must also investigate to determine whether an H-1B dependent employer failed to make the required Section 738 displacement inquiry of another employer where the nonimmigrant employee was placed.  20 C.F.R. § 655.805 (a) (8).  Additionally, the Administrator must evaluate situations in which the employer displaced a U.S. worker in the process of committing a willful violation relating to the various failures of obligations set out in paragraphs (a) (2) to (a) (9) of the section, which includes (a) (7) and (a) (8) discussed above.[3]

---

[3]The Administrator may conduct such investigations based on complaints, other information, or random of selection of certain employers. *See* 20 C.F.R. §§ 655.806 to 808.

- 3 -

48

Upon completion of an investigation, the Administrator must issue a determination and specifically state whether a violation was "substantial" or "willful." 20 C.F.R. § 655.805 (b). Some penalties and disqualification for a few violations set out in subparagraphs (a) (5) (failure to provide notice of LCA filing), (a) (6) (failure to provide the requisite specifics on the LCA), or (a) (9) (failure to recruit in good faith) may be imposed only if the violations are either substantial or willful. In a similar manner, penalties and disqualification are only permitted for "willful" violations of (a) (2) (failure to pay required wages) and (a) (3) (failure to provide requisite working conditions). *Id.*

20 C.F.R. § 655.810. If violations have occurred, the regulation authorizes three specific sets of civil monetary penalties and three degrees of employer disqualification for additional LCA petitions. First, under 20 C.F.R. § 655.810 (b) (1), the Administrator may assess civil money penalties not to exceed $1,000 for:  (i)  a violation pertaining to "strike/lockout (§ 655.733) or displacement of U.S. workers (§ 655.738)"; (ii) a "substantial" violation relating to notification, LCA specifics, or recruitment; and, (iii) a misrepresentation of a material fact in an LCA.  According to 20 C.F.R. § 655.810 (d) (1), for a violation of any of the provisions set out in (b) (i) to (iii) above, the "Administrator shall notify the Attorney General pursuant to § 655.855 that the employer shall be disqualified from approval of any petitions filed by, or on behalf of, the employer. . ." for at least one year.

Second, under 20 C.F.R. § 655.810 (b) (2), the civil monetary penalties may not exceed $5,000 for a violation relating to:  (i) a willful failure pertaining to wages/conditions of employment, strike/lockout, notification, LCA specifics, recruitment and worker displacement (including secondary displacement); (ii) willful misrepresentation of a material fact; and (iii) unlawful employee discrimination.  The associated disqualification period is at least two years. 20 C.F.R. § 655.810 (d) (2).

Third, under 20 C.F.R. § 655.810 (b) (3), the Administrator may impose a civil money penalty not greater than $35,000 when an employer displaced a U.S. worker in conjunction with a willful violation of any provision of § 655.805 (a) (2) to (9).  The corresponding disqualification of the employer continues for at least three years. 20 C.F.R. § 655.810 (d) (3).

The Administrator may also impose other administrative remedies, including reinstatement and back wages for violations of the provisions in (b) (1) (i) to (iii), (b) (2), and (b) (3). 20 C.F.R. § 655.810 (e) (2).

In setting the amount of the civil money penalty, the Administrator must consider: the employer's previous compliance history, the number of workers affected, gravity of the violation, good faith efforts by the employer, employer's explanation, employer's commitment to future compliance, and any financial gain received by the employer. 20 C.F.R. § 655.810 (c).

In addition to a civil money penalty, the Administrator "shall notify the Attorney General pursuant to § 655.855" that an employer is disqualified from receiving LCA approvals for a set period of time ranging from one year to three years depending on the nature of the violation and willfulness of the employer's violation. 20 C.F.R. § 655.810 (d).

- 4 -

49

20 C.F.R. § 655.855. Upon final determination of the violations, the Administrator shall notify the Attorney General and ETA of the associated employer disqualification periods set out in 655.810 (d).  20 C.F.R. § 655.810 (a).  Upon notification, and for the specified period, the Attorney General shall not approve any additional petitions filed by the employer for the employment of nonimmigrant workers. 20 C.F.R. § 655.810 (c). Upon receipt of the Administrator's notice, the ETA shall invalidate any Subpart H LCAs and not accept any new applications for the specified period. 20 C.F.R. § 655.855 (d).

### Parties' Positions

<u>A. Motions for Summary Decision/Judgment</u>

#### Respondent

For multiple, and at times alternative reasons, a summary decision in favor of Tekstrom should be granted and the case dismissed.

First, according to the "plain language" of the regulations, the cited violation by Tekstrom is not identified as a violation requiring disqualification for one year.  The provisions requiring the Attorney General to preclude the approval of petitions under the INA, 20 C.F.R. §§ 655.855 (a) and (c), specifically state that the applicable offenses and duration of the disqualifications are set out in 20 C.F.R. § 655.810 (f). However, Tekstrom's cited violation, failure to make a displacement inquiry of a secondary employer, is not contained in 20 C.F.R. § 655.810 (f).

Next, and closely related, another regulatory provision, 20 C.F.R. § 655.810 (d), does associate disqualification with some violations.  However, it may not be applied to Tekstrom in this case because the Administrator failed to reference that specific subparagraph in its determination letter as authority for a one year disqualification.  Due to the absence of that specific citation, Tekstrom had insufficient notice of the Administrator's authority to impose the disqualification upon which to base a response.  As a result, the Administrator may not impose the disqualification remedy.

Third, and in the alternative, if 20 C.F.R. § 655.810 (d) is to be considered applicable in Tekstrom's situation, its language still does not require a one year disqualification for Tekstrom's failure to make a displacement inquiry.  In establishing the disqualification remedy, Section 810 (d) (1) references violations set out in 20 C.F.R. § 655.810 (b) (1) (i).  The only violation relating to displacement in 20 C.F.R. § 655.810 (b) (1) (i) is the "displacement of U.S. workers," a violation different than Tekstrom's failure to make secondary displacement inquiries.  The distinction is significant because 20 C.F.R. § 655.805 lists the two actions as separate violations under (a) (7) (displacement of U.S. workers) and (a) (8) (failure to make a displacement inquiry).  Consequently, since 20 C.F.R. § 655.810 (b) (1) (i) does not include Tekstrom's violation of failing to make a displacement inquiry, the one year disqualification sanction set out in 20 C.F.R. § 655.810 (d) is inapplicable.

- 5 -

Fourth, while 20 C.F.R. § 655.810 (d) states the Administrator "shall" notify the Attorney General of the one year disqualification, that term should be interpreted as discretionary, rather than mandatory. In an earlier pre-hearing dispute, counsel for the Administrator argued that the term "shall" (as it related to completion of a complaint determination within 30 days) was discretionary and prevailed on the motion.[4] Consistent with that holding, the term "shall" should continue to be interpreted as discretionary. Additionally, numerous courts have indicated that the term "shall" in administrative enforcement proceedings should be viewed as discretionary.

If disqualification is discretionary under 20 C.F.R. § 655.810 (d), then imposition of the one year disqualification would be an abuse of discretion. In Tekstrom's case, no U.S. worker was actually displaced. The nearly year and a half long investigation disclosed no other violations of the regulation or law. Significantly, the one year disqualification would be the "death knell" for Tekstrom.

Finally, in light of the language of the INA, Tekstrom should not be disqualified due to a failure to make a displacement inquiry when it is unaware of the company which has actually received the nonimmigrant worker. According to 8 U.S.C. § 1182 (n) (2) (E), if an H-1B dependent employer places a nonimmigrant worker with another employer and the other employer has displaced or displaces a U.S. worker, the H-1B dependent employer is in violation of an LCA condition. Yet, while civil money penalties may be imposed for this violation, the Attorney General may impose the additional disqualification sanction <u>only</u> if the Secretary of Labor determines that the H-1B dependent employer <u>knew or had reason to know</u> of such displacement.

In its business, Tekstrom usually places a nonimmigrant worker with a vendor. In turn, the vendor places the nonimmigrant worker with a third employer, who is usually unknown to Tekstrom. As a result, in the absence of the requisite knowledge of the tertiary employer, Tekstrom would not be held liable for displacement of a U.S. worker employed by the tertiary employer. In the same manner, since the tertiary employers are unknown to Tekstrom, the company cannot be held in violation of the statute and regulation for failing to make a displacement inquiry of the tertiary employers.

### Prosecuting Party

Since neither a genuine issue of material fact nor a credibility issue are present in this case, a Summary Judgment in favor of the Prosecuting Party for all remaining issues should be granted. Tekstrom violated 8 U.S.C. § 1182 (n) (1) (F) and 20 C.F.R. § 655.738 by failing to make secondary displacement inquiries of employers at worksites where fourteen of Tekstrom's H-1B nonimmigrant workers were employed, even though Tekstrom was unaware of the ultimate placement of the nonimmigrant workers. Due to the violations, a civil money penalty of

---

[4] Both parties have changed interpretation horses at this present litigation stream. In the previous pre-hearing dispute, counsel for Tekstrom argued just as adamantly that the term "shall" was mandatory.

$3,400 is appropriate and the matter must be referred to the Attorney General for the mandatory one year disqualification.[5]

The plain language of the statute, 8 U.S.C. §§ 1182 (n) (1) (E) and (F) and 20 C.F.R. §§ 655.738 (d) (2) and (5) prohibited Tekstrom, an H-1B dependent employer, from placing certain H-1B nonimmigrant workers with other employers, in situations that had the indicia of an employment relationship, without making an inquiry of the other employers about displacement of U.S. workers. Between January 19, 2001 and October 1, 2002,[6] Tekstrom completed and submitted LCAs for fourteen nonimmigrant workers. Since it did not claim that any of the 14 workers were in "exempt" status, Tekstrom was bound by the LCA non-displacement attestation provisions.[7] Under these provisions, Tekstrom agreed to comply with "certain obligations" to avoid displacement of U.S. workers either in its own workforce or the workforce of a secondary employer with whom the H-1B nonimmigrant was placed. The completed LCAs were subsequently approved by DOL. In turn, INS issued visas for the 14 nonimmigrant workers. Through multiple contracts with numerous vendors, Tekstrom placed 13 nonimmigrant workers with vendors who then placed the workers in their clients' businesses. Tekstrom placed the remaining nonimmigrant worker with its own client business. Each of the immigrant's working conditions had the requisite indicia of an employment relationship.

At the time of the workers' placements with secondary and other employers, Tekstrom failed to make the required non-displacement inquires. Specifically, Tekstrom did not: a) inquire of its vendors and client business whether they displaced or intended to displace U.S. workers; b) seek assurances from its vendors that the vendors' client businesses would not displace U.S. workers through their placement of the nonimmigrant workers; and, c) include a non-displacement clause in its contracts with the vendors and client business. By these failures, Tekstrom willfully violated the H-1B program regulation, 20 C.F.R. § 655.738, as set out in the Summary of Violations and Remedy attached to the Administrator's determination letter.

Taking into consideration the multiple factors in mitigation and extenuation set out in 20 C.F.R. § 655.810 (c), the Administrator reasonably and properly determined a civil money penalty in the amount of $3,400. Tekstrom does not contest the amount of the civil money penalty.

Under the plain language of the statute and regulation, 8 U.S.C. § 1182 (n) (2) (C) (i) and 20 C.F.R. § 655.810 (d), the one year disqualification sanction is a mandatory penalty for a violation of the displacement provisions in 20 C.F.R. § 655.738. While the statute indicates the Secretary "may" impose other administrative remedies, the law also states the Secretary "shall" notify the Attorney General of a failure to comply with the LCA conditions. Upon such notification, the Attorney General "shall not" approve the employer's applications for one year.

---

[5]Neither party addressed the effectiveness of a referral to the Attorney General since INS has been transferred from the U.S. Department of Justice to the Department of Homeland Security.

[6]Joint stipulation of fact, No. 9.

[7]Although 12 of the 14 nonimmigrant workers were qualified for exempt status, Tekstrom's failure to claim exempt status on the respective LCAs waived its option not to be bound by the additional LCA attestation obligations concerning non-displacement. 20 C.F.R. § 655.737 (e) (3).

Giving the term "shall" its ordinary and natural meaning, neither the Secretary nor the Attorney General have the discretion to modify or reduce the one year disqualification. When Congress intends to provide such discretion, a statute will include specific language to that effect. For example, in the Service Contract Act, 41 U.S.C. 354 (a), the Secretary has the specified discretion not to impose a three year contract debarment in "unusual circumstances." Absent any such provision in this case, and considering the significant purpose behind the statutory and regulatory language, the protection of U.S. workers, the term "shall" imposes an mandatory obligation on the Secretary and Attorney General. In a previous case, the DOL administrative appellate body has upheld the one year disqualification due to an inaccurate notification statement in three LCAs.[8]

Tekstrom's obligation concerning displacement inquiries was not extinguished by its use of vendors who then passed the nonimmigrant workers onto other employers. The regulation, 20 C.F.R. § 655.738, through the phrase, "not limited to" and the word "other" clearly envisions that an H-1B dependent employer's inquiry obligation goes beyond its immediate clients. Tekstrom had an obligation to make a reasonable effort to determine whether the placement of its 14 nonimmigrant workers with other employers, through its vendors, would have displaced U.S. workers. Even without knowing the identity of the other employers, Tekstrom could have readily obtained non-displacement assurances from its vendors, and/or included a non-displacement clause in its contracts with the vendors. Even if the workers passed through Tekstrom's vendors are excluded, Tekstrom still violated the statute and regulation by placing one nonimmigrant worker with its own client business without making the requisite displacement inquiry.

<u>B. Response Briefs</u>

Respondent

The legislative history of the statute demonstrates that imposition of the one year disqualification is discretionary and not mandatory. Additionally, Congress clearly only intended sanctions to be imposed if the employer was aware of an employee displacement. In Tekstrom's case no displacement of a U.S. worker occurred. The regulations were designed to distinguish between inadvertent or good faith errors and willful violations. In this case, Tekstrom's cited violations were due to an inadvertent error.

The Administrator's insistence that the term "shall" sets out a mandatory duty is inconsistent with the Administrator's earlier position and court interpretations of the term during administrative enforcement actions. The Secretary does have discretion on the referral sanction. Since no harm was done to any U.S. worker, the Secretary should exercise that discretion and not impose the severe penalty of a one year disqualification.

In situations where actual displacement of a U.S. worker occurs, Tekstrom acknowledges an H-1B dependent employer would be liable for the violation regardless of whether it was aware of the displacement. However, in Tekstrom's case, where <u>no</u> displacement occurred, it's

---

[8]*Kolbusz-Kijine v. Technical Career Institute*, 1993 LCA 4, 1994 WL 897284, at page 8 (Sec'y July 18, 1994) and *Kolbusz-Kijine v. Technical Career Institute II*, 1994 LCA 10, 1995 WL 848103, n. 3 (Sec'y July 3, 1995).

lack of knowledge concerning the other employers is a viable defense. Congress could not have intended that in cases where no displacement occurred, an H-1B dependent employer should nevertheless be forced out of business by the one year disqualification.

Prosecuting Party

The Respondent, Tekstrom, should not be permitted to raise for the first time in its Motion of Summary Decision the defenses that a) the plain language of the regulation the Administrator cited in the Determination Letter does not require debarment; and, b) the regulatory provision that does authorize debarment can not be applied against Tekstrom because Administrator failed to cite that provision in the Determination Letter. Due to the late submission of these two defenses, Tekstrom has waived them.

Although 20 C.F.R. § 655.810 (f) cited by the Administrator in the Determination Letter does not specifically address the one year disqualification, the Determination Letter and its attachment, when read together, provide sufficient information to establish that Section 1182 (n) of the statute and all of 20 C.F.R. § 655.810 are applicable, including 20 C.F.R. § 655.810 (d), which sets out the one year disqualification sanction. Significantly, the statute itself, at 8 U.S.C. § 1182 (n) (2) (C) (i) (I), (II), associates the failure to make required secondary displacement inquiries with the debarment sanctions. Further, as readily apparent in Tekstrom's responses, the company is well aware that the one year disqualification is being brought under authority of 20 C.F.R. § 655.810 (d) and the statute.

While 20 C.F.R. § 655.810 (d) was not actually cited in the Determination Letter, the Administrator did specifically state the alleged violation fell under 8 U.S.C. § 1182 (n) and 20 C.F.R. § 655.738 and that the intended remedies were both a civil money penalty and notification to the Attorney General for a one year debarment action. In light of that language, Tekstrom was clearly placed on notice of both the alleged violation and intended consequences. Notably, Tekstrom has failed to establish any prejudice due to the absence of a specific citation to 20 C.F.R. § 655.810 (d) in the determination letter.

When its sections are read together, Part 655 establishes that the phrase "displacement of U.S. workers" refers to both actual displacement and displacement inquiries. The congressionally mandated sanction for a violation concerning displacement of U.S. workers is the debarment referral to the Attorney General. Although some courts have carved out a few exceptions to the mandatory meaning of "shall" in agency enforcement actions, other tribunals have determined that agency discretion lies in bringing an enforcement action rather than the application of the sanction if a violation is established. Since the Administrator is an agency representative, his reasonable interpretation that the congressional use of the term "shall" imposes an mandatory obligation is entitled to deference.

Finally, the facts in this case clearly establish that in regards to its own client business, Tekstrom failed to make the requisite displacement inquiry. Although remaining violations relate to placement of H-1B nonimmigrant workers with vendors' client businesses, compliance with the regulatory inquiry requirements in regards to those other placements was neither impossible nor impracticable. As an H-1B dependent employer seeking approval of its LCAs,

- 9 -

54

Tekstrom accepted the applicable LCA conditions, including the duty to make displacement inquiries. The regulation provides several methods for meeting that obligation, including the use of contractual non-displacement clauses. However, Tekstrom chose no action at all.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Stipulations of Fact

As part of their respective motions, the parties have agreed to the following relevant stipulations of fact. Cyber World Enterprise Technologies, Inc., d/b/a Tekstrom, is an H-1B dependent employer as defined by 20 C.F.R. § 655.736, engaged in computer software development and consulting (4 and 9).[9] The company also provides computer maintenance service and recruits and employs skilled computer professionals (5 and 6).

Between January 19, 2001 and October 1, 2002, Tekstrom's president, Mr. Suresh Kakkirala, submitted 14 LCAs (exhibits A-1 to A-14), which where approved by DOL (14 to 17).[10]

On each LCA, Mr. Kakkirala declared Tekstrom was an H-1B dependent employer (19). He did not select the option on any of the submitted LCAs that indicates the LCA will be used to support a petition for an exempt nonimmigrant (20). On each LCA, Tekstrom agreed to comply with both the primary attestations (relating to wages, working conditions, strike/lockouts, and notice to union and workers) and, due to its status as an H-1B dependent employer, the additional labor conditions statements, which included nondisplacement of U.S. workers in another employer's work force (21).

Between January 19, 2001 and October 1, 2002, through numerous contracts, Tekstrom placed the fourteen H-1B nonimmigrant workers with various vendors (23 and 24 and exhibits C-1 to C-19). The vendors in turn placed the H-1B nonimmigrant workers with their respective client businesses at the clients' worksites where the H-1B nonimmigrant workers performed work for the client businesses (22 and 25). From August 6, 2001 to March 9, 2002, Tekstrom also placed one H-1B nonimmigrant worker with its own client business (27 and 28). At each of the worksites, the H-1B nonimmigrant worker's working conditions had the indicia of an employment relationship with the client business, including the client business' rights: to discharge the H-1B nonimmigrant worker, assign work, and control the manner, method, and duration of work (26, 29, 30, and 31). Additionally, at each worksite, the H-1B nonimmigrant worker used the client business' equipment and supplies (32).

During the placement of each H-1B nonimmigrant worker with a vendor or its own client business, Tekstrom did not inquire whether such vendor or client business displaced or intended to displace any similarly employed U.S. worker within 90 days of the H-1B nonimmigrant's placement (33, 34, and 35). Similarly, Tekstrom did not obtain any assurances from its business client and vendors that the H-1B nonimmigrant's placement would not displace similarly

---

[9]Numbered joint stipulations of fact

[10]Usually DOL approved the LCAs after 5 to 11 days of receipt (*see* A-1 to A-14).

- 10 -

55

employed U.S. workers within 90 days of the placement (39). Additionally, Tekstrom did not inquire of any of the vendors through which the H-1B nonimmigrant workers had been placed whether the vendor sought assurances from its client businesses who received H-1B nonimmigrant workers that such placement would not displace any U.S. worker within 90 days (36). None of Tekstrom's contracts with its client business and vendors contained clauses which required: a) the client business or vendor not to displace any U.S. worker within 90 days of the H-1B nonimmigrant worker's placement; or, b) the vendor to seek assurances from other businesses with which the H-1B nonimmigrant workers were placed that such businesses would not displace any U.S. worker within 90 days of placement (37 and 38).

Of the fourteen H-1B nonimmigrant workers, only two individuals received an annual salary less than $60,000 and did not have advanced education degrees (43 and 44). As a result, these two individuals did not qualify for "exempt" status within the meaning of 20 C.F.R. § 655.737 (45). At the worksites where these two individuals were placed, no U.S. worker was displaced within 90 days of their placement (46 and 47).

Based on the receipt of a complaint, the Administrator conducted an investigation of Tekstrom's compliance between January 19, 2001 and October 1, 2002 (7, 8, and 9). Tekstrom cooperated with the investigation (33, 34, and 40). Other than Tekstrom's failure to make the required secondary displacement inquiries, the full-scoped investigation revealed no other violations (48).

Finally, Tekstrom and the Administrator agree that the civil money penalty of $3,400 is appropriate for the alleged violation (41).

### Preliminary Finding and Defense Issues

The principal issue that led to this dispute involves the purported mandatory imposition of a one year debarment of Tekstrom for its LCA violations. Prior to addressing that concern, I first must discuss the existence of a violation and then consider the additional issues Tekstrom raised as defenses against imposition of the debarment sanction.

### A. Violation

Based on the stipulations of findings, I conclude that between January 19, 2001 and October 1, 2002, as an H-1B dependent employer, Tekstrom committed fourteen violations of 8 U.S.C. § 1182 (n) (1) (F). On each respective LCA supporting the visa for an H-1B nonimmigrant worker, Tekstrom agreed to comply with the additional LCA conditions which included the requirement in 8 U.S.C.§ 1182 (n) (1) (F) to make an inquiry of another employer prior to placement of an H-1B nonimmigrant worker with that other employer, whether the other employer had displaced, or intended to displace, a U.S. worker similarly employed by the other employer within 90 days of the nonimmigrant worker's placement. Between January 19, 2001 and July 2002, Tekstrom violated its LCA secondary displacement condition by failing to make any inquiry of, or seek assurances from, the other employers, including both its own client business and vendors, who received and placed its H-1B nonimmigrant workers. Likewise,

Tekstrom failed to include contractual provisions in its fourteen contracts related to the non-displacement of U.S. workers.

In light of these violations, under 8 U.S.C. § 1182 (n) (2) (C) (i) (I), a civil money penalty of $3,400 against Tekstrom is appropriate. In accordance with procedures in 20 C.F.R. §655.810 (f), the civil money penalty is due immediately upon the decision of the administrative law judge unless the Secretary grants review of the decision.

### B.  Absence of Reference in 20 C.F.R. § 655.810 (f) to Tekstrom's Violation

As one defense to imposition of the one year debarment, Tekstrom asserts that since its violation of failing to make secondary inquiries is not mentioned in 20 C.F.R. § 655.810 (f), referral to the Attorney General is not required. As Tekstrom correctly observes, the portion of the regulation that directs the Administrator to provide notice of violations to the Attorney General for disqualification for a specified period of time is 20 C.F.R. § 655.855 (a), which states that the violations requiring such notice are found in "20 C.F.R. § 655.810 (f)." Upon turning to 20 C.F.R. § 655.810 (f), a reader finds no violations listed at all. Instead, the paragraph mentions civil money penalties, back wages and other administrative remedies and essentially provides guidance on how civil money penalties are to be paid. The reference in Section 855 (a) should be to Section 810 (d), which associates a one year debarment with a violation of 20 C.F.R. § 655.810 (b) (1), pertaining to the "displacement of U.S. workers (§ 655.738)." The Section 855 (a) referral to Section 810 (f) appears to be an administrative error.

The resolution of this issue is fairly straightforward for two reasons. First, the statute itself directs the Administrator to make the AG referral. Specifically, 8 U.S.C. § 1182 (n) (2) (C) (i) states that if the Secretary of Labor finds a "failure to meet a condition" relating to the employer's obligation to state on the LCA that neither primary (Section 1182 (n) (1) (E)) nor secondary (Section 1182 (n) (1) (F)) displacement of a United States worker has occurred, "(I) the Secretary shall notify the Attorney General of such finding. . .and, the Attorney General shall not approve petitions filed with respect to that employer. . . during a period of at least 1 year. . ." Any subsequent incorrect internal regulation references obviously do not invalidate the language of the INA associating a secondary displacement violation with a one year disqualification referral.

Second, the incorrect reference in Section 855 (a) has a *de minimis* effect on the Administrator's regulatory authority because it is not the only paragraph in Part 655 that directs the Administrator to notify the Attorney General of violations. Notably, 20 C.F.R. § 655.810 (d) also states: "The Administrator shall notify the Attorney General pursuant to § 655.855 that the employer shall be disqualified from approval of any petitions filed by, or on behalf of, the employer. . . for. . . at least one year for violation (s) of any of the provisions specified. . ." in Section 810 (b), which includes the displacement of U.S. workers. In light of this language, Section 855 (a) may be read as simply providing a cross-reference (albeit incorrect), rather than serving as the enabling provision.

Consequently, based both on the language of the enacting statue, 8 U.S.C. § 1182 (n), and 20 C.F.R. § 655.810 (d), the incorrect reference in Section 855 (a) and the corresponding

- 12 -

57

absence of any language about violations in the referenced Section 810 (f) provides no defense for Tekstrom.

### C. Absence of 20 C.F.R. § 655.810 (d) Citation in Determination Letter

Closely related to the Section 855 (a) reference issue, Tekstrom maintains the Administrator's failure to specifically cite 20 C.F.R. § 655.810 (d) in the Determination Letter represents insufficient notice of the Administrator's authority to initiate the disqualification procedure. Absent that notice, the Administrator does not have authority to make a referral to the Attorney General in this case.

In the Determination Letter, the Administrator indicates that a violation had been found under the provisions of 8 U.S.C. § 1182 (n). As a result, from a legal perspective, the Determination Letter does inform Tekstrom of the Secretary's principal source of authority in this enforcement action – the statute. Further, from a fairness consideration, within the four corners of the Determination Letter and its attachment, Tekstrom was placed on sufficient notice that the two intended remedies were a) $3,400 in civil money penalties, and b) referral to the Attorney General for a one year disqualification. Tekstrom's understanding of those intended consequences was readily demonstrated in its April 2, 2003 request for a hearing. At that time, Tekstrom stated the hearing request was presented "for the simple reason that one-year debarment penalty imposed on Tekstrom is out of proportion." Additionally, I note that not until the filing of its Motion for Summary Decision did Tekstrom suggest any confusion about the Administrator's authority for making the Attorney General referral.

The Determination Letter sufficiently provided both legal and factual information to place Tekstrom on fair notice of the alleged violations and intended consequences. The lack of a specific citation to 20 C.F.R. § 655.810 (d) does not deprive the Administrator of the authority to notify the Attorney General of the violations in this case.

### D. Violation Displacing a U.S. Worker versus Failure to make Displacement Inquiry

In the regulation, Section 655.810 (d) (1) relates the one year disqualification period to a violation of the provisions of 20 C.F.R. §§ 655.810 (b) (1) (i) to (iii). In turn, Section 655.810 (b) (1) (i) states: "A violation pertaining to . . . displacement of U.S. workers (§ 655.738)." Maintaining the later reference only involves the actual displacement of a U.S. worker, and asserting that failure to make a displacement inquiry is a different offense, Tekstrom believes the Section 655.810 (b) (1) (i) reference and corresponding one year disqualification in Section 810 (d) (1) do not apply to its violation.

As noted by Tekstrom, under the regulation, 20 C.F.R. § 655.805 (a) (8), failure to make a displacement inquiry, is considered a distinct violation, separate from the actual displacement of a U.S. worker, 20 C.F.R. §§ 655.805 (a) (7) and (10). However, the purported defense based on the sole use of the term "displacement of U.S. workers" in Section 655.810 (b) (1) (i) is overcome by the specific language of the statute and a parenthetical reference in the regulation.

The regulatory sanction provision in 20 C.F.R. § 655.810 (d) (1) ($1,000 in civil money penalty and a one year disqualification) is based on 8 U.S.C. 1182 (n) (2) (C) (i) (I) and (II). In Section 1182 (n) (2) (C) (i) through the use of subparagraphs I and II, the statute imposes a civil money penalty up to $1,000 and a one year disqualification for violations of <u>both</u> the primary displacement LCA condition, Section 1182 (1) (E), <u>and</u> the secondary displacement inquiry LCA condition, Section 1182 (1) (F). So, although the sole use of "displacement of U.S. workers" in 20 C.F.R. § 655.810 (b) (1) (i) might suggest the sanction is applicable only in situations involving the actual displacement of a U.S. worker, the statutory language definitively applies the sanction to both actual displacement and failure to make the secondary displacement inquiry. Consequently, the clear language of the statute controls over any perceived regulatory uncertainty.

As attempted clarification, 20 C.F.R. § 655.810 (b) (1) (i) cross-references Section 655.738 as a parenthetical modifier to its term "displacement of a U.S. worker." Containing the term "non-displacement of U.S. workers" in its caption, Section 655.738 sets out the specific responsibilities of an H-1B dependent employer concerning both direct displacement situations, 20 C.F.R. § 655.738 (c), and secondary displacement scenarios, 20 C.F.R.§ 655.738 (d). Included in the secondary displacement situation is the obligation to make displacement inquiries of secondary/other employers, 20 C.F.R. 655.738 (d) (5). Thus, a fair reading of Section 738 indicates the phrase "non-displacement of U.S. workers" in the section's title is a <u>general</u> term covering obligations associated with both direct, or actual, displacement and secondary displacement of U.S. workers. Correspondingly, the reference to Section 655.738 in Section 655.810 (b) (1) (i) reflects an intention to give broad meaning to the term "displacement of a U.S. worker." In other words, by referencing Section 655.738 in connection with displacement of U.S. workers, Section 655.810 (b) (1) (i) reasonably draws in both direct displacement and secondary displacement obligations, making failure to make a secondary displacement inquiry a Section 655.810 (b) (1) (i) violation, which then triggers the Section 655.810 (d) (1) one year disqualification.

<u>E. Knowledge Defense</u>

Other than one placement with its own client business, Tekstrom placed the nonimmigrant workers obtained through the H-1B program with its vendors who in turn placed the nonimmigrant workers with their own client businesses throughout the country. Because Tekstrom had contractual relationship only with the vendors, it was not aware of the vendor's client businesses.[11] Since Tekstrom did not know these tertiary employers, it asserts the language of the statute precludes imposition of the one year disqualification sanction. Specifically, as a prerequisite to the Attorney General's imposition of the one year

---

[11]Tekstrom did not strongly contest its obligation to make secondary displacement inquiries even when its vendors are actually placing the nonimmigrant workers with tertiary employers. To the extent its knowledge defense raises that issue, I find Tekstrom does have a duty to make secondary displacement inquiries even when its vendors make the employment placement. In setting out the secondary displacement inquiry obligation of an H-1B dependent employer, the statute, 8 U.S.C § 1182 (n) (1) (F), speaks in terms of placing the nonimmigrant worker with "another employer." Likewise, the regulation, 20 C.F.R. § 655.738 (d), uses the phrases "another employer" and "a secondary <u>or other</u> employer (emphasis added). Additionally, the regulation specifically notes that the secondary or other employer may "often be (<u>but is not limited to</u>) the client or customer of the H-1B employer" (emphasis added), 20 C.F.R. § 655.738 (d) (3).

- 14 -

59

disqualification sanction, 8 U.S.C. § 1182 (n) (2) (E) requires the Secretary of Labor to make a specific finding that the H-1B dependent employer knew, or had reason to know, of a displacement of a U.S. worker.

In addressing this issue, a more detailed review of various types of violations and sanctions associated with the employment of H-1B nonimmigrant workers is helpful. In general terms, balancing various interests, Congress established a two part program in 8 U.S.C. § 1182 (n) to permit aliens to work temporarily in the United States in specialty occupations. In the first part, to facilitate prompt approval of applications for work visas, the LCA process was set up by Section 1182 (n) (1) to permit issuance of visas based on an employer's promise that certain conditions had been, or would be, fulfilled. As a result, every employer must agree to comply with several primary conditions relating to a) the nonimmigrant workers' wages and working conditions (Sections 1182 (n) (1) (A) (i) and (ii) and 20 C.F.R. §§ 655.731 and 732); b) the absence of a labor strike or lockout at the place of employment (Section 1182 (n) (1) (B) and 20 C.F.R. § 655.733); and, c) notice to the employer's employees or their union (Section 1182 (n) (1) (C) and 20 C.F.R. § 655.734).

In addition to the principal certifications set out above, an H-1B dependent employer must also a) attest that the employer will not displace a U.S. worker within 90 days of the nonimmigrant's placement (Section 1182 (n) (1) (E) and 20 C.F.R. §655.738); b) if the nonimmigrant is to be placed with another employer, inquire of the other employer whether the other employer has, or intends to, displace a U.S. worker within 90 days of placement (Section 1182 (n) (1) (F) and 20 C.F.R.§ 655.738); and, c) take good faith steps to recruit U.S. workers for the intended nonimmigrant worker's position (Section 1182 (n) (1) (G) and 20 C.F.R. § 655.739).

In the second part, Section 1182 (n) (2), to ensure that U.S. workers are not actually harmed or displaced by the H-1B nonimmigrant workers, Congress gave the Secretary, U.S. Department of Labor, investigative and enforcement powers. Through application of this authority, and the regulation, 20 C.F.R. §§ 655.800 to 855, the Secretary ensures that employers obtaining H-1B nonimmigrant workers comply with the conditions, or representations, made on the LCAs to support the H-1B visas. Failure to meet the LCA conditions are considered violations of the INA statute and are separated into five separate categories, distinguished by the subject matter of the LCA condition and the employer's state of mind, as set out below:

1. Simple non-compliance (Section 1182 (n) (2) (C) (i)) – failure to comply with:

    a. The principal LCA certification that a strike or lockout is not ongoing at the employment site for the nonimmigrant. Section 1182 (n) (1) (B) and 20 C.F.R. § 655.805 (a) (4).

    b. The H-1B dependent employer certification that the employer did not, and will not, displace a similarly employed U.S. worker at its worksite within 90 days of the nonimmigrant worker's placement. Section 1182 (n) (1) (E). Apparently, the Secretary has interpreted this provision to also include displacement of a U.S. worker by a secondary or other employer. In setting out this violation, 20 C.F.R. § 655.805 (7)

- 15 -

states, "Displaced a U.S. worker (including displacement of a U.S. worker employed by a secondary employer at the worksite where an H-1B employee is placed). . ."

    c.   The H-1B dependent employer certification that prior to placing a nonimmigrant worker with another employer, the H-1B dependent employer inquired of the other employer whether the other employer displaced, or intends to displace, one of its employees who is a U.S. worker. Section 1182 (n) (1) (F) and 20 C.F.R. § 655.805 (a) (8).

2.   Substantial Failure (Section 1182 (n) (2) (C) (i)) – significant noncompliance with:

    a.   The principal LCA certification that a notice of the LCA filing has been provided to the employer's employees or their union. Section 1182 (n) (1) (C) and 20 C.F.R. § 655.805 (a) (5).

    b.   The H-1B dependent employer certification that a good faith effort has been made to recruit U.S. workers. Section 1182 (n) (1) (G) (i) (I) and 20 C.F.R. § 655.805 (a) (9).

3.   Willful Failure (Section 1182 (n) (2) (C) (ii) and 20 C.F.R. 655.805 (c)) – knowing failure to comply, or reckless disregard for compliance, with:

    a.   The principal LCA certification that the employer is offering the nonimmigrant worker wages that are at least equal to the actual wage level paid by the employer to other similarly situated employees, or the prevailing wage for the occupation in the area of employment. Section 1182 (n) (1) (A) (i) and 20 C.F.R. § 655.805 (a) (2).

    b.   The principal LCA certification that the employer will provide working conditions for the nonimmigrant worker that will not adversely affect the working conditions of other similarly situated employees. Section 1182 (n) (1) (A) (ii) and 20 C.F.R. § 655.805 (a) (3).

    c.   The principal LCA certification that a strike or lockout is not ongoing at the employment site for nonimmigrant. Section 1182 (n) (1) (B) and 20 C.F.R. § 655.805 (a) (4).

    d.   The principal LCA certification that a notice of the LCA filing has been provided to the employer's employees or their union. Section 1182 (n) (1) (C) and 20 C.F.R. § 655.805 (a) (5).

    e. The H-1 B dependent employer certification that the employer did not, and will not, displace a similarly employed U.S. worker at its worksite within 90 days of the nonimmigrant worker's placement.   As discussed above, this provision includes displacement of a U.S. worker by a secondary or other employer. Section 1182 (n) (1) (E) and 20 C.F.R. § 655.805 (a) (7).

f.  The H-1B dependent employer certification that prior to placing a nonimmigrant worker with another employer, the H-1B employer inquired of the other employer whether the other employer displaced, or intends to displace, one of its employees who is a U.S. worker.  Section 1182 (n) (1) (F) and 20 C.F.R. § 655.805 (8).

g.  The H-1B dependent employer certification that a good faith effort has been made to recruit U.S. workers.  Section 1182 (n) (1) (G) (i) (I) and 20 C.F.R. § 655.805 (9).

4.  Willful Failure/Actual Displacement – when the employer's willful failure, as set out above in No. 3, causes the actual displacement of a U.S. worker.

5.  Compliance/Knowledge of Actual Displacement –  even if an H-1B dependent employer has complied with Section 1182 (n) (1) (F) in placing a nonimmigrant worker with a secondary employer, a violation of the LCA conditions occurs if a) the other employer either displaced or displaces one of its U.S. employees within 90 days of the nonimmigrant worker's placement; and, b) the H-1B dependent employer knew, or had reason to know, of such displacement at the time of the nonimmigrant worker's placement.  Section 1182 (n) (2) (E).

In summary, the statute sets out five categories of violations directly associated with the LCA conditions:  failure, substantial failure, willful failure, willful failure causing displacement of a U.S. worker; and, H-1B inquiry compliance with knowledge of actual displacement of a secondary employer's employee.  Based on these distinct categories of violations, the statute lists corresponding sanctions in terms of civil monetary penalties and disqualification, as set out below:

1.  Failure violation – a civil money penalty not to exceed $1,000 and Secretarial referral to the Attorney General for a one year disqualification.  Sections 1182 (n) (2) (C) (i) (I) and (II) and 20 C.F.R. § 655.810 (b) (1) (i) and (d) (1).

2.  Substantial failure violation - a civil money penalty not to exceed $1,000 and Secretarial referral to the Attorney General for a one year disqualification.  Sections 1182 (n) (2) (C) (i) (I) and (II) and 20 C.F.R. §§ 655.805 (b), 655.810 (b) (1) (i) and (d) (1).

3.  Willful (knowing or reckless disregard) violation - a civil money penalty not to exceed $5,000 and Secretarial referral to the Attorney General for a two year disqualification.  Sections 1182 (n) (2) (C) (ii) (I) and (II) and 20 C.F.R. §§ 655.805 (b), 655.810 (b) (2) (i) and (d) (2).

4.  Willful violation and actual displacement - a civil money penalty not to exceed $35,000 and Secretarial referral to the Attorney General for a three year disqualification.  Sections 1182 (n) (2) (C) (i) (I) and (II) and 20 C.F.R. § 655.810 (b) (3) (i) and (d) (3).

5.  Inquiry compliance and subsequent knowledge of displacement of a secondary employer's U.S. employee – Secretarial referral to the Attorney General for a disqualification ranging from one year to three years.  Section 1182 (n) (2) (E).

- 17 -

Having detailed five statutory violations and corresponding sanctions, I return to Tekstrom's defense that the one year disqualification may not be imposed because Tekstrom did not know the tertiary employers of its H-1B nonimmigrant workers. To support that proposition, Tekstrom cites the language in Section 1182 (n) (2) (E) which precludes imposition of disqualification unless the H-1B dependent employer was aware of the displacement violation by the other employer. As set out above, the sanction terms in Section 1182 (n) (2) (E) relate only to a category number five violation, when the H-1B dependent employer has placed a nonimmigrant worker with the secondary employer in accordance with Section 1182 (n) (1) (F) and nevertheless the secondary employer displaces a U.S. worker. Clearly, that type of violation did not occur in Tekstrom's case because the company did not comply with the inquiry requirement. Rather, the cited violation against Tekstrom is the failure to make displacement inquiries of secondary employers as required by 8 U.S.C. 1182 (n) (1) (F) which is a category number one violation - failure or simple non-compliance. This type of violation has no knowledge element. Simple failure to comply with the applicable LCA condition is a violation that leads to a one year disqualification sanction. Consequently, for this offense, Tekstrom's lack of knowledge of the tertiary employers is not a defense.[12]

## Principal Issue

Upon a finding that an H-1B dependent employer has failed to make secondary displacement inquiries as required by 8 U.S.C. § 1182 (n) (1) (F), Section 1182 (n) (2) (C) (i) (I) states the "Secretary shall notify the Attorney General of such finding. . ." The next subparagraph (II) then states "the Attorney General shall not approve" the employer's visa petitions for at least one year.[13] In light of the use of the word "shall," the principal issue in this case concerns the discretion available to the Secretary in referring Tekstrom's violations to the Attorney General for imposition of a one year disqualification on obtaining visas for H-1B nonimmigrant workers under the provisions of 8 U.S.C. 1182 § (n) (C) (i) (II), as implemented by 20 C.F.R. §§ 655.810 (b) (1) (i) and (d) (1).

Understandably, Tekstrom asserts the word "shall" in Secretarial notification context should have the same meaning as the word "shall" in the investigative provisions of the statute and regulation which I determined in a pre-hearing motion to be discretionary. Further, Tekstrom presents a strong mitigation case under the factors set out in 20 C.F.R. § 655.810 (c). Notably, in Tekstrom's favor a) no U.S. or nonimmigrant worker was adversely affected by Tekstrom's administrative error; b) Tekstrom has no history of previous violations; c) the failure to make the secondary displacement inquiries was neither substantial nor willful; d) Tekstrom promptly cooperated with the Administrator's investigation; and, e) Tekstrom has initiated procedures to assure future compliance.

---

[12]To the extent Tekstrom's lack of knowledge might be viewed as an impossibility of compliance defense, I simply note that the regulation, 20 C.F.R. § 655.738 (d) (5) (i) (C), provides at least one means for compliance, a non-displacement contract clause, that could satisfy the inquiry obligation even where the H-1B dependent employer may not know the tertiary employers. Further, as part of its future compliance efforts, Tekstrom has inserted a non-displacement clause in four contracts with different vendors, executed between August 2002 and July 2003. See Exhibit E to Joint Stipulations of Fact.

[13]Regardless of my determination on this issue, I have no jurisdiction to determine whether the Attorney General has any discretion in imposing the one year disqualification under 8 U.S.C. 1182 (n) (2) (C) (i) (II).

- 18 -

63

In apparent acknowledgement of these numerous mitigation factors in Tekstrom's favor, the Administrator significantly reduced the amount of the civil money penalty for Tekstrom's fourteen violations,[14] as required by 20 C.F.R. § 655.810 (c). However, the language of 20 C.F.R. § 655.810 (c) applies mitigation consideration only to civil money penalties. The regulation contains no similar relief in regards to the disqualification sanction, even though the one year disqualification may be a more severe sanction than application of the maximum civil money penalty, as asserted by Tekstrom. As a result, Tekstrom reasonably maintains that reducing the civil money penalty based on extensive mitigation while at the same time still imposing the one year disqualification produces an inconsistent and unfair result.

I have carefully considered both the logical and equitable strengths of Tekstrom's assertion that the Secretary should exercise discretion in this particular case and not refer Tekstrom's violations to the Attorney General for initiation of the one year disqualification. However, based on the specific language of the relevant statutory sanction provision, consideration of that referral sanction provision within the context of the entire LCA statute, and review of a previous Secretarial decision on the issue, I conclude the Secretary does <u>not</u> have discretion under 8 U.S.C. § 1182 (n) (2) (C) (i) (I) concerning notification and must refer the finding of Tekstrom's violations to the Attorney General for imposition of the one year disqualification.

## A. Section 1182 (n) (2) (C) (i) (I)

Significantly, in 8 U.S.C. § 1182 (n) (2) (C) (i) (I), through the use of two contrasting operative words, Congress unequivocally established its intention in regards to the application of disqualification. After stating that the Secretary "shall" provide violation notification to the Attorney General for disqualification, the subparagraph continues, ". . .and <u>may</u>, in addition, impose other administrative remedies (including civil monetary penalties in an amount not to exceed $1,000 per violation). . ." (emphasis added). This use of "shall" and "may" in the same sanction provision clearly reflects congressional intent that the first command concerning notification/disqualification is mandatory while the imposition of other administrative remedies, such as a civil money penalty, is within the discretion of the Secretary.[15]

---

[14] *See also* Exhibit 1 to Prosecuting Party's Motion for Summary Judgment

[15] As I noted in my pre-hearing motion decision, the courts have provided an analytical framework for assessing whether an investigative provision's use of "shall" is mandatory. Applying that case law to the investigative provision, 8 U.S.C. § 1182 (n) (2) (B), I concluded "shall" was a discretionary instruction. In contrast, cases on enforcement provisions provide less guidance and usually are determined by the facts of the specific case. Thus, due to a lack of definitive case law, and in light of the use of both "shall" and "may" in this enforcement provision, my finding that "shall" acts as a mandatory command in this enforcement provision is not completely inconsistent with my earlier pre-hearing interpretation of "shall" as discretionary in the investigative subparagraph.

64

## B. Section 1182 (n)

Placing the enforcement provision within the context of the LCA statute's purpose and considering the interests the law protects, further supports a finding that Congress used "shall" to establish a mandatory command.  To effectuate the H-1B program and the temporary employment of nonimmigrant workers in specialty occupations, Congress balanced three interests:  streamlining the employer's application process, protecting nonimmigrant workers, and protecting U.S. workers.  The first consideration is met with the prompt review of an employer's LCA for completeness and obvious inaccuracies.

The other two interests involving both nonimmigrant and U.S. workers are protected through the statute's complaint driven enforcement process.[16]  A portion of that enforcement program has been outlined above in terms of violations and related sanctions and shows extensive congressional deliberation on, and the importance of, workers' protections.  H-1B nonimmigrant workers are protected by the principal LCA conditions relating to their wages and working conditions, which also indirectly protect the wages and working conditions of U.S. workers.  U.S. workers are protected by another principal LCA condition concerning strikes and lockout  to preclude the use of nonimmigrant workers to replace striking U.S. workers.  The employer seeking to bring in H-1B nonimmigrant workers must certify a strike or lockout is not ongoing at the intended worksite.  Additionally, as another protection of U.S. workers, an employer must also provide notice to its employees, or their union, of its intention to place nonimmigrant workers at the worksite.

If an employer uses a sufficient number of nonimmigrant workers to be designated an H-1B dependent employer, U.S. workers are provided further protection by requiring the H-1B dependent employer to promise that none of its U.S. employees will be displaced.  The H-1B employer also has to promise to inquire of another employer about displacement of U.S. workers prior to placing a nonimmigrant worker with that other employer.  Finally, the H-1B dependent employer must indicate that a good faith effort to recruit U.S. workers for the nonimmigrant workers' position has been made.

In addition to providing several provisions for protection of nonimmigrant workers and U.S. workers, the detailed structure of the enforcement program, with emphasis on simple, substantial, and willful failure violations, as previously outlined above, shows extensive congressional deliberation on the underlined relative importance of these worker protections and a preference for U.S. workers' rights over the rights of nonimmigrant workers.  Notably, an employer who fails to comply with the LCA conditions about nonimmigrant worker wages and working conditions is subject to sanctions underlined only if its violation was underlined willful.  An employer's inadvertent, or unknowing, failure to comply with the nonimmigrant worker protections invokes no sanction.

In contrast, U.S. workers' rights appear to be more important because an employer may be sanctioned for even an unknowing, or non-willful, failure to comply with the five U.S. worker-related LCA conditions.  Apparently based on the potential direct impact on U.S.

---

[16] See *Kolbusz-Kline v. Technical Career Institute*, 1993 LCA 4 (Sec'y July 18, 1994).

- 20 -

65

workers, violations of these five LCA conditions are separated into two categories of significance. The two LCA conditions which have a less obvious, direct impact on U.S. workers - failure to recruit U.S. workers in good faith and to provide LCA notice to employees - require imposition of a sanction against the offending employer, or H-1B dependent employer, if the violation was substantial.

Significantly, simple non-compliance with the three remaining LCA conditions which directly relate to loss of work by U.S. employees - strike/lockout, displacement, and secondary displacement inquiry – produces a sanction under the statute. As a result, an employer who fails to comply with the strike/lock out LCA condition, and an H-1B dependent employer who doesn't comply with the additional LCA conditions concerning direct displacement and secondary displacement inquiries, are subject to the sanction provisions, even if the failures to comply were neither substantial nor willful.

Thus, through this extensive scheme of violations and associated sanctions, Congress has carefully balanced an employer's need for a rapid LCA approval process with the graduated interests of nonimmigrant workers and U.S. workers. Such close scrutiny of the relative impact of an employer's failure to comply with the LCA conditions on both types of workers surely supports a finding that Congress' use of the term "shall" in the sanction provisions was purposeful and significant. Interpreting the term otherwise would diminish Congress' apparent conclusion that LCA conditions directly impacting the employment of U.S. workers, including the secondary displacement inquiry requirement under Section 1182 (n) (1) (F), are the most important conditions and warranted the highest degree of protection through sanctions.

C. Secretarial Interpretation

In *Kolbusz-Kline v. Technical Career Institute*, 1993 LCA 4 (Sec'y July 18, 1994), the Secretary determined an H-1B dependent employer had violated an LCA condition by substantially failing to provide notice of the LCA to its employees' union.[17] After considering many of the extenuation and mitigation factors in 20 C.F.R. § 655.810 (c), which are also applicable to Tekstrom, including the possibility that the failure was unintentional, the Secretary reduced the amount of the civil money penalty. However, the Secretary also advised the parties that since the violation must be reported to the Attorney General and ETA, the Administrator's notification to the Attorney General was proper.

In footnote seven of his opinion, the Secretary acknowledged the argument that the disqualification was too harsh a sanction. He observed that during deliberations on the statute two senators had emphasized the need in setting sanctions to distinguish between willful failure to comply with an LCA condition and a good faith failure. However, the Secretary also noted that the senators' comments applied only to the two LCA conditions involving the nonimmigrant worker's wages and working conditions. *Id*. Their concern did not extent to the employee notification requirement before the Secretary. As a result, even though the case before the Secretary may have involved a good faith failure by the employer and a reduction in the assessed civil money penalty was warranted, he remained convinced the Attorney General

---

[17]Although this case involved a substantial failure, the same sanction provision, 8 U.S.C. § 1182 (n) (2) (C) (i) (I), applies to both simple failure and substantial failures to comply. 8 U.S.C. § 1182 (n) (2) (C)(i).

notification was proper. The Secretary explained in part that "the plain language of the INA and the regulation. . . dictate the result. . ."

For the reasons previously discussed, including both the plain language of 8 U.S.C. § 1182 (n) (2) (C) (i) (I) and the violation/sanction structure of LCA statute, Section 1182 (n), I find insufficient reason to depart from the Secretary's interpretation.

## Conclusions

Tekstrom violated an LCA condition in 8 U.S.C. § 1182 (n) (1) (F) by failing to make secondary displacement inquiries of its client business and vendors prior to placement of H-1B nonimmigrant workers. None of the asserted regulatory deficiencies preclude imposition of the sanctions established by 8 U.S.C § 1182 (n) (2) (C) (i) (I). Likewise, the absence of Tekstrom's knowledge of the tertiary employers does not remove its culpable responsibility for compliance with the LCA condition in Section 1182 (n) (1) (F). Tekstrom could have reasonably met its obligations through a secondary displacement inquiry of its client business, non-displacement assurances from its vendors, or a non-displacement contract clause. The language of the sanction provision, the structure of the LCA statute, and a Secretarial interpretation of the disqualification provision lead to the conclusion that Secretarial notification of Tekstrom's violation to the Attorney General is mandatory. Finally, based on the parties' stipulation of fact (number 41), the civil money penalty of $3,400.00 is appropriate for the cited violations.

Accordingly, the Administrator's decision in the March 20, 2003 Determination Letter must be affirmed.

## ORDER

The decision of the Administrator in this matter as set out in the Administrator's Determination Letter, dated March 20, 2003, is AFFIRMED. Having violated the Labor Certification Application condition in 8 U.S.C. 1182 (n) (1) (F) (ii), and pursuant to 8 U.S.C. 1182 (n) (2) (C) (i) (I):

1. The Respondent, CYBERWORLD ENTERPRISE TECHNOLOGIES, INC. d/b/a TEKSTROM SHALL PAY a civil monetary penalty of $3,400.00, plus interest and appropriate additional administrative penalty, to U.S. Department of Labor Wage and Hour Division, as specified in the Determination Letter; and,

2. The Attorney General and the U.S. Department of Labor Employment and Training Administration SHALL BE NOTIFIED of the Respondent's violation.

SO ORDERED:

RICHARD T. STANSELL-GAMM
Administrative Law Judge

Date signed: December 23, 2003
Washington, D.C.

- 22 -

**NOTICE OF APPEAL RIGHTS:** Pursuant to 20 CFR § 655.845, any party dissatisfied with this Decision and Order may appeal it to the Administrative Review Board, United States Department of Labor, Room S-4309, Frances Perkins Building, 200 Constitution Avenue, NW, Washington, DC 20210, by filing a petition to review the Decision and Order. The petition for review must be received by the Administrative Review Board within 30 calendar days of the date of the Decision and Order. Copies of the petition shall be served on all parties and on the administrative law judge.

68

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CYBERWORLD ENTERPRISE TECHNOLOGIES, INC. d/b/a/TEKSTROM, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 06-cv-402 -KAJ |
| v. | ) ) | |
| MICHAEL CHERTOFF, Secretary of the Department of Homeland Security; ALBERTO GONZALES, Attorney General; ELAINE L. CHAO, Secretary of the Department of Labor; EMILIO T. GONZALEZ, Director, United States Citizenship and Immigration Services; | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

# EXHIBIT G

69

**U.S. Department of Labor**    Administrative Review Board
200 Constitution Avenue, N.W.
Washington, D.C. 20210

 

CYBERWORLD ENTERPRISE
TECHNOLOGIES, INC. d/b/a
TEKSTROM, INC.,

           **PETITIONER,**

    **v.**

ADMINISTRATOR, WAGE AND HOUR
DIVISION, UNITED STATES DEPARTMENT
OF LABOR,

       **PROSECUTING PARTY.**

ARB CASE NO. 04-049

ALJ CASE NO. 2003-LCA-17

DATE:    MAY 2 4 2006

BEFORE:    THE ADMINISTRATIVE REVIEW BOARD

Appearances:

*For the Petitioner:*
    H. Ronald Klasko, *Klasko, Rulon, Stock & Seltzer, LLP, Philadelphia, Pennsylvania*

*For the Prosecuting Party:*
    Steven J. Mandel, William C. Lesser, Paul L. Frieden, Joan Brenner, *United States Department of Labor, Washington, D.C.*

## FINAL DECISION AND ORDER

    This case arises under the Immigration and Nationality Act of 1990, as amended, (INA), 8 U.S.C.A. §§ 1101–1537 (West 1999 & Supp. 2004) and the regulations at 20 C.F.R. Part 655, Subparts H and I (2005). The Wage and Hour Division, United States Department of Labor (WHD) investigated Cyberworld Enterprise Technologies, Inc. d/b/a Tekstrom, Inc. (Tekstrom) after receiving a complaint.[1] Stip. No. 2. The INA requires that an employer who places an H-1B nonimmigrant worker with a secondary employer inquire of that secondary employer about non-displacement of United States workers. 8 U.S.C.A. § 1182(n)(1)(E)-(G); 20 C.F.R. §§ 655.738(d), 655.805(a)(8). The Administrator, WHD, determined that Tekstrom failed to make these inquiries in fourteen

---

[1]    The parties stipulated that Cyberworld Enterprise Technologies, Inc. legally changed its name to Tekstrom, Inc. on January 3, 2001. Stip. Nos. 2, 3.

instances. Exhibit B.  The WHD assessed a $3,400.00 civil money penalty.  *Id.*  WHD also informed Tekstrom that it would notify the Attorney General and the Employment and Training Administration, United States Department of Labor (ETA) of the violation. The Attorney General, upon receipt of WHD's notification, must disapprove any petition that Tekstrom files under 8 U.S.C.A. §§ 1154(c) and 1184(c) for any future hire of an H-1B nonimmigrant worker for a period of at least one year from the date of receipt of the notification.  Furthermore, ETA must invalidate any currently filed Labor Condition Application (LCA) and must not accept for filing any new LCA or corresponding attestation for the period the Attorney General sets. 8 U.S.C.A. § 1182(n)(2)(B); 20 C.F.R. §§ 655.855(c), (d), 655.810(d)(1).

Tekstrom challenged the WHD's determination.   In a pre-trial Order, the Administrative Law Judge (ALJ) rejected, inter alia, Tekstrom's argument that the failure of the Administrator, WHD, to comply with the requirement that she "shall" issue a determination within thirty days after the filing of the complaint, deprived her of jurisdiction to proceed against Tekstrom. *See* 8 U.S.C.A. § 1182(n)(2)(B); 20 C.F.R. § 655.806(a)(3).  The ALJ relied on the decision of the Administrative Review Board (ARB) in *United States Dep't of Labor v. Nurses PRN*, ARB No. 97-131, ALJ No. 94-ARN-1, slip op. at 9 (ARB June 30, 1999).  Citing *Brock v. Pierce County*, 476 U.S. 253, 259 (1986), *Nurses PRN* held that the 180-day limitation for conducting investigations under the Immigration Nursing Relief Act of 1989 was not mandatory "where the statute establishing the limitations period carries none of the indicia that would divest the administrator of the authority to investigate after expiration of the limitation." *Nurses PRN,* slip op. at 9.  Therefore, the ALJ concluded that the thirty-day limitation is directory, not mandatory, and the Administrator is not deprived of jurisdiction to proceed against Tekstrom.

The parties subsequently entered into Joint Stipulations of fact, and filed cross-motions for summary judgment.  The ALJ adjudicated the case as a decision on the record.  He found that the parties' Joint Stipulations indicated that there was no factual dispute.  Initial Decision and Order at 1.  The ALJ determined that Tekstrom failed to inquire of secondary employers about non-displacement of United States workers. *Id.* at 11-12.  The ALJ affirmed the $3,400.00 civil money penalty, and further ordered that the Attorney General and ETA be notified of Tekstrom's violation. *Id.* at 19-22.

Tekstrom appeals from the ALJ's decisions.  The Administrator, WHD, asks us to affirm them.  Tekstrom has filed a reply brief.

The ARB has jurisdiction to review an ALJ's decision under the INA. 8 U.S.C.A. § 1182(n)(2) and 20 C.F.R. § 655.845. *See also* Secretary's Order No. 1-2002, 67 Fed. Reg. 64,272 (Oct. 17, 2002) (delegating to the ARB the Secretary's authority to review cases arising under, inter alia, the INA).  The Board reviews the ALJ's decision de novo. *United States Dep't of Labor v. Kutty*, ARB No. 03-022, ALJ Nos. 2001-LCA-10 to 25, slip op. at 4 (ARB May 31, 2005); *Yano Enters., Inc. v. Administrator*, ARB No. 01-050, ALJ No. 2001-LCA-0001, slip op. at 3 (ARB Sept. 26, 2001); *Administrator v. Jackson*, ARB No. 00-068, ALJ No. 1999-LCA-0004, slip op. at 3 (ARB Apr. 30, 2001*). See*

*generally Mattes v. United States Dep't of Agric.*, 721 F.2d 1125, 1128-1130 (7th Cir. 1983) (rejecting argument that higher level administrative official was bound by ALJ's decision); *McCann v. Califano*, 621 F.2d 829, 831 (6th Cir. 1980), and cases cited therein (sustaining rejection of ALJ's decision by higher level administrative review body).

We affirm the ALJ's conclusions as he correctly applied the relevant statutes, regulations, and case precedent. His decisions are thorough and well reasoned. Therefore, we attach and incorporate the ALJ's December 23, 2003 Initial Decision and Order and his September 25, 2003 Denial of Respondent's Cross-Motion for Summary Decision, Denial of Motion to Compel, Continuance Order.

Accordingly, we **AFFIRM** the ALJ's December 23, 2003 Initial Decision and Order and his September 25, 2003 Denial of Respondent's Cross-Motion for Summary Decision, Denial of Motion to Compel, Continuance Order.

**SO ORDERED.**

**OLIVER M. TRANSUE**
**Administrative Appeals Judge**

**M. CYNTHIA DOUGLASS**
**Chief Administrative Appeals Judge**

72

SERVICE SHEET continued (2003LCA00017 Hearing Continued) Page: 2

Tekstom Inc.
1406 Forrest Ave.,
Suite B2,
Dover, DE 19904
    *{Hard Copy - Regular Mail}*

Suresh K. Kakkirala
Cyberworld Enterprise technologies, Inc.
d/b/a Tekstsrom, Inc.
1406 Forrest Ave, Suite B-2
Dover, DE 19904
    *{Hard Copy - Regular Mail}*

Division of Fair Labor Standards
Cousnel for Trial Litigation
Office of the Solicitor
U.S. DOL, Rm N-2716
200 Constitution Ave., NW
Washington, DC 20210
    *{Hard Copy - Regular Mail}*

Robert Kaplan
U.S. Department of Labor, OALJ
2 Executive Campus, Suite 450
Cherry Hill, NJ 08002
    *{Hard Copy - Regular Mail}*

Administrator, Wage and Hour Division
Employment Standards Administration
U.S. Department of Labor
Room S-3502
200 Constitution Avenue, N.W.
Washington, DC 20210
    *{Hard Copy - Regular Mail}*

Division of Fair Labor Standards
Counsel for Trial Litigation, Office of the Soli
U.S. Department of Labor
Room N-2716
200 Constitution Avenue, N.W.
Washington, DC 20210
    *{Hard Copy - Regular Mail}*

Wage and Hour Division
Employment Standards Administration
U.S. Department of Labor
207 Appraisers Building
103 Gay Street
Baltimore, MD 21201-4061
    *{Hard Copy - Regular Mail}*

Wage and Hour Division
Employment Standards Administration
U.S. Department of Labor
The Curtis Center, Suite 850 West
170 S. Independence Mall West
Philadelphia, PA 19106
    *{Hard Copy - Regular Mail}*

H. Ronald Klasko
4000 Bell Atlantic Tower
1717 Arch Street
Philedelphia, PA 19103
    *{Hard Copy - Regular Mail}*

Maria Spitz
Sutie 630 East
The Curtis Center
170 S. Independence Mall West
Philadelphia, PA 19106
    *{Hard Copy - Regular Mail}*

73

## ADMINISTRATIVE REVIEW BOARD
### CERTIFICATE OF SERVICE

**CASE NAME   :**   *Cyberworld Enterprise Technologies, Inc. d/b/a Tekstrom, Inc. v. Administrator, Wage & Hour Division, U.S. Department of Labor*

**ARB CASE NOS:**   04-049

**ALJ CASE NO. :**   2003-LCA-17

**DOCUMENT   :**   **Final Decision and Order**

A copy of the above-referenced document was sent to the following persons on

MAY 2 4 2006
.

*Sharon E. Mathis*

**CERTIFIED MAIL:**

Keshab Raj Seadie
29 John Street, Suite 601
New York, NY  10038

Tekstrom, Inc.
18 Shea Way
Suite 101
Newark, DE  19713

Suresh K. Kakkirala
Cyberworld Enterprise Technologies,
   Inc.
d/b/a Tekstrom, Inc.
18 Shea Way
Suite 101
Newark, DE  19713

74

J. Ronald Klasko
Klasko, Rulon, Stock & Seltzer, LLP
1800 John F. Kennedy Boulevard
Suite 1700
Philadelphia, PA  19103

**REGULAR MAIL**

Steven J. Mandel, Esq.
Associate Solicitor
Division of Fair Labor Standards
U.S. Department of Labor
200 Constitution Avenue, N.W.
Room N-2716
Washington, DC  20210

Howard Radzely
Office of the Solicitor
U.S. Department of Labor
200 Constitution Ave., NW
Room S-2002
Washington, DC  20210

Tammy D. McCutchen
Administrator
Wage and Hour Division
U.S. Department of Labor/ESA
200 Constitution Avenue, N.W.
Room S-3502
Washington, DC  20210

U.S. Department of Labor
Wage and Hour Division
207 Appraiser Bldg.
103 Gay Street
Baltimore, MD  21201

Regional Solicitor
U.S. Department of Labor
The Curtis Center, Suite 630 East
170 S. Independence Mall West
Philadelphia, PA  19106-3306

Wage and Hour Division
Employment Standards Administration
U.S. Department of Labor
The Curtis Center, Suite 850 West
170 S. Independence Mall West
Philadelphia, PA  19106

Maria Spitz
U.S. Department of Labor
The Curtis Center, Suite 630 East
170 S. Independence Mall West
Philadelphia, PA  19106-3306

Hon. John M. Vittone
Chief Administrative Law Judge
Office of Administrative Law Judges
800 K Street, N.W., Suite 400
Washington, DC  20001-8002

Hon. Richard T. Stansell-Gamm
Administrative Law Judge
Office of Administrative Law Judges
800 K Street, NW, Suite 400
Washington, DC   20001-8002

Hon. Robert Kaplan
Administrative Law Judge
Office of Administrative Law Judges
2 Executive Campus, Suite 450
Cherry Hill, NJ  08002

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## **CERTIFICATE OF SERVICE**

I, Stephen J. Neuberger, hereby certify that on September 8, 2006, I have Federal

Expressed the documents to the following non-registered participants:

Colm Connoly
U.S. Attorney's Office
The NeMours Building
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899-2046

Elaine Chao
U.S. Department of Labor
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210

Emilio T. Gonzalez
Office of the Chief Counsel
20 Massachusetts Ave., N.W.
Room 4025
Washington, DC 20536

Michael Chertoff
Office of the General Counsel
U.S. Department of Homeland Security
Washington, DC 20528

Alberto Gonzales
Attorney General
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530-0001

By:    */s/ Stephen J. Neuberger*

Stephen J. Neuberger, Esq. (DE Bar # 4440)
The Neuberger Firm
Two East Seventh Street, Suite 302
Wilmington, DE 19801-3707
Phone: 302-655-0582

77