# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CYBERWORLD ENTERPRISE<br>TECHNOLOGIES, INC.<br>d/b/a/TEKSTROM, INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Plaintiff** | ) | Civil Action No. 06-cv-402*** |
| | ) | |
| **v.** | ) | |
| | ) | |
| MICHAEL CHERTOFF, Secretary, | ) | |
| Department of Homeland Security; | ) | |
| ALBERTO GONZALES, Attorney General; | ) | |
| ELAINE L. CHAO, Secretary, | ) | |
| Department of Labor; | ) | |
| EMILIO T. GONZALEZ, Director, | ) | |
| Citizenship & | ) | |
| Immigration Services; | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPLY IN OPPOSITION TO DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT

THE NEUBERGER FIRM, P.A.

/s/ Stephen J. Neuberger
Stephen J. Neuberger (#4440)
Two East Seventh Street, Ste. 302
Wilmington, DE 19801
302-655-0582
Counsel for Plaintiff


KLASKO, RULON, STOCK & SELTZER, LLP

/s/ H. Ronald Klasko
H. Ronald Klasko (Admitted *Pro Hac Vice*)
1800 John F. Kennedy Blvd.
Philadelphia, PA 19103
(215) 825-8600
Counsel for Plaintiff


Dated:  February 27, 2007

# **TABLE OF CONTENTS**

NATURE AND STAGE OF PROCEEDINGS ................................................1

SUMMARY OF THE ARGUMENT ............................................................2

STATEMENT OF THE FACTS ................................................................3

ARGUMENT ......................................................................................5

    I.      STANDARD OF REVIEW ....................................................5

           A.      Summary Judgment ......................................................5

           B.      Judicial Review of Agency Proceedings .............................7

    II.     BECAUSE THE TERM "SHALL" IN THE STATUTE
             AND AGENCY REGULATIONS SETS A
             MANDATORY 30 DAY TIME LIMIT FOR THE
             ADMINISTRATOR TO ISSUE A DETERMINATION,
             THE SECRETARY IS STRIPPED OF JURISDICTION
             WHEN A DETERMINATION IS NOT ISSUED IN 30
             DAYS ..............................................................................9

           A.      The Plain Language of the Statute, the Structure of
                   the Statute and the Legislative History Clearly
                   Indicate that the Term "Shall" Carries a Mandatory
                   Meaning ...................................................................10

           B.      The Exception to Mandatory Deadlines for Agency
                   Action under *Brock* is not Applicable to
                   § 1182(n)(2)(B) ..........................................................14

           C.      The DOL Has Bound Itself to a 30 Day Deadline
                   for the Issuance of Determinations Through Notice
                   and Comment Rulemaking ...........................................20

           D.      The Administrator's Excessive Delay, which
                   Seriously Prejudiced Cyberworld, Creates a Valid
                   Defense of Laches ......................................................24

III.    THE ALJ AND ARB'S DETERMINATION THAT
DEBARMENT UNDER § 1182(n)(2)(C) WAS LEGALLY
AUTHORIZED WAS AN ERROR AS A MATTER OF
FACT AND LAW UNDER THE STATUTE AND
IMPLEMENTING REGULATIONS ........................................27

        A.    Cyberworld was Not Required to Make
              Displacement Inquiries of Any Companies
              Unknown to Cyberworld at which
              Another/Secondary Employer Places an H-1B
              Worker ...........................................................28

        B.    The Language of DOL's Regulation Does Not
              Provide for Debarment Where the Sole Violation is
              Failure to Make Secondary Displacement
              Inquires...........................................................31

CONCLUSION ...................................................................35

EXHIBIT A:   Department of Labor Investigation Letter, dated November 5, 2001.

EXHIBIT B:   Department of Labor H-1B Narrative Report, dated October 7, 2002.

EXHIBIT C:   *Matter of Ndiaye*, 2004-LCA-36, ARB Case No. 05-024 (Nov. 29, 2006).

# TABLE OF AUTHORITIES

CASES:                                                                    Page

*Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649-50 (1990) ...........................................18

*Air Courier Conference of Am. v. U.S. Postal Service*,
    959 F.2d 1213, 1225-26 (3d Cir. 1992) .........................................................18

*AMFAC Resorts v. DOI*, 282 F. 3d 818, 830 (D.C. Cir. 2002) .........................................8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986) ..........................................5

*Babbit v. Sweet Home Chapter of Communities*, 515 U.S. 687, 703 (1995) ........................18

*Barnhart v. Bellaire Corp.*, 537 U.S. 149 (2003) ......................................................20

*Bowen v. Yuckert*, 482 U.S. 137 (1987) ................................................................13

*Brock v. Pierce County*, 476 U.S. 253 (1986) .........................................14-17, 19-20, 23

*Brown-Mitchell v. Kansas City Power & Light Co.*,
    267 F.3d 825, 827-28 (8th Cir. 2001) ........................................................24

*Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984) ...............................18

*Dewsnup v. Timm*, 502 U.S. 410 (1992) ...............................................................13

*EEOC v. Bell Helicopter Co.*, 426 F. Supp. 785 (N.D. Tex. 1976) ...................................26

*EEOC v. Bray Lumber Co.*, 478 F.Supp. 993, 997-98 (M.D. Ga. 1979) ..........................25-26

*EEOC v. Liberty Loan Corp.*, 584 F.2d 853, 856 (8th Cir. 1978) ................................25-26

*EEOC v. Massey-Ferguson, Inc.*, 622 F.2d 271, 276 (7th Cir. 1980) ................................26

*EEOC v. Peterson, Howell & Heather*, 702 F. Supp. 1213, 1223 (D. Md. 1989) ...................25

*Estate of Cowart* v. *Nicklos Drilling Co.*, 505 U.S. 469, 479 (1992) ...............................11

*Gardenbring v. Jenkins*, 485 U.S. 415, 430 (1988) ...................................................23

*Hartford Underwriters Insurance Co. v. Union Planters Bank*, 530 U.S. 1, 6 (2000) ..............10

*Johnson v. De Grandy*, 512 U.S. 997 (1994) ..........................................................13

*Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) .......................................5

CASES – *continued:*

*Lehigh Valley Manpower Program v. Donovan*, 718 F.2d 99, 102 (3d Cir. 1983) ................25

*Lockert v. U.S. Dep't of Labor*, 867 F.2d 513, 517 (9th Cir. 1989) ....................................12

*Morrison v. Madison Dearborn Capital Partners*, 463 F.3d 312, 315 (3d Cir. 2006) ..........23-24

*Mallard v. U.S. Dist. Court*, 490 U.S. 296, 301-302 (1989) .........................................10

*Morton v. Ruiz*, 415 U.S. 199, 235 (1974) .................................................................22

*Ratzlaf v. U.S.*, 510 U.S. 135, 140-141 (1994) ...........................................................11

*Shenango Inc. v. Apfel*, 307 F.3d 174 (3d Cir. 2002) ...................................................19

*Singh v. DOJ*, 461 F.3d 290, 297 (2d Cir. 2006) .........................................................22

*Smith v. FTC,* 403 F.Supp. 1000 (D.Del. 1975) ...........................................................7

*Somerset Pharmaceuticals v. Shalala*, 973 F.Supp. 443, 446 (E.D. Pa. 1997) .......................7

*Steadman v. SEC*, 450 U.S. 91, 99 (1981) .................................................................16

*Tenneco Oil Company v. DOE*, 475 F.Supp. 299 (D. Del. 1979) ....................................8-9

*Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512 (1994) ..................................23

*Traunig v. Dep't of Veteran Affairs*, 1993 U.S. App. LEXIS 30017
    (Fed. Cir. Nov. 18, 1993) ...........................................................................27

*United States v. Brown*, 333 U.S. 18, 27 (1948) .........................................................29

*U.S. v. Haggar Apparel Co.*, 526 U.S. 380, 390 (1999) ................................................21

*U.S. v. Nixon,* 418 U.S. 683 (1974) ........................................................................21

*United States v. Ritsema*, 31 F.3d 559, 566-67 (1994) ................................................29

*U.S. Ex Rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954) ....................................22

*Ward v. Johnson,* 690 F.2d 1098 (4th Cir. 1982) ........................................................12

*Whitfield v. Anheuser-Busch*, 820 F.2d 243, 244-45 (8th Cir. 1987) ...............................24

*Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989) .....................................10

STATUTES:

*Administrative Procedure Act*

5 U.S.C. § 551(8) ....................................................................................17

5 USC § 556 .....................................................................................11-12

5 U.S.C. § 556(b) ..................................................................................16

5 U.S.C. § 556(d) ..................................................................................16

5 USC § 557(c)(3)(A) .............................................................................12

5 U.S.C. § 702 ........................................................................................2

5 U.S.C. § 706(2)(A) ............................................................................2, 3

5 U.S.C. § 706(2)(E) ................................................................................2

*American Competitiveness and Workforce Improvement Act of 1998* .........................13, 21

*Comprehensive Employment and Training Act (CETA) § 106* ...........................................14, 20

29 U.S.C. § 816(b) ................................................................................17

*Immigration Act of 1990* .....................................................................10, 21

*Immigration and Nationality Act*

8 U.S.C. § 1182(n)(2)(G) ........................................................................13

8 U.S.C. § 1154 .....................................................................................31

8 U.S.C. § 1182(m) ...............................................................................18

8 U.S.C. § 1182(n)(1)(F) .........................................................................29

8 U.S.C. § 1182(n)(2) ...............................................1, 5, 15, 16, 17, 18, 19, 27

8 USC § 1182(n)(2)(A) ............................................................................10

8 U.S.C. § 1182(n)(2)(B) ........................2, 4, 9, 10, 11, 12, 13, 14, 15, 17, 19, 20, 27

8 U.S.C. § 1182(n)(2)(C) .....................................................................16, 27

8 U.S.C. § 1182(n)(2)(E) .....................................................................28, 30

8 U.S.C. § 1182(n)(3) ..............................................................................1

STATUTES –*continued*:

8 U.S.C. § 1184(c) ......................................................................................31

*Immigration Nursing Relief Act of 1989* ...............................................18-19

ADMINISTRATIVE DECISIONS:

*Bernard v. Brown*, 4 Vet. App. 384, 394 (1993) .......................................32

*Board of Veterans Appeals*, Docket No. 99-05 941, (Mar. 9, 2001) ..................................32

*Board of Veterans Appeals*, Docket No. 97-08 296, (Sept. 22, 1999) ...........................32-33

*Cyberworld Enterprise Technologies Inc.*,
      2003-LCA-17, ARB Case No. 04-049 (ARB May 24, 2006) ...............................23

*Loden and Company, Inc.*, 14 OSAHRC 667 (Jan. 6, 1975) ...........................................29

*Matter of Ndiaye*, 2004-LCA-36, ARB Case No. 05-024 (Nov. 29, 2006) .........................24

*Otto Kahn v. Sec'y Dep't of Veteran Affairs*, Appeal No. 01A10663, Aug. 19, 2003) .............29

*U.S. Dept. of Labor v. Beverly Enterprises, Inc.*,
      ARB Case No. 99-050 (July 31, 2002) ...........................................................18-19

AGENCY RULES:

20 C.F.R. § 655.78 .......................................................................................4

20 C.F.R. § 655.738 .............................................................................29, 31, 32

20 C.F.R. § 655.738(d) ................................................................................30

20 C.F.R.§ 655.738(e) .................................................................................30

20 C.F.R. § 655.805(a)(7) ............................................................................33

20 CFR §655.805(c)(3) ................................................................................20

20 C.F.R. § 655.806 .....................................................................................5

20 C.F.R.§ 655.806(a) .................................................................................24

20 CFR §655.806(a)(3) ...........................................................................21, 23, 24

20 C.F.R.§ 655.806(a)(5) ...........................................................................24

20 C.F.R. § 655.810 .....................................................................................5

20 C.F.R. § 655.810(b) ................................................................................34

AGENCY RULES – *continued*:

20 C.F.R. § 655.810(b)(1)(i) ................................................................33

20 CFR § 655.810(d) ...............................................................32, 33

20 C.F.R. § 655.810(d)(1) ...............................................................32

20 C.F.R. § 655.810(f) ...........................................................31, 32, 33

20 CFR § 655.835(c) ...............................................................20

20 C.F.R.§ 655.855 ...............................................................33

20 C.F.R. § 655.855(a) ...........................................................4, 31

20 C.F.R. § 655.855(c) ...........................................................31

29 C.F.R. Part 18 ...............................................................4, 16

MISCELLANEOUS MATERIALS:

<u>Legislative History</u>

H.R. Doc. No. 101-732, pt. 1 (1990) ...........................................13, 19

144 Cong. Rec. S12741 (Oct. 21, 1998) .......................................13-14

144 Cong. Rec. E2327 (Nov. 12, 1998) .........................................28

<u>Court Rules</u>

Federal Rules of Civil Procedure 56(c) ............................................5

<u>Federal Register</u>

48 Fed. Reg. 32538 (DOL) (July 15, 1983) ....................................16

57 Fed. Reg. 1361 (DOL) (Jan. 13, 1992) .....................................20

65 Fed. Reg. 80110 (DOL) (Dec. 20, 2000) ................................21, 22-23

67 Fed. Reg. 64272 (DOL) (Oct. 17, 2002) ..................................18, 24

<u>Books/Treatises</u>

William N. Eskridge, Jr., *et. al.*,
    LEGISLATION AND STATUTORY INTERPRETATION (Foundation Pr. 2000) .................13

Richard J. Pierce, Jr., *et. al.*,
    ADMINISTRATIVE LAW AND PROCESS (Foundation Pr. 2004) ..............................22

## **NATURE AND STAGE OF THE PROCEEDING**

Cyberworld Enterprise Technologies, Inc. d/b/a Tekstrom, Inc. ("Cyberworld") is a Delaware-based information technology consulting and staffing company that is dependent on its ability to petition for H-1B nonimmigrants. As such, Cyberworld is classified as an "H-1B dependent employer" under § 212(n)(3) of the *Immigration and Nationality Act* (INA), 8 U.S.C. § 1182(n)(3) (2000), in that more than fifteen percent of its workforce is H-1B nonimmigrants. In fact, in Cyberworld's case, more than ninety percent of its workforce is H-1B nonimmigrants.

The Secretary of the Department of Labor (DOL) is authorized to regulate and sanction H-1B dependent employers who displace United States workers or fail to inquire into whether a United States worker might be displaced. *See* 8 U.S.C. § 1182(n)(2) (2000). These sanctions can include monetary civil penalties, as well as the referral to the Department of Homeland Security (DHS) for prohibition of approving H-1B petitions for a period of time.

Cyberworld was investigated and sanctioned by the Wage and Hour Division of DOL for failing to inquire into whether the H-1B nonimmigrants they were placing at a secondary employer were, in fact, displacing United States workers. The Administrator, Wage and Hour Division ("Administrator"), issued a Determination on March 20, 2003, ordering that Cyberworld pay a monetary penalty of $3,400, and that Cyberworld be referred to the Attorney General for mandatory debarment from filing immigrant and nonimmigrant petitions for employees for a period of one year.

Cyberworld appealed the Administrator's decision to an Administrative Law Judge (ALJ), which affirmed the findings and sanctions of the Administrator. Subsequent to the decision of the ALJ, Cyberworld filed an appeal with the Administrative Review Board (ARB) to review the ALJ's decision. The ARB affirmed the ALJ's decision and order, making it final on May 24, 2006.

On June 26, 2006, Cyberworld filed a complaint in civil action under 5 U.S.C. § 702, challenging the legal and factual sufficiency of the ALJ's and ARB's decisions below. (D.I. 1). On January 11, 2007, Defendants filed a motion for summary judgment. (D.I. 34).

## SUMMARY OF ARGUMENT

1.    Defendants' Motion for Summary Judgment should be denied, as there are disputed issues of material fact, including whether the DOL exceeded its authority under its organic statute, 8 U.S.C. § 1182(n)(2)(B), by failing to issue a Determination within thirty days after a complaint was filed against Cyberworld, and whether it departed from its own regulations by failing to show circumstances outside the control of the Administrator in issuing a Determination beyond the regulatory thirty day deadline.

2.    The ALJ's and ARB's determination that the DOL's organic statute does not mandate compliance with the thirty day deadline for the issuance of Determinations was legally incorrect as a matter of statutory interpretation, legislative history and decisional law, rendering the ALJ's and ARB's decisions "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," under 5 U.S.C. § 706(2)(A).

3.    The ALJ's and ARB's determination that the DOL's binding regulations do not mandate compliance with the thirty day deadline for the issuance of Determinations was a departure from the binding legal norm of the agency's own regulation, rendering the ALJ's and ARB's decisions "not in accordance with law," under 5 U.S.C. § 706(2)(A).

4.    Although the parties entered into a Joint Stipulation of Facts below, Cyberworld had sought administrative discovery pursuant to DOL regulation on the issue of the Administrator's failure to comply with the thirty day deadline for the issuance of Determinations. The ALJ foreclosed discovery on this issue by ruling that the Administrator was not bound by the thirty day deadline. As Cyberworld had maintained that a dispute over a material fact existed during the administrative proceedings, the ALJ's and ARB's failure to allow discovery of this issue

rendered the decisions of the ALJ and the ARB factually defective and otherwise not supported by substantial evidence, under 5 U.S.C. § 706(2)(E).

5.    A disputed material fact is at issue concerning whether the Administrator's failure to issue a Determination for nineteen months was an unreasonable delay causing prejudice to Cyberworld for purposes of asserting the equitable defense of laches.

6.    The Determination of the Administrator and the Final Decision and Order of the ARB should be reversed because Plaintiff is not required to make displacement inquiries of any companies unknown to Plaintiff at which another, secondary employer places an H-1B worker.

7.    The Determination of the Administrator and the Final Decision and Order of the ARB should be reversed, because the language of the DOL's regulation does not provide for mandatory debarment where the sole violation is failure to make secondary displacement inquiries, so the ARB's decision below is "not in accordance with law," under 5 U.S.C. § 706(2)(A).

## STATEMENT OF FACTS

Cyberworld is an information technology consulting and staffing agency that is reliant on its ability to petition for and hire foreign nationals. Cyberworld trains individuals in the application and development of software testing tools. Cyberworld hires individuals who have been trained to use these specialized programs, and provides their services to other companies and businesses in the United States who are in need of expertise in the use of these specialized programs. To find and staff a sufficient number of qualified workers in its specialized field, Cyberworld files a large number of petitions and applications for nonimmigrant and immigrant workers. Since the company's inception in 1999, Cyberworld has petitioned for and hired approximately 600 nonimmigrant workers with H-1B visas.

On August 9, 2001, a complaint was filed against Cyberworld, leading to an investigation by the DOL. (Administrative Record [A.R.] at 290). On November 5, 2001, Cyberworld was notified by the DOL Wage Hour Division that it was being investigated. (Ex.

A) (DOL Investigation Notification Letter). Cyberworld was fully cooperative with the investigation, and conceded that it had failed to make the requisite inquiries. (Ex. B) (H-1B Investigation Narrative Report). The investigation by the DOL of Cyberworld ultimately revealed that no United States workers were displaced and that Cyberworld paid proper wages to all employees, but that it had failed to make inquiries of secondary employers regarding the displacement of similarly employed U.S. workers at such work sites. (Ex. B).

The DOL Administrator took no action until March 20, 2003, when the Administrator issued a Determination pursuant to 8 U.S.C. § 1182(n)(2)(B) notifying Cyberworld that the investigation had disclosed a failure to make a secondary displacement inquiry. (A.R. at 1). According to the Administrator, Cyberworld had failed to make the required displacement inquiry of a secondary employer, after the secondary employer placed the H-1B holder with another employer, in violation of one of the Labor Condition Application conditions. (A.R. at 2). Due to the violation, the Administrator sought to impose a civil money penalty of $3,400, and directed Cyberworld to comply with 20 C.F.R. § 655.78 in the future. (A.R. at 1). Additionally, under the provisions of 20 C.F.R. § 655.855(a), the Administrator intended to inform both the DOL Employment and Training Administration (ETA) and the Attorney General of the violation. (A.R. at 2). Finally, upon notification, the Attorney General would be required to deny any petitions filed by Cyberworld for a period of at least one year, and the DOL ETA would be required to invalidate any current LCAs issued to Cyberworld and not accept any new LCAs for filing. (A.R. at 2).

In response, on April 2, 2003, Cyberworld requested a hearing with the Office of Administrative Law Judges to dispute the decision of the Administrator. (A.R. at 36-38). Pursuant to 29 C.F.R. Part 18, Cyberworld sought administrative discovery from the DOL on the factual issues relating to the Administrator's nineteen (19) month delay in issuing a Determination after receiving a complaint. (A.R. at 130, 139-141, 151-152). The DOL refused to comply with Cyberworld's discovery requests. (A.R. at 164-176, 201-243). On September

23, 2003, the ALJ ruled that the Administrator's unexplained, long delay in issuing a

Determination was excused on the ground that the Administrator was not bound by the 30 day

statutory and regulatory deadline. (A.R. at 291). On December 23, 2003, the ALJ affirmed the

Administrator's Determination Letter, ordering that Cyberworld must pay a civil monetary

penalty of $3,400, and that the Attorney General, the DOL, and the ETA must be notified of the

violation resulting in debarment for one year. (A.R. at 624-48).

Subsequent to the decision of the ALJ, Cyberworld filed an appeal with the ARB to

review the ALJ's decision. The ARB affirmed the ALJ's decision and order, making it final on

May 24, 2006. (A.R. 809-811).

## ARGUMENT

### I.    STANDARD OF REVIEW

#### A.  Summary Judgment

Summary judgment is proper where "there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury

could find for the non-moving party, and a factual dispute is material only if it might affect the

outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,

(1986). In conducting its review, the Court will review the record in the light most favorable to

the non-moving party. *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006).

In the instant case, the record will be viewed in the light most favorable to the non-

moving party, the Plaintiff, Cyberworld. The Defendants, as the moving parties, have not

shown that under the substantive law at issue, namely, 8 U.S.C. § 1182(n)(2) and 20 C.F.R.

§ 655.806 and § 655.810, there is an insufficient evidentiary basis on which a reasonable fact

finder could find for the Plaintiff. Although some of the issues in the instant case involve

statutory and regulatory interpretation, the factual predicates assumed by the agency below

formed the basis of its application of the statutory and regulatory provisions at issue. The

proceedings below did turn in part on a joint stipulation of facts, but the Plaintiff had raised a

disputed factual issue – whether there were factors outside the control of the Administrator

causing the delay in the issuance of a Determination -- through the use of administrative

discovery.  Cyberworld's efforts to disclose relevant facts were blocked by the DOL and

administratively foreclosed by the ALJ and ARB.  In the instant proceedings, Cyberworld

alleges that the DOL and Administrator did not need additional time to issue a Determination

and could not show that there existed circumstances outside of the Administrator's control as a

basis for failing to meet the statutory and regulatory deadline.  (Complaint D.I. 1 Sec. 32-36).

In their Answer, Defendants dispute this fact, (D.I. 18, Sec. 32-36), but the Defendants have not

presented any evidence here or below demonstrating the facts and circumstances justifying the

Administrator's 19 month delay in issuing a Determination, (See A.R. at 164-176, 201-243).

     This factual issue of the Administrator's delay is material, as it is determinative of this

case.  If the Administrator failed to comply with the statutory and regulatory requirements,

failing to show any reason for the 19 month delay in issuing the Determination, then the agency

is stripped of its jurisdiction to impose a sanction under the statute and governing regulation.

     Defendants dispute other material issues of fact as well.  The Defendants contend that

the Administrator's 19 month delay in issuing a Determination was not unreasonable and did

not result in prejudice to Cyberworld.  (Defendants' Answer, D.I. 18, Sec. 39).  This issue is

potentially dispositive of the case, as a valid defense of laches depends on the factual issue of

unreasonable agency delay and the resulting prejudice to Cyberworld.

     Furthermore, the Defendants dispute that Cyberworld had no knowledge of the ultimate

placement of its H-1B employees and that Cyberworld's actions did not adversely affect U.S.

workers.  (Defendant's Answer, D.I. 18, Sec. 42 and 46).  These factual issues are determinative

of the case, as sanctions under the governing statute require the showing of knowledge of H-1B

employees' placement and actual displacement of U.S. workers.  Cyberworld disputes that the

facts necessary for the imposition of debarment under the statute existed, whereas the

Defendants contend that such facts did exist. These factual disputes are material, as their resolution would affect the ultimate outcome of the case to the extent that the validity of Cyberworld's debarment under the statute is resolved.

    B.  <u>Judicial Review of Agency Proceedings</u>

The Defendants would have this Court limit its inquiry to the administrative record. (Defendants' Brief, D.I. 35 at 11). Yet, even the administrative record shows a clear dispute of a material fact, namely, whether the factual predicate of the agency's enforcement action satisfied the statutory and regulatory requirements limiting the agency's jurisdiction to impose sanctions in this case. Cyberworld sought discovery on this issue, but the Administrator refused to disclose a justification for his 19 month delay, if any, and the ALJ and ARB refused to allow an inquiry into this issue. This factual issue determined the entire course of the administrative proceedings below, and is the basis for the current legal and factual dispute that the Secretary was stripped of jurisdiction to engage in an enforcement action pursuant to statute and regulation.

Where an agency action is based on an incomplete administrative record, the courts have allowed discovery to develop the factual record necessary to resolve a factual point in dispute. *See, e.g., Somerset Pharmaceuticals v. Shalala*, 973 F.Supp. 443, 446 (E.D. Pa. 1997). For example, the District Court in *Smith v. FTC*, 403 F.Supp. 1000 (D.Del. 1975), prohibited the agency from designating whatever items it considered to be the administrative record and allowed discovery in a pre-enforcement challenge to an agency regulation. The *Smith* Court noted that "allowing administrative agencies to preclude judicial access to materials relied upon by the agency in taking whatever action is then being subject to judicial scrutiny would make a mockery of judicial review." *Id*. at 1008. In this context, supplementing the administrative record simply ensures that the court reviews the "full" administrative record before the agency at the time it made its decision. *Id*.

7

Although the agency has certified an administrative record for review in this case, the record itself clearly demonstrates that a material fact implicating the agency's jurisdiction under the statute and under its own regulation was never disclosed, notwithstanding Cyberworld's persistent efforts through administrative discovery to reveal the relevant facts and circumstances of the agency's long delay in issuing its Determination. Allowing this point to be addressed in discovery in the context of the current civil action will provide the Court with the opportunity to examine the facts and materials before the agency when it made its decision. As it stands, the administrative record is incomplete, so the Court is simply not able to effect judicial scrutiny properly.

Furthermore, courts have allowed discovery beyond the administrative record where a party mounts an "as applied" challenge to the agency's regulation. For example, the Court of Appeals for the District of Columbia found that discovery was appropriate where a plaintiff mounts an "as-applied" challenge to the regulation. *AMFAC Resorts v. DOI*, 282 F. 3d 818, 830 (D.C. Cir. 2002). In such cases, the plaintiff cannot be limited to the administrative record, because "in defense of an enforcement action . . . the party making the challenge may – indeed, in most instances must – present evidence outside the administrative record to show why its particular circumstances render the regulation unlawful." *Id.*

Similarly, in *Tenneco Oil Company v. DOE*, 475 F.Supp. 299 (D. Del. 1979), the District Court allowed the plaintiff to engage in extensive discovery to uncover the factual predicates and decision making documents underlying an adverse decision in an agency enforcement action. In *Tenneco*, the plaintiff was fined by the Department of Energy for over charging oil consumers in violation of the agency's pricing regulations. In a civil action challenging the Department's enforcement action, Tenneco propounded interrogatories and requests for production of documents necessary to complete the administrative record. *Id.* at 316. The court noted that the transmitted record contained Tenneco's submissions to the agency, along with the

8

formal Decisions and Orders issued by the agency. *Id.* at 317. The court stated that these

documents could not constitute the complete record:

> It strains the Court's imagination to assume that the administrative decision-makers
> reached their conclusions without reference to a variety of internal memoranda, guidelines,
> directive, and manuals, and without considering how arguments similar to Tenneco's were
> evaluated in prior decisions by the agency. [The agency] may not unilaterally determine
> what shall constitute the administrative record and thereby limit the scope of this Court's
> inquiry.

*Id.* at 317.

The *Tenneco* court further determined that documents bearing on the agency's

contemporaneous construction of its regulation were discoverable, as the court would be

required to interpret the meaning of the regulation, and such documentation would be necessary

to fulfill the function of judicial review. *Id.* at 318.

Similar to the record in *Tenneco*, the agency here failed to disclose decisional

documents and the factual underpinnings at the basis of its long-delayed enforcement action,

which is limited jurisdictionally by statute and regulation. Allowing the agency to exclude

these relevant documents and facts would limit the scope of the Court's inquiry and its power to

determine whether the agency exceeded its jurisdiction.

## II. BECAUSE THE TERM "SHALL" IN THE STATUTE AND AGENCY REGULATIONS SETS A MANDATORY 30 DAY TIME LIMIT FOR THE ADMINISTRATOR TO ISSUE A DETERMINATION, THE SECRETARY IS STRIPPED OF JURISDICTION WHEN A DETERMINATION IS NOT ISSUED IN 30 DAYS

The Defendants contend that the phrase "the Secretary shall provide, within 30 days

after the date such complaint is filed, for determination" under § 1182(n)(2)(B) is directory, not

mandatory, since "shall" in this context sets a time limit on government action with no

consequence attaching to the government's failure to meet the statutory deadline. (Defendant's

Brief, D.I. 35 at 17). The Defendants' reading of "shall" leads to a clearly incongruous result,

which cuts contrary to ordinary language, the canons of statutory construction and the

legislative intent. Although the Supreme Court has read "shall" in an agency's organic statute

as directory in limited situations, the current enforcement action does not fall into a recognized

exception.  Furthermore, the agency has bound itself to the 30 day deadline for filing a

"determination" through notice and comment rulemaking.

    A.  <u>The plain language of the statute, the structure of the statute and the legislative history</u>
        <u>clearly indicate that the term "shall" carries a mandatory meaning.</u>

    The *Immigration Act of 1990* provides that "the Secretary [of Labor] **shall** establish a

process for the receipt, investigation and disposition of complaints respecting a [H-1B]

petitioner's failure to meet a condition specified in an [Labor Condition] application."  Pub.

Law No. 101-649, § 205(c) (Jan. 23, 1990) (codified at 8 USC § 1182(n)(2)(A)) (emphasis

added).  The *Immigration Act of 1990* provides further that under such process:

> The Secretary **shall** provide, within 30 days after the date such a complaint is filed, for a
> determination as to whether or not a reasonable basis exists to make a finding described in
> subparagraph (C).  If the Secretary determines that such a reasonable basis exists, the
> Secretary **shall** provide for notice of such determination to the interested parties and an
> opportunity for a hearing on the complaint, in accordance with section 556 of title 5,
> United States Code, within 60 days after the date of the determination .  If such a hearing is
> requested, the Secretary **shall** make a finding concerning the matter by not later than 60
> days after the date of the hearing.  In the case of similar complaints respecting the same
> applicant, the Secretary **may** consolidate the hearings under this subparagraph on such
> complaints.

*Id.* (codified at § 1182(n)(2)(B)) (emphasis added).  The statutory provision contains three

"shalls" and one "may."  Ordinarily, "Congress 'says in a statute what it means and means in a

statute what it says there'," *Hartford Underwriters Insurance Co. v. Union Planters Bank*, 530

U.S. 1, 6 (2000) (quoting *Connecticut Nat. Bank* v. *Germain,* 503 U.S. 249, 254 (1992)), and

the statutory terms that Congress employs are presumed to follow ordinary definitions, unless

clearly stated otherwise, *see Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989).

The term "shall" carries a mandatory meaning, in contrast with "may", which carries a

precatory meaning.  *See Mallard v. U.S. Dist. Court*, 490 U.S. 296, 301-302 (1989).

    The *Immigration Act of 1990* clearly establishes a mandatory enforcement scheme

under the first three sentences of § 1182(n)(2)(B) requiring the Secretary to make a

"determination" within 30 days of the filing of a complaint, to provide for a hearing on the

record under the *Administrative Procedure Act* [5 U.S.C. § 556] within a set period of time, and to make a "finding" within a set period of time after a hearing is conducted. The enforcement scheme is very specific and sets mandatory time limitations, as indicated by Congress' persistent use of the word "shall" in connection with the establishment of a successive series of three enforcement events. When Congress wanted to indicate a permissive procedure, as opposed to a mandatory process, it clearly indicated as much by using the term "may" in the fourth sentence of § 1182(n)(2)(B). Accordingly, Congress provided that the Secretary "may" consolidate hearings in related cases, which means that the Secretary is not required to do so. Within the very same statutory sub-section, Congress stated explicitly when it wanted mandatory procedures and timelines, and when it wanted permissible procedures. Reading one or any of Congress' use of the term "shall" in the first three sentences of § 1182(n)(2)(B) as a precatory term would render "may" in the fourth sentence superfluous, which is contrary to the accepted rules of statutory construction. *See Ratzlaf v. U.S.*, 510 U.S. 135, 140-141 (1994).

Courts do not favor a piecemeal reading of similar statutory terms in the same provision. A term appearing in several places in a statutory text is read the same way each time it appears. *See Estate of Cowart* v. *Nicklos Drilling Co.*, 505 U.S. 469, 479 (1992). If Defendants would have this Court read "shall" in the first sentence of § 1182(n)(2)(B) as a permissive term, then the use of the term "shall" in the second and third sentences of this same sub-section must have a similar meaning. Clearly this would lead to an absurd result. Since Defendants would have this Court read "shall" as a permissive term, then Congress' second sentence under § 1182(n)(2)(B) would not require the Secretary to provide for a hearing on the record under the *Administrative Procedure Act*, but would permit the Secretary to adopt some other form of informal adjudication. If Congress was unconcerned about the exact procedure to be required by the Secretary, it would not have specifically stated that the Secretary "shall"

11

conduct a hearing under 5 USC § 556.[1]  The only sensible reading of "shall" in this context is to connote a mandatory meaning, requiring a specific procedure.

Similarly, the term "shall" in the third sentence can only carry a mandatory connotation. The fact that Congress set each part of the Secretary's enforcement scheme under three successive time frames indicates that Congress required the Secretary to comply with its timing specifications.  The timing specifications are not surplusage, which is evident from the third sentence:  "If such a hearing is requested, the Secretary shall make a finding concerning the matter by not later than 60 days after the date of the hearing."  8 USC § 1182(n)(2)(B).  Here, Congress is not requiring the Secretary to engage in factfinding, as the hearing on the record requirement of the *Administrative Procedure Act* (APA) already provides that the agency must make factual findings when conducting a hearing.  *See* 5 USC § 557(c)(3)(A) ("All decisions [under § 556]. . . shall include a statement of – (A) findings"); *see also Lockert v. U.S. Dep't of Labor*, 867 F.2d 513, 517 (9th Cir. 1989).  Rather, Congress is setting forward a mandatory time-line for making a factual finding already required under the APA.  Reading the timing element of the third sentence as precatory would make Congress' instruction redundant, as the prior sentence had already established that the Secretary was to adopt procedures under the APA, including making a finding.

Since the textual context of § 1182(n)(2)(B) clearly indicates that the term "shall" in the second and third sentences connotes a mandatory meaning, a consistent reading of this statutory provision requires the Court to read the term "shall" in the first sentence as connoting a mandatory meaning as well.

The legislative history also cuts contrary to the Defendants' argument and supports a mandatory connotation attaching to the term "shall" in the first three sentences of

---

[1] See *Ward v. Johnson*, 690 F.2d 1098, 1105 (4th Cir. 1982), for a discussion of the procedural differences between "formal" and "informal" adjudication under the APA.

§ 1182(n)(2)(B). In the Conference Report of the House Committee on the Judiciary, the

Committee articulated the time line set forth under § 1182(n)(2)(B) as follows:

> Following the timely filing of a complaint, the Secretary of Labor **is to investigate and determine within 30 days** if there is reasonable cause to believe that a failure or misrepresentation has occurred. The Committee notes that an issue once resolved cannot be challenged twice. However, this does not mean that once one part of an attestation has been challenged another part cannot be challenged, nor does it mean that if one aspect of an attestation has already been challenged, but a new complaint arises about that issue which is not related to the old one that this new complaint should not be adjudicated. Once a determination has been made that there is reasonable cause to believe that a violation has occurred, the Secretary **must move swiftly** to adjudicate the matter. The Secretary of Labor **must** notify interested parties and provide a hearing conforming to the *Administrative Procedures* (sic) *Act* within 60 days. [ . . . ] A finding on the merits is **required** within 60 days after the hearing.

H.R. DOC. NO. 101-732, pt. 1, at 65-66 (1990) (emphasis added). Here, the Committee Report[2]

clearly uses mandatory and determinate phrases as synonyms for the resulting statutory term

"shall." The Secretary is to make a determination in 30 days, and must move swiftly to

adjudicate the matter. These are not expressions of permissiveness or suggestiveness; rather,

they import necessity. As indicated by the Committee, the three steps in the Secretary's

enforcement scheme are mandated and tied specifically to strict time frames.

This legislative understanding of the 30 day deadline as a mandatory time frame

continued with the amendments to the *Immigration and Nationality Act* under the *American*

*Competitiveness and Workforce Improvement Act of 1998* (ACWIA), Pub. Law No. 105-277 §§

412 and 413 (Oct. 21, 1998). In adding a new investigation provision under § 1182(n)(2)(G) of

the Act, Senator Abraham explicitly stated that the 30 day deadline for investigations under §

1182(n)(2)(G) was patterned after the already existing 30 day deadline for issuing

determinations under § 1182(n)(2)(B). Senator Abraham stated that "as in current law

---

[2] Committee Reports are generally considered authoritative legislative history. *See Johnson v. De Grandy,* 512 U.S. 997, 1011 n.9 (1994); *see also Dewsnup v. Timm,* 502 U.S. 410, 419 (1992); *Bowen v. Yuckert,* 482 U.S. 137, 149-151 (1987). Committee Reports are considered reliable, because they provide an overview of the policy need for the statute and an analysis of the specific statutory provisions, showing the specific intent of the legislators. *See* William N. Eskridge, Jr., *et. al.,* LEGISLATION AND STATUTORY INTERPRETATION 302 (Foundation Pr. 2000).

regarding investigations of complaints, the investigation may only last 30 days." 144 Cong.

Rec. S12741, S12754 (Oct. 21, 1998). Clearly the use of "only" here means that the

Department's investigation can not exceed 30 days, and that the Department is required to issue

its determination within that time frame.

B.   The exception to mandatory deadlines for agency action under *Brock* is not applicable
      to § 1182(n)(2)(B).

Notwithstanding the explicit, mandatory language governing the timing of the

Secretary's enforcement scheme in the statute and the legislative history, the

Defendants' contend that these explicit statements are without force and effect. The Defendants

cite *Brock v. Pierce County*, 476 U.S. 253 (1986), for the proposition that the Secretary may act

in flagrant disregard of statutory deadlines in the organic statute simply because

§ 1182(n)(2)(B) does not provide a consequence for failure to comply with the specific

deadlines set forth therein. (Defendants' Brief, D.I. 35 at 17-18).

Contrary to the Defendants' assertions, *Brock* does not stand for the broad proposition

that all statutory deadlines imposed on the government are without effect when the statute fails

to provide consequences for failure to meet the statutory deadline. The *Brock* case turned on

the effect of a statutory deadline under § 106(b) of the *Comprehensive Employment and

Training Act* (CETA), which provided that the Secretary of Labor "shall" issue a final

determination as to the misuse of CETA funds by a grant recipient within 120 days after

receiving a complaint alleging such misuse. *Brock*, 476 U.S. at 256. The Court ultimately held

that the statutory requirement that the Secretary shall take action within 120 days does not,

"standing alone," divest the Secretary of jurisdiction where he fails to act within that time

period. *Id*. at 266. Nonetheless, the Court's holding was limited to the specific factual

circumstances implicated in the Secretary's duty to re-acquire misspent public funds. *Id*. at 262

n. 9 ("We need not, and do not, hold that a statutory deadline for agency action can never bar

later action unless that consequence is stated explicitly in the statute"). Moreover, the statutory

14

term "shall" at issue in *Brock* was "standing alone" without any other indicia of Congressional intent that the term carried a mandatory meaning. *Id*. at 263 (finding no supporting indicia of intent in the legislative history). These determinative facts are not present in the instant case.

The *Brock* Court specifically predicated its holding on the fact that the Secretary was required to complete a "substantial task" involving "factors beyond his control." *Id*. at 261. The Secretary's investigation of a fund recipient's misuse of CETA funds required conducting a detailed audit of a recipient's expenditures to determine if a violation occurred. *See id*. at 257. This task involved more than filing a complaint. *Id*. at 261. In addition, the Secretary's duty involved the protection of the public *fisc*, and the Court was unwilling to impose a deadline that would prejudice such an important public right without a specific indication that Congress intended its deadline to be mandatory. *Id*. at 262.

Unlike the statutory scheme and underlying factual issues in *Brock*, the instant case does not involve a protection of a public right or the public *fisc*, and the actions required of the Secretary under § 1182(n)(2) are not complex or "substantial" like the financial auditing implicated in the Secretary's tracking and accounting of CETA funds.

In the instant case, the Secretary was only required to make a "determination as to whether or not a **reasonable basis** exists to make a finding" that a violation of the Labor Condition Application provisions occurred. 8 U.S.C. § 1182(n)(2)(B) (emphasis added). The determination "shall" be made "within 30 days after the date . . . a complaint is filed." *Id*. The Secretary is not required to conduct an in depth analysis of the subject H-1B employer's financial records or employment practices, nor is the Secretary required to provide an ultimate conclusion supported by a full factual record. Rather, the Secretary is only required to make an investigation to determine if a "reasonable basis exists to make a finding" of a violation. *Id*. The full factual record as to the employer's employment practices and alleged violations is to be developed after "notice of such determination to the interested parties and an opportunity for a hearing on the complaint" under the hearing provisions of the *Administrative Procedure Act*

15

(APA). *Id.* Section 1182(n)(2)(C) further supports this conclusion, as it provides for sanctions only after factual findings are made through a hearing on the record.

Section 1182(n)(2) compels the Secretary to engage in fact finding under the APA, which means that the Secretary is not required to develop a full factual record prior to holding a hearing on the record. The APA provides for a procedure for the "taking of evidence" at a hearing on the record. 5 U.S.C. § 556(b). Accordingly, a sanction may only be imposed "on consideration of the whole record or those parts thereof cited by a party and supported by and in accordance with the reliable, probative, and substantial evidence." *Id.* at § 556(d). A formal hearing under this section requires the agency to develop a factual record and make a decision based on the preponderance of the evidence. *See Steadman v. SEC*, 450 U.S. 91, 99 (1981). Since § 1182(n)(2) requires the Secretary to comply with the APA when imposing sanctions for violation of the Labor Condition Application after the filing of a Determination, the Secretary is not required to develop, and is in fact precluded from developing, a full factual record prior to the issuance of a Determination. As a result, the issuance of a Determination is simply notice that a reasonable basis exists for finding a violation, which means the Determination is more akin to filing a complaint, an act the *Brock* Court found distinguishable from more substantial agency actions exempted from statutory deadlines. *Brock*, 476 U.S. at 261.

Viewing the issuance of a Determination as analogous to filing a complaint is further supported by the DOL's own procedural rules governing the development of a factual record at a hearing. Since 1983, the DOL has had in place a complex set of rules and procedures for gathering relevant evidence at hearings conducted under the APA. *See* 48 Fed. Reg. 32538 (Dept. of Labor) (final rule) (July 15, 1983) (codified at 29 C.F.R. Part 18). The DOL's evidentiary rules for hearings are very similar to the FEDERAL RULES OF CIVIL PROCEDURE, as the DOL rules provide for interrogatories, answers, depositions and production of documents. *Id.* at 32542-32544. The DOL's complex and developed mechanism for gathering evidence through a hearing indicates that the Administrator in no way is expected to complete a full

16

factual record at the time at which a Determination is to be issued under § 1182(n)(2)(B).

Under the enforcement scheme of § 1182(n)(2), the Determination by the Administrator is only

the beginning of an enforcement action, the bulk of which is conducted, by statute, under a

hearing before an ALJ, pursuant to the DOL's regulatory rules of evidence gathering.

     The enforcement scheme set forth under CETA required the Secretary to engage in a

much more complex and thorough factfinding than is required of the Secretary in issuing a

Determination under § 1182(n)(2) prior to the conducting of a hearing on the record.  Under

CETA, the Secretary was required to "investigate" allegations of fund misuse and to determine

"the **truth** of the allegation."  29 U.S.C. § 816(b) (1982) (emphasis added).  The conditions for

issuing a Determination under § 1182(n)(2) are much less onerous and time consuming.

Accordingly, the Secretary is only required to determine "whether a reasonable basis exists to

make a finding" of a violation.   The actual, developed fact finding takes place only after the

Determination is issued where the DOL conducts a hearing on the record.  Based on these vast

differences in the enforcement scheme between CETA and § 1182(n)(2), the rationale in *Brock*

leading to the holding that "shall" is not mandatory because of the substantial tasks imposed by

CETA is completely inapplicable to the statutory requirements for the issuance of a

Determination under § 1182(n)(2).

     Moreover, the holding of *Brock* was based on the rationale that the Secretary's duty

under CETA was to protect a public right and the public *fisc*.  No such right is at stake under §

1182(n)(2), which involves an employer being licensed by the DOL to hire skilled foreign

nationals under certain conditions.[3]  The enforcement scheme under § 1182(n)(2) provides for

sanctions to be imposed on private employers who violate the terms of their license (the Labor

---

[3] Under the APA, the issuance of a Labor Condition Application is the issuance of a license.
The APA defines a "license" as including "the whole or a part of an agency permit, certificate,
approval, registration, charter, membership, statutory exemption or other form of permission."
5 U.S.C. § 551(8).  The grant of a Labor Condition Application is the grant of permission to a
private employer to employ a skilled foreign national at a stated wage and working conditions.
Such a grant of permission is a license issued to a private employer.

Condition Application). The Secretary's ability to impose sanctions is not the enforcement of a public right, but the punishment of a private act for violation of the conditions of a license. Therefore, *Brock's* second rationale supporting its holding that "shall" is not mandatory under CETA is not applicable to the instant enforcement action.

The Defendants claim that the imposition of civil monetary penalties under § 1182(n)(2) reflects the public interest associated with enforcement actions. (Defendants' Brief, D.I. 35 at 19). The Defendants cite an administrative decision for this proposition. *See U.S. Dept. of Labor v. Beverly Enterprises, Inc.*, ARB Case No. 99-050 (July 31, 2002). (Defendants' Ex. B). Although the ARB has been delegated adjudicatory power by the Secretary, which might include the power to interpret the DOL's organic statute, *see* 67 Fed. Reg. 64272, 64273 (DOL) (Oct. 17, 2002) (Secretary's Order 1-2002), this Court should not afford deference under *Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984), to an agency's interpretation of its own jurisdictional limitation. *See, e.g., Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649-50 (1990) ("an agency may not bootstrap itself into an area in which it has no jurisdiction"); *Air Courier Conference of Am. v. U.S. Postal Service*, 959 F.2d 1213, 1225-26 (3d Cir. 1992) (Becker, J., concurring); *but see Babbit v. Sweet Home Chapter of Communities*, 515 U.S. 687, 703 (1995). Therefore, the ARB's determination that its jurisdiction is not stripped under express statutory language to the contrary because of a judicially developed exception should not be afforded any deference under *Chevron*, as such an interpretation does not implicate the agency's expertise.

Even if the agency could determine its own jurisdiction by reading judicially developed exceptions into its organic statute, the ARB decision cited by Defendants as authority for the public rights exception to statutory deadlines concerns a statute that is not at issue in the present litigation. The *Beverly Enterprises* case involved an interpretation of the *Immigration Nursing Relief Act of 1989* (INRA), 8 U.S.C. § 1182(m). The ARB found that the 180 day deadline limiting the Administrator's investigation and determination of violations under the INRA was

not mandatory, as the deadline fell under the *Brock* public rights exception. *See Beverly Enterprises*, ARB No. 99-050, at *17-18 (Defendants' Ex. B). The ARB found that the purpose of the INRA was to "alleviate the shortage of registered nurses," which it determined to be a public interest. *Id*. at *18. The H-1B program does not implicate any such public right. Rather, the purpose of the H-1B program is to provide private employers access to a pool of skilled employees not immediately available in the United States labor market. *See* H.R. DOC. NO. 101-732, pt. 1, at 67-68 (1990). This type of relief to private employers is not a public right falling under the *Brock* exception to statutory deadlines.

Since neither rationale underlying the holding of *Brock* applies to the enforcement mechanism established under § 1182(n)(2), as the statute does not impose a substantial task on the Administrator in issuing a Determination, nor does the statute implicate a public right, the *Brock* exception to statutory deadlines does not apply here.[4]

Finally, the analysis in *Brock* makes it clear that the Court will determine whether a statutory deadline strips the agency of jurisdiction based on Congressional intent. The indicia of Congressional intent is the statutory language itself and the legislative history. *Brock*, 476 U.S. at 254. As discussed above, the plain language of the statutory term at issue – "shall" – and the surrounding context in which that term is used in the first three sentences of § 1182(n)(2)(B) make it clear that the term connotes a mandatory meaning. Additionally, the legislative history indicates that Congress intended "shall" under § 1182(n)(2)(B) to carry a mandatory signification, as the Committee report interpreting the term "shall" in this provision clearly used unambiguous mandatory phrases and words. Therefore, the term "shall" in the first

---

[4] The Defendants also cite *Shenango Inc. v. Apfel*, 307 F.3d 174 (3d Cir. 2002), for the proposition that a statute must specify a consequence for noncompliance with a statutory time provision in order for the time provision to have an effect on the agency. (Defendants' Brief, D.I. 35 at 19). The Defendants fail to discuss the reasoning of the *Shenango* decision which was based on the two *Brock* factors for determining an exception to statutory deadlines, namely, statutes compelling an agency to enforce a public right and imposing a substantial burden on an agency in meeting the statutory deadline. *See Shenango*, 307 F.3d at 196. Since neither of these factors apply here, the *Shenango* case is not dispositive.

sentence of § 1182(n)(2)(B) is unlike the term "shall" under § 106 of CETA, as the "shall" of § 1182(n)(2)(B) is not "standing alone" without Congressional indicia.[5]

C. The DOL has bound itself to a 30 day deadline for the issuance of Determinations through notice and comment rulemaking.

Even if the exception of *Brock v. Pierce County* were somehow applicable to the deadlines set forth in § 1182(n)(2)(B), the *Brock* exception is superseded here by regulation, because the agency has bound itself to a more stringent standard through notice and comment rulemaking. The fact that the DOL has imposed a thirty day deadline on itself by regulation is significant here, as the *Brock* Court specifically noted that the DOL had not provided for a deadline in its regulations implementing the CETA. *See Brock*, 476 U.S. at 256 n. 3.

The Department's initial regulations implementing the *Immigration Act of 1990* recognized that the statute set forth a "compressed time frame," and the Department adopted procedures to meet the statutory requirements. 57 Fed. Reg. 1361, 1324 (Department of Labor) (interim final rule) (Jan. 13, 1992). The regulation stated that the enforcement scheme under the Act imposed on the Department specific "time constraints." 57 Fed. Reg. at 1336 (codified at 20 CFR § 655.835(c) (1994)). With respect to the Secretary's duty to make a determination after the filing of a complaint, the regulations specifically required the Administrator of the Wage and Hour Division to issue a determination "within 30 calendar days of the date of filing" the complaint. 57 Fed. Reg. at 1334 (codified at 20 CFR §655.805(c)(3) (1994)).

---

[5] The Defendants cite *Barnhart v. Bellaire Corp.*, 537 U.S. 149 (2003), in support of their view that the *Brock* exception applies here. Yet, the analysis in *Barnhart* followed the reasoning in *Brock* that the term "shall" standing alone will not be enough to create a mandatory deadline. In other words, some other Congressional intent must be marshaled to evidence the mandatory signification of the term "shall," including express statutory language, the structure of the statutory text at issue or the legislative history. *Barnhart*, 537 U.S. at 161. In the instant case, all of these indicators of Congressional intent are present and militate in favor of a mandatory meaning, unlike the situation in *Barnhart*. Since the structure of the statute at issue here and the persistent use of the term shall in three successive sentences of § 1182(n)(2)(B) along with clearly commanding language in the legislative history show a mandatory connotation to the term "shall," the facts in *Barnhart* are completely distinguishable.

The Department left intact the substance of its timing restrictions set forth in its interim final rule implementing the *American Competitiveness and Workforce Improvement Act of 1998* (ACWIA).[6]  The Department continued to recognize that the statute imposed a strict deadline for the issuance of determinations.  In response to public comments, the Department indicated that it would allow reasonable time for employers to provide computations regarding their H-1B dependency status, but that the Department must "tak[e] into consideration the fact that the statute provides that the investigation is to be completed within 30 days."  65 Fed. Reg. 80110, 80131 (Department of Labor) (interim final rule) (Dec. 20, 2000).  In recognition of this statutory imperative, the Department would only allow for a departure from the thirty day deadline under two specific exceptions:

> The time for the investigation may be increased with the consent of the employer and the complainant, or if, for reasons outside of the control of the Administrator, the Administrator needs additional time to obtain information needed from the employer or other sources to determine whether a violation has occurred.

65 Fed. Reg. at 80234 (codified at 20 CFR §655.806(a)(3) (2002)).  The two exceptions stated here indicate that the Department intended to follow a strict 30 day deadline in the issuance of Determinations.  Even assuming that the statute does not require the agency to comply with the 30 day deadline, the agency has chosen to bind itself to more rigorous standards and timeframes through the publication of a binding rule.  Pursuant to 20 CFR § 655.806(a)(3), the Department must conform to the 30 day deadline unless the employer waives the regulatory deadline or the Department shows extraordinary circumstances "outside of the control" of the agency.

So long as the Department's regulation remains in effect, it has the force of law and binds the Department.  *See U.S. v. Nixon*, 418 U.S. 683, 696 (1974); *see also U.S. v. Haggar Apparel Co.*, 526 U.S. 380, 390 (1999) (Kennedy, J.) ("Valid regulations establish legal

---

[6] ACWIA did not amend or change the language of § 1182(n)(2)(B) as enacted under the *Immigration Act of 1990, see* Pub. Law No. 105-277 §§ 412 and 413 (Oct. 21, 1998), but in implementing ACWIA, the Department chose to amend some of its earlier regulations promulgated under the *Immigration Act of 1990, see* 65 Fed. Reg. 80110 (DOL) (interim final rule) (Dec. 20, 2000).

norms"). An agency may not depart from the binding norm established by its own regulation. *See U.S. Ex Rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954). Even where the agency's regulations or internal policies are more restrictive than provided by statute, the agency is bound by its own more restrictive standards. *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures[,] even where the internal procedures are possibly more rigorous than otherwise would be required"); *see also Singh v. DOJ*, 461 F.3d 290, 297 (2d Cir. 2006).[7]

Since the Department of Labor has bound itself to the statutory deadline through notice and comment rulemaking, it must adhere to the strictures of its own rulemaking. It is clear that the Department violated its own regulations here by failing to provide a determination within thirty days of the filing of a complaint alleging that Plaintiff violated provisions of its certified Labor Condition Applications. None of the exceptions to the regulatory deadline have been established. The Plaintiff here never agreed to waive the deadline, (Defendants' Answer, D.I. 18, Sec. 30), and the Department never established any circumstances outside of its control. In fact, the Department refused to produce documents or answer interrogatories aimed at disclosing the possibility that circumstances outside of its control existed to justify its flagrant departure from the regulatory 30 day deadline. (A.R. at 164-176, 201-243). This is the same factual dispute before the Court in the instant case.

In the present litigation, the DOL is taking a legal position contrary to the interpretation of its regulation at the time it was promulgated, by claiming that it is not bound by the regulatory deadline. The preamble to the interim final rule promulgating the amendment to § 655.806(a)(3) indicated that the Department would be expected to act within the thirty day deadline. 65 Fed. Reg. at 80131. In addition, the preamble to the interim final rule outlined the

---

[7] "When an agency adopts procedures more demanding than those imposed on it, the agency has made an implicit judgment that it places a higher value on accuracy and fairness in its decision making process than Congress or the Constitution demand." Richard J. Pierce, Jr., *et. al.*, ADMINISTRATIVE LAW AND PROCESS 227 (Foundation Pr. 2004).

rationale for providing limited exceptions to the thirty day deadline: additional information may be needed to make a determination where employers do not timely provide requested information, or where "Wage-Hour must obtain documentation from other agencies." 65 Fed. Reg. at 80178. In other words, the Department could not be expected to make a determination where its investigation is impeded by the employer or other agencies. Barring these exceptions, the thirty day regulatory deadline sets a required time frame.

The ALJ below determined, citing *Brock*, that the statutory language requiring a determination within thirty days was merely directory, since the statute attaches no consequence to a failure to meet the thirty day investigative time limit. (A.R. at 293-94). The ARB upheld this determination. *See Cyberworld Enterprise Technologies Inc.*, 2003-LCA-17, ARB Case No. 04-049 (ARB May 24, 2006) (A.R. at 809-811). It is significant that the ALJ and the ARB discussed neither the mandatory language of the regulation at 20 C.F.R. 655.806(a)(3), nor the Department's reading of this regulatory language in the preamble to the regulation in the FEDERAL REGISTER. The ALJ and the ARB only focused on the statutory language without discussing the legal implications of the Department's binding regulations. To the extent that the ALJ, the ARB or the Defendants in their Brief advocate a current reading that is contrary to the plain language of the regulation or at odds with the Department's own contemporaneous reading of the regulation at the time of promulgation, their current reading cannot be afforded any deference by this Court. *See Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512 (1994) ("we must defer to the Secretary's interpretation [of his own regulation] unless an 'alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.'") (citing *Gardenbring v. Jenkins*, 485 U.S. 415, 430 (1988)); *see also Morrison v. Madison Dearborn Capital Partners,*

23

463 F.3d 312, 315 (3d Cir. 2006) ("Particular weight is given to agency interpretations made at the time the regulations are promulgated").[8]

The ARB's reading of § 655.806(a)(3) as importing a non-mandatory deadline is also contrary to its reading of a similar provision under § 655.806(a). In setting a time frame for filing complaints alleging violations of a Labor Condition Application, the Department's regulations provide that "[a] complaint must be filed not later than 12 months after the latest date on which the alleged violation(s) were committed." 20 C.F.R. § 655.806(a)(5). Recently, the ARB read this section of the regulation as setting forth a mandatory time period for filing a complaint. *Matter of Ndiaye*, 2004-LCA-36, ARB Case No. 05-024 (Nov. 29, 2006) (Ex. C). In *Matter of Nadiaye*, the ARB determined that the filing of a complaint more than one year after the date of the last alleged violation is not timely filed, which bars the Department from acting on the complaint. *Id.* at *6 (Ex. C). Inconsistently, the ARB reads one time limitation under § 655.806(a) as mandatory, but reads another time limitation under that same regulatory sub-section as a non-mandatory time frame. This inconsistent approach is at odds with the plain language of the regulation, which clearly uses mandatory language in both sections – "shall" in § 655.806(a)(3) and "must" in § 655.806(a)(5) – and cuts contrary to the interpretation of § 655.806(a)(3) at the time of promulgation.

D.  <u>The Administrator's Excessive Delay, which Seriously Prejudiced Cyberworld, Creates a Valid Defense of Laches.</u>

The DOL's action is also barred by laches. This equitable doctrine will bar a lawsuit where the plaintiff unreasonably delays the initiation of a suit, which results in prejudice to the defendant. *Whitfield v. Anheuser-Busch*, 820 F.2d 243, 244-45 (8th Cir. 1987); *see also Brown-Mitchell v. Kansas City Power & Light Co.*, 267 F.3d 825, 827-28 (8th Cir. 2001). Courts have

---

[8] Although the ARB has been delegated authority to act for the Secretary of Labor, the ARB is limited by the Department's regulations. 67 Fed. Reg. 64272, 64273 (Secretary's Order 1-2002) (Oct. 17, 2002). In ignoring the express regulatory language of § 655.806(a)(3), and the Department's understanding of that provision at the time of promulgation, the ARB was setting aside the Department's binding regulation, exceeding its delegated authority.

found that laches applies when the delay is the fault of an administrative agency. *See, e.g.,*
*EEOC v. Liberty Loan Corp.*, 584 F.2d 853, 856 (8th Cir. 1978).

For no asserted reason, it took the Administrator 19 months -- 18 months more than the
prescribed 30 day maximum -- to issue the Determination. This was clearly an unreasonable
and unexcused delay. Plaintiff at no time consented to an extension of the investigation. The
Administrator has provided no reasons or excuses for the delay. The investigation was
straightforward and simple, and Plaintiff responded promptly to every request for information
from the Administrator. By February 19, 2002, sixteen Cyberworld employees had provided
information to the Administrator in connection with the DOL's investigation. (A.R. 229).
However, there was an inexplicable full ten-month lapse between the last recorded event --
Cyberworld faxing cover sheets to the Administrator – on May 15, 2002, and the issuance of the
Determination on March 20, 2003. (See A.R. 1 and 229).

Although prejudice is not a requirement for a time limit to be enforced, *see, e.g., Lehigh
Valley Manpower Program v. Donovan*, 718 F.2d 99, 102 (3d Cir. 1983), excessive delay may
estop an agency from imposing a sanction where the aggrieved party shows prejudice, *see
EEOC v. Bray Lumber Co.*, 478 F.Supp. 993, 997-98 (M.D. Ga. 1979). Here, the Plaintiff was
severely prejudiced by the Administrator's extensive delay. During the nineteen months
between the filing of the Complaint and the issuance of the Determination, employees who
could serve as witnesses or who had knowledge of the events at issue left the company. The
employees who were still present at the company were not able to testify as effectively due to
the passage of time. As a result, Cyberworld's ability to defend the action was diminished, and
it was materially prejudiced. *See, e.g., EEOC v. Peterson, Howell & Heather*, 702 F. Supp.
1213, 1223 (D. Md. 1989). Furthermore, even though Cyberworld admitted that it had not
made a secondary placement inquiry, this does not mean that it was not prejudiced by the
Administrator's delay in issuing a Determination. In fact, Cyberworld was prejudiced by
having to operate in a state of uncertainty for an unduly lengthy period of time, which in

25

practical effect extended the period of time during which Plaintiff was penalized by the government's action.

The Defendants contend that laches is inapplicable here, because the Administrator is enforcing a public right. (Defendants' Brief, D.I. 35 at 20). As indicated above, the imposition of sanctions in the context of a Labor Condition Application violation is a penalty against a private employer for violation of a private license, so a public right is not at stake here. Nevertheless, even assuming that a public right was at stake, courts have found that the vindication of a public interest must be reconciled with traditional principles of equity where the agency causes an excessive delay in its enforcement action. *Peterson, Howell & Heather*, 702 F. Supp. at 1224 (unreasonable delay the basis of dismissing an enforcement action in part). Similarly, in *EEOC v. Bell Helicopter Co.*, 426 F. Supp. 785 (N.D. Tex. 1976), the court estopped the agency from bringing suit where its delay in acting had prejudiced the aggrieved party. Although the court recognized that the agency had the responsibility of defending a public right, this could not excuse excessive delay. The court stated that excuses that the agency was overburdened in enforcing a public interest does not supersede the employer's right to settled expectations:

> there must be a limit to the prejudice and inconvenience that can be placed on an employer because of the [agency's] inability or unwillingness to act promptly. . . . The public policy expressed in [the statute] was declared by Congress. The [agency] itself was established by Congress. If Congress does not see fit to adequately staff or fund the Commission to carry out its declaration of policy, that also is a congressional decision.

*Id.* at 793; *see also EEOC v. Massey-Ferguson, Inc.,* 622 F.2d 271, 276 (7th Cir. 1980) (upholding finding that delay between the time charges were filed with the agency and the time the complaint was filed was unreasonable); *Liberty Loan Corp.,* 584 F.2d at 855-57 (granting summary judgment because the government had not met its evidentiary burden to explain why the delay had occurred and the company would be unfairly prejudiced); *Bray Lumber Co.,* 478 F. Supp. at 997-98 (granting summary judgment dismissing suit because agency delay

prejudiced company); *Traunig v. Dep't of Veteran Affairs,* 1993 U.S. App. LEXIS 30017, at *3

(Fed. Cir. Nov. 18, 1993) (board dismissed petition on ground that it was barred by laches).

Since Cyberworld has asserted that it was prejudiced by the Administrator's 19 month

delay, there is a disputed issue of material fact that a reasonable fact finder may resolve in

Cyberworld's favor on the issue of a laches defense.

**III.     THE ALJ AND ARB'S DETERMINATION THAT DEBARMENT UNDER
§ 1182(n)(2)(C) WAS LEGALLY AUTHORIZED WAS AN ERROR AS A
MATTER OF FACT AND LAW UNDER THE STATUTE AND
IMPLEMENTING REGULATION**

Defendants argue inconsistently that the term "shall" under § 1182(n)(2)(B) means

"may" while the very same term under the same section -- § 1182(n)(2)(C) -- means the exact

opposite. (Defendants' Brief, D.I. 35 at 17 and 25). Plaintiff holds a consistent position,

arguing that "shall" means "must" in all of the provisions under § 1182(n)(2). Accordingly,

"shall" means that the Secretary must issue a Determination in 30 days under § 1182(n)(2)(B),

and "shall" means that the Secretary must impose a penalty of debarment under

§ 1182(n)(2)(C), provided certain conditions are met. In particular, the statute requires that the

H-1B dependent employer have knowledge of where its H-1B employees are placed, and only

where it has knowledge is a displacement inquiry required. Here, the required element of

knowledge was not shown and could not be shown against Cyberworld, as it had no way of

knowing in advance where its H-1B employees would ultimately be placed. Therefore, a

necessary condition for imposing a mandatory sanction of debarment has not been met, and that

sanction should not have been imposed.

Furthermore, the regulation under which Cyberworld was sanctioned does not provide

for debarment where an H-1B dependent employer's sole violation is a failure to make

secondary displacement inquires.

A.   <u>Cyberworld was not Required to Make Displacement Inquiries of any Companies Unknown to Plaintiff at which Another/Secondary Employer Places an H-1B Worker.</u>

Cyberworld was found to be subject to mandatory debarment for failure to make secondary displacement inquiries of secondary/tertiary employers the existence of which were unknown to Plaintiff. The ALJ stated that, even though it is impossible for Cyberworld to know the existence of these employers, and even though Plaintiff does not and cannot obtain knowledge of the relevant facts, Plaintiff is subject to mandatory debarment under a strict liability theory since, under the ALJ's interpretation, there is no knowledge element contained in the violation. (A.R. at 671).

The ALJ asserted that the Plaintiff could meet its obligation through insertion of a non-displacement contract clause, even though the clause might be in a contract with a secondary employer which itself has no knowledge of or authority with respect to the ultimate placement of the employees. Such an interpretation results in form being placed completely over substance, and it has no practical impact on any goal that Congress might have sought to obtain.

Plaintiff does not dispute that where displacement has occurred, the H-1B employer can be sanctioned, even if it is the secondary/other employer rather than the H-1B employer who displaces U.S. workers. However, Congress also declared in legislative history that debarment should be imposed only when there has been a knowing or intentional displacement. "The attesting employer can only receive a debarment, however, if it is found to have known or to have had reason to know of the secondary displacement at the time of the placement of the H-1B worker with the other employer." 144 Cong. Rec. E2327 (Nov. 12, 1998); *see also* 8 U.S.C. § 1182(n)(2)(E) ("the Attorney General may impose a sanction "only if the Secretary of Labor found that such placing employer (i) knew or had reason to know of such displacement at the time of the placement of the nonimmigrant with the other employer…"). Therefore, Congress could not have intended that a debarment be imposed where there was no knowing or intentional violation of a statutory requirement and where no displacement even occurred.

Furthermore, the inquiry requirement applies "in every case where there will be indicia of an employment relationship". 8 U.S.C. § 1182(n)(1)(F). However, in the present case, Cyberworld had no way to know whether there would be "indicia of an employment relationship" since Cyberworld does not even know where the employees will be placed. For example, the ALJ referred to one particular employee [Mr. Sharma]. Plaintiff does not dispute that it ultimately became aware that Mr. Sharma worked at Skire, Inc. However, the inquiry obligation arises before the placement. There is nothing in the record to indicate that, at the relevant time, Plaintiff knew that Mr. Sharma would actually work at Skire, Inc. or whether Skire, Inc. would place Mr. Sharma elsewhere.

The DOL's implementing regulation at 20 C.F.R. § 655.738 should not be construed to allow for sanctions to be imposed against Cyberworld for conditions not under Cyberworld's control or within its knowledge. *See, e.g.*, *United States v. Brown*, 333 U.S. 18, 27 (1948) ("No rule of construction necessitates our acceptance of an interpretation resulting in patently absurd consequences."). The legislators could not have intended such an implementation of the statute that penalizes an employer for failing to do something that is not within its control. Any interpretation of 20 C.F.R. § 655.738 that would impose these impracticable or impossible obligations on Cyberworld should be rejected. *Cf. United States v. Ritsema*, 31 F.3d 559, 566-67 (1994) (citing *Holy Trinity Church v. United States*, 143 U.S. 457, 459 (1892)); *see also, e.g.*, *Loden and Company, Inc.*, 14 OSAHRC 667, 1974 OSHD (CCH) P19,115, 1975 OSAHRC LEXIS at *17 (Jan. 6, 1975) (finding that compliance with a regulation was impossible under the circumstances); *Otto Kahn v. Sec'y Dep't of Veteran Affairs*, Appeal No. 01A10663, 2003 EEOPUB LEXIS 4875, at *6 (Aug. 19, 2003) (settlement agreement reformed, as it was impossible for the agency to comply with its obligation under certain provision to arrange for packing and shipping of petitioner's belongings to his address of record).

The regulations do not address whether the H-1B dependent employer is subject to a finding of violation where the secondary employer places the H-1B employee at another

company which then displaces U.S. workers. Even if Cyberworld were to make all of the

necessary inquiries pursuant to § 655.738(d) and (e), it still cannot prevent other/ secondary

employers from placing workers at other companies that then displace U.S. workers or fail to

make the displacement inquiries of yet other companies at which they place the H-1B

employee. In this situation, which is the normal business practice of Cyberworld, it would be

impossible for Cyberworld to know at which company the worker ultimately is employed down

the chain of employers.

It is clear from the text of 8 U.S.C. § 1182(n)(2)(E) that Congress did not intend for H-

1B-dependent employers to be sanctioned when they did not know or had no reason to know of

such far-removed displacement:

> If an H-1B-dependent employer places a nonexempt H-1B nonimmigrant with another
> employer . . . and the other employer has displaced or displaces a United States worker
> employed by such other employer . . ., such displacement shall be considered . . . a failure,
> by the placing employer, to meet a condition . . .; except that the **attorney general may
> impose a sanction** described in subclause (ii) of subparagraph (C)(i), (C)(ii), or (C)(iii)
> **only if the Secretary of Labor found that such placing employer (i) knew or had
> reason to know of such displacement at the time of the placement of the
> nonimmigrant with the other employer**; or (ii) has been subject to a sanction under this
> subparagraph based upon a previous placement of an H-1B nonimmigrant with the same
> other employer.

8 U.S.C. § 1182(n)(2)(E) (emphasis added). Therefore, if Congress did not want

sanctions imposed when the placing employer did not know or had no reason to

know of displacement by an other/secondary employer with whom the placing

employer placed the worker, it follows that Congress did not want sanctions imposed

where there is no displacement and where the sanctioned conduct is simply a failure

to make a displacement inquiry even further down the chain -- by an employer with

whom the other/secondary employer placed the worker. In such a situation, a

company such as Cyberworld would be even less likely to know and have even less

reason to know of any displacement that occurred, since it would have no means of

communication with those companies.

Therefore, 20 C.F.R. § 655.738 should not be interpreted as requiring Cyberworld to follow procedures outlined in § 655.738 with companies at which an other/secondary employer places the worker, the identity of which is unclear and to which Cyberworld has no access.

B.  The Language of DOL's Regulation Does Not Provide for Mandatory Debarment Where the Sole Violation is Failure to Make Secondary Displacement Inquiries.

The Determination's proposed remedy stated that the "U.S. Department of Labor's Employment and Training Administration and the Attorney General ('AG') shall be notified of this violation," citing 20 C.F.R. § 655.855(a). (A.R. at 1-3).  It also stated the "AG, upon notification, is required to deny any petitions filed by Cyberworld under 8 U.S.C. § 1154, § 1184(c) for a period of at least one year from the date of receipt of the notification," citing 20 C.F.R. § 655.855(c)).  (A.R. at 1-3).  The regulation cited in the Determination, 20 C.F.R. § 655.855(a)[9], provides that "[v]iolations requiring notification to the Attorney General are identified in § 655.810(f)."  20 C.F.R. § 655.855(a).  However, Cyberworld's alleged sole violation--failure to make secondary displacement inquiry--is referenced in 20 C.F.R. § 655.738, which is not referenced at all in § 655.810(f).[10]  Another regulation cited in the Determination, 20 C.F.R. § 655.855(c), provides: "The Attorney General, upon receipt of

---

[9] The entirety of 20 C.F.R. § 655.855(a) is as follows:
"The Administrator shall notify the Attorney General and ETA of the final determination of any violation requiring that the Attorney General not approve petitions filed by an employer. The Administrator's notification will address the type of violation committed by the employer and the appropriate statutory period for disqualification of the employer from approval of petitions. *Violations requiring notification to the Attorney General are identified in § 655.810(f)*" (emphasis added).
[10] Twenty C.F.R. § 655.810(f) provides:
"The civil money penalties, back wages, and/or any other remedy(ies) determined by the Administrator to be appropriate are immediately due for payment or performance upon the assessment by the Administrator, or upon the decision by an administrative law judge where a hearing is timely requested, or upon the decision by the Secretary where review is granted.  The employer shall remit the amount of the civil money penalty by certified check or money order made payable to the order of "Wage and Hour Division, Labor."  The remittance shall be delivered or mailed to the Wage and Hour Division office in the manner directed in the Administrator's notice of determination.  The payment or performance of any other remedy prescribed by the Administrator shall follow procedures established by the Administrator. Distribution of back wages shall be administered in accordance with existing procedures established by the Administrator."

notification from the Administrator pursuant to paragraph (a) of this section, shall not approve

petitions filed with respect to that employer under sections 204 or 214(c) of the INA . . . for

nonimmigrants to be employed by the employer, **for the period of time provided by the Act**

**and described in § 655.810(f).**" (A.R. at 2) (emphasis added).  However, nowhere in

§ 655.810(f) is there any description of the one year time period in the Administrator's

Determination.

 Therefore, by the plain language of the regulations cited in the Administrator's

Determination, Cyberworld's alleged violation of § 655.738 is not among the violations

requiring notification to the Attorney General for the denial of petitions for a one-year period.

Although another regulation, 20 C.F.R. § 655.810(d)(1), does identify violations for which

denial of petitions may apply, the Administrator did not cite this provision in its Determination;

and it therefore cannot be applied.  Nowhere in the Administrator's Determination is there any

citation to 20 CFR § 655.810(d), and the regulations that are cited in the Determination do not

refer in any way to § 655.810(d).

 A remedy that is not authorized by the regulations cited in the Determination cannot be

applied.  For example, in *Board of Veterans Appeals*, 1998 BVA LEXIS 128252, BVA 98-

18281, at *1-2 (Jun. 15, 1998), the statement of the case and subsequent supplemental statement

of the case did not cite particular regulations.  The Board of Veterans Appeals found that the

"agency of original jurisdiction should reference the appropriate legal authorities, and the

veteran should be provided notice of such reliance, in any event, so that he is properly informed

of the basis of the decision and can respond appropriately in his argument and presentation of

evidence." *See also, e.g, Board of Veterans Appeals*, Docket No. 99-05 941, 2001 BVA LEXIS

25481; BVA 2001-07081, at *5 (Mar. 9, 2001) (citing *Bernard v. Brown*, 4 Vet. App. 384, 394

(1993)) (Board remanded case because issued document did not include citation to the laws and

regulations concerning finality of agency of original jurisdiction decisions, and omission may

have been prejudicial to the veteran); *Board of Veterans Appeals*, Docket No. 97-08296, 1999

BVA LEXIS 27084; BVA 99-27124, at *17-18 (Sept. 22, 1999) (whether BVA must remand an appeal to the agency of original jurisdiction to cure a deficiency in the statement of the case relating to citation of statutes and regulations will depend upon the circumstances of the individual case). Further, the regulations that are cited by the Administrator, such as § 655.855, cannot be read to include § 655.810(d) when the plain language refers only to § 655.810(f). It would be prejudicial to Plaintiff for it to be forced to guess which violation and remedies were being alleged and to respond to regulations not cited in the Determination.

Even if § 655.810(d) were applied absent any citation to it, it is not clear that it applies to violations regarding displacement inquiries and, in any case, should be viewed as discretionary rather than mandatory. Section 655.810(d), "Disqualification from approval of petitions," provides: "The Administrator shall notify the Attorney General pursuant to § 655.855 that the employer shall be disqualified from approval of any petitions filed by, or on behalf of, the employer pursuant to section 204 or section 214(c) of the INA for the following periods: (1) at least one year for violation(s) of any of the provisions specified in paragraph (b)(1)(i)[11] through (iii) of this section."

Section 655.810(b)(1)(i), referred to for the civil penalty and the one year bar, lists a violation "pertaining to . . . displacement of U.S. workers" but does not include violations pertaining to "failure to make secondary displacement inquiries". Displacement of U.S. workers (20 C.F.R. § 655.805(a)(7)) is clearly a distinct violation from failure to make displacement inquiry (20 C.F.R. § 655.805(a)(8)). Therefore, from the plain language of the regulation, the penalty and one year bar should not be imposed on Plaintiff for the alleged failure to make a displacement inquiry.

The ALJ summarily dismissed all of these deficiencies in the Administrator's Determination and in the regulatory scheme on the basis that the regulatory errors have a "de

---

[11] Twenty C.F.R. 655.810(b)(1)(i) provides: "The Administrator may assess civil money penalties for violations as follows: (1) an amount not to exceed $1,000 per violation for: (i) A violation pertaining to strike/lockout (§ 655.733) or displacement of U.S. workers (§ 655.738)."

minimis" effect and that the statutory language overrides any contrary regulatory language. (A.R. at 666). Acknowledging that the regulatory section which Plaintiff was charged with violating and pursuant to which the Administrator asserts its authority to impose a mandatory debarment does not, in fact, reference any violation committed by Plaintiff, the ALJ asserted that this is "an administrative error" on the part of the Department of Labor that should not prejudice the Department of Labor. One reason given by the ALJ is that the statute should override the regulation. However, here again, Plaintiff is subject to a "heads I win, tails you lose" fate. When the statute requires action by the Administrator within thirty days as an absolute requirement with no exceptions, the contrary language of the regulation that provides exceptions is considered to be governing when it is to the prejudice of the Plaintiff. However, when the regulatory language prejudices the DOL, the ALJ applies the language of the statute to the prejudice of the Plaintiff.

Perhaps aware of this inconsistency, the ALJ presented an alternative argument. Specifically, he noted that another regulatory section provides the authority that is not provided for in the regulatory section cited in the Determination. However, as noted above, the alternative regulatory section which was not cited--20 C.F.R. § 655.810(b)--applies to displacement of U.S. workers, which the ALJ expressly found did not occur as a result of the Plaintiff's actions. Here again, the ALJ went back to the statute to clarify "regulatory uncertainty." The ALJ further tried to clarify the regulatory uncertainty by engaging in a rather convoluted regulatory analysis which concludes that the regulatory language referencing "displacement of U.S. workers" could be deemed to include the completely separate regulatory violation of "secondary displacement," and that if it is deemed to include "secondary displacement," it should be deemed to include the failure to make "secondary displacement inquiries."

## CONCLUSION

For the reasons stated, this Court should dismiss the Defendants' Motion for Summary

Judgment.

Dated:  February 27, 2007

Respectfully submitted,


THE NEUBERGER FIRM, P.A.

/s/ Stephen J. Neuberger
Stephen J. Neuberger (#4440)
Two East Seventh Street, Ste. 302
Wilmington, DE 19801
302-655-0582
Counsel for Plaintiff


KLASKO, RULON, STOCK & SELTZER, LLP

/s/ H. Ronald Klasko
H. Ronald Klasko
1800 John F. Kennedy Blvd.
Philadelphia, PA 19103
(215) 825-8600
Admitted *Pro Hac Vice*
Counsel for Plaintiff

**EXHIBIT A**





**UNITED STATES DEPARTMENT OF LABOR**
**WAGE HOUR DIVISION**
Federal Building, Room 2100
844 King Street
Wilmington, Delaware 19801
(302) 573-6112 or Fax: (302) 573-6365

November 5, 2001

Mr. Suresh K. Kakkirala
President
**Cyberworld Enterprise Technologies, Inc.**
**1406 Forrest Avenue**
**Suite B-2**
**Dover, DE. 19904**

Dear Mr. Kakkirala,

The Wage and Hour Division is responsible for conducting investigations to determine compliance with the H-1B Labor Condition Application (LCA) provisions of the Immigration and Nationality Act (INA). This is to notify you that your firm has been scheduled for investigation pursuant to and under authority of INA and implementing regulations at 20 CFR Part 655. I will visit your establishment on December 4, 2001, at 10AM, to initiate this investigation.

At that time I will need to meet with you or a designated representative to obtain current information about your company and its operations. The initial period covered by this investigation will be from December 5, 1999 through December 4, 2001.

The following records must be available for inspection and copying at the time of our meeting. Please have a workspace and a copy machine available for me if you wish to have the records remain on your premises.

1. A copy of all public access documentation required by the Federal Regulations Part 655.760 including:

    (a) All Labor Condition Applications (LCA -ETA Form 9035) submitted to the U.S. Department of Labor Employment and Training Administration (ETA) by your firm for the employment of H-1B workers during the designated investigative period;

    (b) A full, clear, explanation of the system used to set the actual wage you paid for all occupations in which the H-1B workers were employed during the designated period;

    (c) The documentation used to establish the prevailing wage for all occupations and all areas of employment in which the H-1B workers were employed during the designated period;

    (d) A copy of the document(s) used to satisfy the notification requirements with respect to the employment of the H-1B workers;

(e) A summary of benefits offered to U.S. Workers;
(f) For H-1B dependent and/or willful violator employers;
   (1) List of exempt H-1B worker(s), and
   (2) A summary of recruitment methods used and the time frames of the recruitment of U.S. Workers.

2. A list of every H-1B nonimmigrant worker employed during the period December 5, 1999 through December 4, 2001 and a report with the following information for each worker listed, in each week they were employed:

(a) The LCA that was included as part of their H-1B visa application,
(b) Their actual hours of work and gross earnings received
(c) An explanation of the deductions made from their weekly wages,
(d) The actual site where their work was performed each week (Site, City, State),
(e) The actual rate of pay,
(f) The date of entry into the U.S.,
(g) The date of hire/termination, and
(h) A copy of each Petition for Nonimmigrant Worker (Form I-129 and H Supplement) and subsequent INS Approval Form (I-797) for each H-1B worker employed during the designated period.

Other documents and information will be requested as needed to complete the investigation and must be produced as soon as possible.

Please contact me immediately at the number given above if you have any questions regarding this visit.

Sincerely,


Ron Zylstra (302-573-6112
Wage and Hour Investigator

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Received by (*Please Print Clearly*) Suresh Kakkirala    B. Date of Delivery<br>C. Signature<br>X _VKShVl_   ☐ Agent ☐ Addressee |
| 1. Article Addressed to:<br><br>Mr. Suresh K. Kakkirala<br>Cyberworld Enterprise<br>Technologies, Inc.<br>1406 Forrest Air, Suite B-2<br>Dover, DE. 19904 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☑ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D.<br>4. Restricted Delivery? (*Extra Fee*) ☐ Yes |
| 2. Article Number<br>(*Transfer from service label*)   7001 1940 0007 0590 2696 | |
| PS Form 3811, March 2001    Domestic Return Receipt | 102595-01-M-1424 |

**EXHIBIT B**

Tekstrom, Inc.
1406 Forrest Ave.
Suite B-2
Dover, DE.19904
FKA: Cyberworld Enterprise Technologies, Inc.


### H-1B Narrative Report


## GENERAL BACKGROUND:

This compliance action ("C/A") was ████████████████████████
filed with the Wage and Hour Division by ████████████████  H-1B
████████  ████████  identified ██████████████████████████
nonimmigrant employee of the subject firm. ████████████████

████████  alleges that the employer supplied incorrect or false
information on the Labor Condition Application ("LCA") and that the
subject firm failed to pay ████ for time off due to a decision by
the employer. In this case, the ████████████ is an "aggrieved
party". (Title 20, CFR, 655.806.) ████████████████


## COVERAGE:

The subject firm in this case is Tekstrom, Inc., (hereafter
referred to as Tekstrom). Tekstrom is formerly known as Cyberworld
Enterprise Technologies, Inc., ("Cyberworld"). The case file has
the name of Cyberworld; however, for purposes of this
investigation, the firm is referred to and submitted as Tekstrom.
Although the name of the firm has changed, there was no change in
the corporate ownership or control.

Tekstrom is primarily engaged in computer software development and
consulting. The firm also furnishes computer maintenance services.
Tekstrom recruits and employs educated and skilled computer
professionals and furnishes these employees to client businesses.
The individual employee furnished by Tekstrom to the client
business is jointly employed by Tekstrom and the client firm.
However, for purposes of enforcement of the applicable LCA
provisions, Tekstrom is deemed to be the primary employer; the
client's place of business is considered to be the "secondary" work
site.

Tekstrom's main office is located at 1406 Forrest Avenue, Suite B-
2, Dover, DE. 19904. The President of Tekstrom is Mr. Suresh
Kakkirala. The subject firm's Vice President is Charan Minkas.
Tekstrom operates branch facilities in California and Florida.

At the time of the investigation visit, Tekstrom had 18 current LCAs on file with the Employment and Training Administration ("ETA"). The subject firm did not have any equivalent U.S. employees at its main office site. Since ETA has certified a LCA for each one filed by the subject firm, coverage is asserted under the H-1B provisions of the Immigration and Nationality Act ("INA"). Therefore, Tekstrom is subject to all of the LCA elements.

Tekstrom is an H-1B "dependent" employer: the firm employs fewer than 25 full-time equivalent employees who are employed in the U.S. and employs more than seven H-1B nonimmigrant workers. (20 CFR 655.736.)

STATUS OF COMPLIANCE:

Immigration and Nationality Act - INA 212(n); 8 U.S.C. 1182(n):

Final Rule - 20 CFR Part 655:

LCA Element: Wage Payment Requirement to H-1B Nonimmigrant - (20 CFR, Part 655.731):

In this case, the ███████████, ███████████████████, was placed by Tekstrom at a client site known as ███████████, which is located at ███████████████████████. The ███████████ was employed as a Quality Assurance Analyst at this site. ████ commenced ████ employment at the client site in ███████.

In ██████ ███ statement furnished to Wage and Hour, █████ ██████ states that the project on which ████ working was completed ███████████████████████. ████ Tekstrom ████████████████████████████████████████ ██████████████████████. The ███████████████ goes on to say that this period of non productive time was due to a decision by Tekstrom; ██████████████████████████████████████



<u>LCA Element: Working Conditions of Similarly Employed Workers Will Not Be Adversely Affected - (CFR 655.732):</u>

During the investigation period the subject firm did not employ any U.S. workers at its main office location in occupations specified on any of the LCA's filed. (See Element: "H-1B Dependent Employer and Willful Violators" below.)

<u>LCA Element: There is No Strike, Lockout or Labor Dispute - (CFR 655.733):</u>

<u>LCA Element: Notice Has Been Provided to Workers - (CFR 655.734):</u>

A copy of the required notice for each position for which a LCA had been approved was posted on the firm's main office bulletin board for the specified period of time.

Furthermore, the subject firm gave electronic notice to all affected workers, (employees in the occupational classification for

which N-1B nonimmigrant workers were sought), at each place of employment where the H-1B nonimmigrant was or would be employed.

**LCA Element: H-1B Dependent Employer and Willful Violators - (CFR 655.736):**



As reported above, Tekstrom is a H-1B "dependent" employer.

**LCA Element: Non-displacement of U.S. Workers Obligations Applicable to H-1B Dependent Employers - CFR 655.736 and 738:**

As an H-1B "dependent" employer, Tekstrom is subject to specified non displacement obligation standards as set forth in CFR 655.736 and 738. One of these obligations concerns the placement of a H-1B nonimmigrant worker at a secondary work site. In accordance with CFR 655.738, a H-1B "dependent" employer is prohibited from placing non exempt H-1B workers with another employer unless and until the H-1B employer makes certain inquiries and/or has certain information concerning that other employer's displacement of similarly employed U.S. workers in its work force.

In this case, the subject firm placed fourteen (14) H-1B workers with other employers after 01/19/01. (Exhibit C-1.) In that connection, the investigation disclosed that Tekstrom failed to inquire of any secondary employer where the worker(s) was placed whether he/she had displaced a similarly employed U.S. worker 90 days before or 90 days after the placement of the H-1B worker(s). Furthermore, the investigation found that there was no clause in any of the firm's secondary placement employment contracts regarding displacement of similarly employed U.S. workers.

. In this connection, note that the President of the subject firm, Suresh Kakkarila, indicated on the initial conference questionnaire that the firm failed to inquire of the secondary employer whether he/she had displaced or intended to displace a similarly employed U.S. worker 90 days before or 90 days after the placement of the H-1B worker. (Exhibit E-10.) Neither could the firm produce affirmative evidence to the contrary.

Civil Money Penalties ("CMP's"):

The LCA's filed for the H-1B workers placed after 01/19/01 were filed for non-exempt employees. Note that in each case the employer checked box B, in Item F, of the LCA. If the LCA is filed for an exempt worker(s), the employer must check box C. (Refer to copies of the LCA's found in the C Exhibit Section of the case file.)



Based on the foregoing analysis, the CMP's are computed as follows:

      50% reduction X $1,000 X 2 non exempt ees. = $1,000.
      80% reduction X $1,000 X 12 exempt ees. = $2,400.
      Total CMP's: $3,400.00

Debarment:

The U.S. Attorney General (AG) shall be notified of the occurrence of the violation as cited in this case. Upon notification, the AG is required to deny any petitions filed by the subject firm under sections 204 of the INA for a period of at least one year from the

date of receipt of the notification. Furthermore, the DOL's
Employment and Training Administration, upon receipt of the
notification, will be required to invalidate any current LCA(s) and
not accept for filing any new LCA(s) for the period of time for
which the firm is debarred by the AG.

DISPOSITION:

On 10/07/02, the INV. conducted a final conference, via telecom,
with Charan Minkas. Minkas is the subject firm's Vice President.
Minkas agreed to represent the firm in the final conference. The
general H-1B provisions for dependent employers were reviewed with
respect to all applicable elements on the LCA.

The INV. notified Minkas of the firm's H-1B dependent status and
the additional attestation obligations that come with this H-1B
status determination. In this regard, the INV apprised Minkas of
the firm's failure, after 01/19/01, to make, on behalf of 14 H-1B
workers, the required inquiries of the secondary employers
regarding the displacement of similarly employed U.S. workers at
such work sites. Minkas conceded the violation, but he stated that
the firm was simply unaware of this dependent employer obligation
at the time the LCA's were filed and at the time the placements
were made. Minkas also claimed that the firm was not aware that box
C is to be checked in Item F of the LCA if the LCA is filed for an
exempt employee.

The INV. explained that, even though the evidence indicated that 12
of the 14 placed H-1B workers proved to be exempt, since the firm
identified them all as non exempt on the LCA's filed, the firm had
an obligation to make the inquiry on their behalf. For future
purposes, the INV. explained to Minkas that the firm is not
required to make the inquiry of the secondary employer if the LCA
filed for the placed worker identifies the worker as exempt and, in
fact, the worker meets the exempt criteria, as set forth in CFR
655.737.

The INV. apprised Minkas of the potential remedies in this case. In
that connection, he was advised that the firm would be sent a
letter of determination wherein the violation would be summarized
and the remedy imposed for such violation would be set forth. The
INV. explained to Minkas that the remedy would in all likelihood
include the prohibition of the firm to sponsor any aliens for
employment for a period of time as well as the assessment of a CMP.
However, the INV. advised Minkas that since 12 of the 14 H-1B
workers in question met the exempt criteria, the INV. would
recommend that this reality be a significant mitigating factor in
the consideration of the amount of CMP's to assess. The INV. also
notified Minkas that the determination letter would explain the

procedure for filing a request for a hearing. Minkas stated that the firm had already corrected the violation by incorporating into each secondary employer contract a clause regarding the displacement of similarly displaced U.S. workers. Minkas indicated moreover that the firm in now following up with verbal confirmation from the secondary employer prior to making the placement. Minkas also assured the INV. that the firm had properly documented all such inquiries made on behalf of non exempt employees.

Regarding the claim ███████ ████████████████████████, the INV. advised Minkas that the collective evidence disclosed in this case did not support his allegation that he was not paid for compensable non productive time or that the firm had supplied incorrect or false information on the LCA.

Recommendation:



Complainant:



Ron Zylstra, INV.
10/07/02

**EXHIBIT C**

**U.S. Department of Labor**     Administrative Review Board
200 Constitution Avenue, N.W.
Washington, D.C. 20210



In the Matter of:

SEYANABOU A. NDIAYE,                    ARB CASE NO. 05-024

        COMPLAINANT,               ALJ CASE NO. 2004-LCA-36

                               DATE:  November 29, 2006

     v.

CVS STORE NO. 6081,

        RESPONDENT.

BEFORE:        THE ADMINISTRATIVE REVIEW BOARD

Appearances:

*For the Complainant:*
   Seyanabou A. Ndiaye, *pro se*, Cincinnati, Ohio

*For the Respondent:*
   Martha A. Schoonover, Esq., John F. Scalia, Esq., *Greenberg Traurig, LLP*,
   McLean, Virginia

### FINAL DECISION AND ORDER

The Complainant, Seyanabou A. Ndiaye, has filed a complaint with the Wage and Hour, Employment Standards Division of the Department of Labor (DOL), alleging a violation of H-1B provisions of the Immigration and Nationality Act.[1]   A DOL Administrative Law Judge (ALJ), granted the Respondent CVS's Motion for Summary Judgment, finding that Ndiaye failed to file a timely complaint and raised no questions of fact regarding her entitlement to tolling of the statute of limitations.

The question presented to the Administrative Review Board for determination is whether the ALJ properly granted CVS's Motion for Summary Judgment and dismissed

---

[1]     8 U.S.C.A. § 1101 *et seq.* (West 2006).

Ndiaye's complaint on the grounds that there were no genuine issues of material fact as to the date of filing of Ndiaye's complaint with the DOL. Finding, as discussed below, that Ndiaye, as a matter of law, failed to present any genuine issue of material fact as to the date of filing of her complaint and failed to proffer grounds sufficient to toll the limitations period, we agree with the ALJ's recommendation to dismiss Ndiaye's complaint.

## BACKGROUND

In November of 2000, the Respondent, CVS, submitted a Labor Contract Agreement (LCA) to the DOL seeking certification to employ Ndiaye as a pharmacy intern.[2] The DOL granted the certification and CVS hired the Complainant on the basis of an H-1B visa. On August 2, 2002, CVS fired Ndiaye. The Complainant describes the action taken against her as a suspension until further notice, while CVS insists the action was a termination of employment. No further employment actions occurred after this date between the two parties. On August 20, 2002, the Complainant, through counsel, sent a letter to CVS claiming retaliatory suspension of employment based on Ndiaye reporting violations of an H-1B visa. CVS responded stating that they were considering further review. Neither party to the dispute filed the letter with the DOL at the time of the correspondence.

On November 5, 2002, the Complainant filed a Title VII[3] claim of discrimination action with the Equal Employment Opportunity Commission (EEOC) alleging discrimination based on race and national origin.[4] When filling out the EEOC form, the Complainant marked the last violation as occurring on August 2, 2002. Additionally, when given the option of checking a box that marks the complaint as a "continuing

---

[2]     The INA permits employers in the United States to hire nonimmigrant alien workers in specialty occupations. 8 U.S.C.A. § 1101(a)(15)(H)(i)(b). These workers commonly are referred to as H-1B nonimmigrants. Specialty occupations require specialized knowledge and a degree in the specific specialty. 8 U.S.C.A. § 1184(i)(1). To employ H-1B nonimmigrants, the employer must fill out a Labor Condition Application (LCA). 8 U.S.C.A. § 1182(n). The LCA stipulates the wage levels that the employer guarantees for the H-1B nonimmigrants. 8 U.S.C.A. § 1182(n)(1); 20 C.F.R. §§ 655.731, 655.732. After securing DOL certification for the LCA, the employer petitions for and the nonimmigrants receive H-1B visas from the State Department upon Immigration and Naturalization Service (INS) approval. 20 C.F.R. § 655.705(a), (b) (The INS is now the "U.S. Citizenship and Immigration Services" or "USCIS," which is located within the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2194-96 (Nov. 25, 2002)).

[3]     42 U.S.C.A. § 2000e *et seq.* (West 2006).

[4]     Respondent CVS's Motion for Summary Judgment, Ex. 4: EEOC Form 5 (Rev. 07/99), Charge Number 221A300091, filed 10/28/2002.

violation," the Complainant chose not to select that option.[5]  CVS filed a response on December 3, 2002, denying all allegations.  On January 17, 2003, the EEOC closed its file stating that it found no violation of Title VII in the evidence provided.

The Complainant also filed an action with the Unemployment Compensation Review Commission (UCRC).  The UCRC denied the Complainant's request for unemployment benefits on September 16, 2002.  The Complainant filed a timely appeal of the UCRC's decision with a hearing officer.  The hearing officer denied Ndiaye's claim in January of 2003.  Through counsel, Carrie Barron, the Complainant attempted to persuade the UCRC to reconsider its decision in late January 2003.[6]  The Complainant's appeal was denied.

On March 30, 2004, the Complainant filed a WH-4 form with the DOL initiating this proceeding.  Because the DOL determined that the Complainant had not filed her complaint in a timely manner, it issued its decision denying her relief in July 2004, without completing an investigation.

The Complainant appealed the dismissal of her complaint by the Wage and Hour Division to a DOL ALJ.  The ALJ ruled that Ndiaye did not timely file her complaint. He found that CVS terminated Ndiaye's employment on August 2, 2002.  She did not file her complaint with the DOL until April 1, 2004.  Under Title 8 U.S.C.A. § 1101 et seq. and 20 C.F.R. § 655.806(a)(2006), the statute of limitations for filing H-1B matters with the DOL Wage and Hour Division is one-year (12 months).

The ALJ also found that the Complainant's letter of August 20, 2002, to the CVS Human Resource Manager did not constitute a continuing violation that would toll the limitations period.  Most notably, the letter was not filed with the DOL until July 2, 2004, when the Complainant first filed her H-1B complaint.  The ALJ ruled that there was no issue of material fact as to whether the complaint was filed within the one year statute of limitations.

Under the provisions of 29 C.F.R. § 18.40 (2006), the ALJ may "enter summary judgment for either party if the pleadings, affidavits, material obtained by discovery or otherwise, or matters officially noticed show that there is no genuine issue as to any material fact and that a party is entitled to summary decision."[7]  On September 10, 2004, the ALJ dismissed the complaint as a matter of law in granting the Respondent's motion for summary judgment.

---

[5]      *Id*.

[6]      Docket number #R02-23293-0000 for the Unemployment Compensation Review Commission in Columbus, Ohio.

[7]      29 C.F.R. § 18.40(d).

The Complainant was given until October 10, 2004, to petition the Administrative Review Board (ARB or Board) for review. She did not file a petition until December 1, 2004. The ARB issued an Order to Show Cause, for the Complainant to demonstrate a sufficient reason to allow an untimely filing of her appeal. In her Response to the Order to Show Cause, Ndiaye relied on an order issued by the ALJ. In the Order, entitled "Joint Order: Order Amending Order Granting Motion for Summary Decision to be Recaptioned as Decision and Order Granting Summary Decision and Dismissal of the Complaint; Order Treating Complainant's Document Captioned Hearing on Issues of Genuine Facts as Complainant's Petition for Review and Request for Hearing on Issues of Genuine Facts; Order Transferring the Matter to the Administrative Reivew [sic] Board as a Petition for Review, and Order of Cancellation of Hearing," the ALJ states that the original complaint should be transferred to the ARB and treated as a timely filed petition for review. The ALJ also attached a service sheet to the Order indicating that the Legal Assistant served a copy of the Order on the ARB via regular mail. Because Ndiaye had reasonably relied on the ALJ's irregular order to her detriment, we determined that it was appropriate to toll the limitations period for filing her appeal and accept her petition for review.

### JURISDICTION AND STANDARD OF REVIEW

The Board has jurisdiction to review an ALJ's decision concerning the INA.[8] Under the Administrative Procedure Act, the Board, as the Secretary of Labor's designee, acts with "all the powers [the Secretary] would have in making the initial decision . . . ."[9] The Board reviews the ALJ's decision de novo.[10] Under a de novo standard of review, the reviewing court considers the matter anew and freely substitutes its own judgment for that of the lower court.

---

[8]     18 U.S.C.A. § 1182(n)(2) and 20 C.F.R. § 655.845. See also Secretary's Order No. 1-2002, 67 Fed. Reg. 64,272 (Oct. 17, 2002) (delegating to the ARB the Secretary's authority to review cases arising under, inter alia, the INA).

[9]     5 U.S.C.A. § 557(B) (West 1996), quoted in *Goldstein v. Ebasco Constructors, Inc.*, 1986-ERA-36, slip op. at 19 (Sec'y Apr. 7, 1992).

[10]     *Yano Enters., Inc. v. Administrator*, ARB No. 01-050, ALJ No. 2001-LCA-0001, slip op. at 3 (ARB Sept. 26, 2001); *Administrator v. Jackson*, ARB No. 00-068, ALJ No. 1999-LCA-0004, slip op. at 3 (ARB Apr. 30, 2001). See generally *Mattes v. United States Dep't of Agric.*, 721 F.2d 1125, 1128-1130 (7th Cir. 1983) (rejecting argument that higher level administrative official was bound by ALJ's decision); *McCann v. Califano*, 621 F.2d 829, 831 (6th Cir. 1980), and cases cited therein (sustaining rejection of ALJ's decision by higher level administrative review body).

The standard for granting summary decision is essentially the same as that found in the rule governing summary judgment in the federal courts.[11] Accordingly, summary decision is appropriate if there is no genuine issue of material fact. The determination of whether facts are material is based on the substantive law upon which each claim is based.[12] A genuine issue of material fact is one, the resolution of which "could establish an element of a claim or defense and, therefore, affect the outcome of the action."[13]

We view the evidence in the light most favorable to the non-moving party and then determine whether there are any genuine issues of material fact and whether the ALJ correctly applied the relevant law.[14] "To prevail on a motion for summary judgment, the moving party must show that the nonmoving party 'fail[ed] to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.'"[15] Accordingly, a moving party may prevail by pointing to the "absence of evidence proffered by the nonmoving party."[16]

Furthermore, a party opposing a motion for summary decision "may not rest upon the mere allegations or denials of [a] pleading. [The response] must set forth specific facts showing that there is a genuine issue of fact for the hearing."[17]

## DISCUSSION

The Complainant, in her briefs to the Board, reiterates her actual complaints against CVS in relation to the H-1B violation, but she raises no material facts related to the question of timeliness. The rule under 20 C.F.R. § 655.806(a)(5) is:

---

[11]    Fed. R. Civ. P. 56.

[12]    *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[13]    *Bobreski v. United States EPA,* No. 02-0732(RMU), 2003 WL 22246796, at *3 (D.D.C. Sept. 30, 2003).

[14]    *Lee v. Schneider Nat'l, Inc.,* ARB No. 02-102, ALJ No. 2002- STA-25, slip op. at 2 (ARB Aug. 28, 2003); *Bushway v. Yellow Freight, Inc.,* ARB No. 01-018, ALJ No. 00-STA-52, slip op. at 2 (ARB Dec. 13, 2002).

[15]    *Bobreski,* at *3 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).

[16]    *Bobreski,* at *3.

[17]    29 C.F.R. § 18.40(c)(2006). *See Webb v. Carolina Power & Light Co.,* No. 93-ERA-42, slip op. at 4-6 (Sec'y July 17, 1995).

A complaint must be filed not later than 12 months after the latest date on which the alleged violation(s) were committed, which would be the date on which the employer allegedly failed to perform an action or fulfill a condition specified in the LCA, or the date on which the employer, through its action or inaction, allegedly demonstrated a misrepresentation of a material fact in the LCA.

The Respondent contends that after August 2, 2002, the date on which CVS terminated her employment, the Complainant had no further employment relationship with CVS. The limitations period begins to run from the date of the last alleged violation.[18] The last alleged violation pertinent to the H-1B complaint was CVS's termination of the Complainant's employment. CVS clearly demonstrated its intention to terminate the Complainant's employment. The Complainant no longer worked for CVS after August 2, 2002, and she received no payment or benefits from CVS for time worked after this date. However, Ndiaye did not file her complaint until April 1, 2004. Additionally, the Complainant did not allege, before the ALJ or in any briefs presented to the ARB, any further violations after August 22, 2002, that might toll the statute of limitations.

In her Rebuttal Brief in Response to Respondent's Reply Brief on ALJ's Granting of Motion of Summary Judgment, the Complainant contends that the August 22, 2002 letter from her counsel to CVS and CVS's subsequent response amounted to an ongoing conflict with no resolution. However, the letter does not imply that any further employment contract would arise, or that any violation occurred, after the point of Ndiaye's termination from CVS. There is no evidence in the letter that either party expected further employment, rather only a resolution of the disputed claim. CVS believed its actions terminated the Complainant's employment on August 2, 2002. Although the Complainant contends that she believed that her employment was merely suspended and that future employment might be possible, a subjective belief by one party that termination might not occur does not toll the statute of limitations.[19] An objective reading of the letter does not lead the reader to the belief that it constituted a continuance of the employment contract between CVS and Ndiaye.

The ALJ decided that the August 22, 2002 letter was not evidence of a continuing violation sufficient to toll the statute of limitations. Further, the ALJ ruled that after the August 22, 2002 letter, regardless of whether the employment action was a firing or a suspension, neither side acted in any manner to extend the employment relationship sufficient to toll the statute of limitations. The ALJ's interpretation of the letter is valid.

---

[18]    *Delaware State College v. Ricks*, 449 U.S. 250, 257-261 (1980).

[19]    *Ballentine v. Tennessee Valley Authority*, ALJ No. 91-ERA-23, slip op. at 2 (Sep. 23 1992); *see English v. Whitfield*, 858 F.2d 957, 961-962 (4th Cir. 1988); *Janikowski v. Bendix Corp.*, 823 F.2d 945, 947 (6th Cir. 1987).

The letter does not present a genuine issue of material fact relevant to the issue whether Ndiaye timely filed her complaint.

The Complainant also relies in her Brief on Review of the Administrative Law Judge's Decision on the fact that the DOL accepted her case in July of 2004 for investigation. The DOL stopped its investigation after determining that the filing of the claim was untimely. The fact that the Wage and Hour Division accepted the case prior to investigating the question of timeliness does not constitute a genuine issue of material fact relevant to the issue whether Ndiaye timely filed her complaint because the WHD could not decide whether she timely filed her complaint without first accepting the case for investigation. The Complainant has failed to demonstrate that either she or CVS initiated any action or that a subsequent violation occurred, sufficient to toll the statute of limitations.

In her Brief on Review of the Administrative Law Judge's Decision, Ndiaye focuses primarily on the merits of her claim, which are not at issue in this appeal. The Board has held that limitation periods adopted to expedite the administrative resolution of cases that do not confer important procedural benefits upon individuals or other third parties outside the ARB are subject to equitable tolling.[20] The ARB has recognized three situations in which it will accept an untimely complaint.[21]

(1)    When the respondent has actively misled the complainant respecting her rights to file a petition,

(2)    The complainant has in some extraordinary way been prevented from asserting his or her rights, or

(3)    The complainant has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum.[22]

Ndiaye bears the burden of justifying the application of equitable modification principles.[23] Ignorance of the law will not support a finding of entitlement to equitable

---

[20]    *Harvey v. Home Depot U.S.A., Inc.*, ARB Nos. 04-114 and 115, ALJ Nos. 2004-SOX-20 and 36, slip op. at 16 (ARB June 2, 2006).

[21]    *Hemingway v. Northeast Utilities*, ARB No. 00-074, ALJ Nos. 99-ERA-014, 015, slip op. at 4 (ARB Aug. 31, 2000); *Guiterrez v. Regents of the Univ. of Cal*, ARB No. 99-116, ALJ No. 98-ERA-19, slip op. at 3 (ARB Nov. 8, 1999).

[22]    *Accord School Dist. of Allentown v. Marshall*, 657 F.2d 16, 18 (3d Cir. 1981)(the court held that a statutory provision of the Toxic Substances Control Act, 15 U.S.C. § 2622(b)(1976 & Supp. III 1979), providing that a complaint must file a complaint with the Secretary of Labor within 30 days of the alleged violation, is not jurisdictional and may therefore be subject to equitable tolling); *see Hemingway v. Northeast Utilities*, ARB No. 00-074, ALJ Nos. 99-ERA-014, 015, slip op. at 4 (ARB Aug. 31, 2000); *Guiterrez v. Regents of the Univ. of Cal*, ARB No. 99-116, ALJ No. 98-ERA-19, slip op. at 3 (ARB Nov. 8, 1999).

tolling.[24]  Ndiaye failed to address her entitlement to equitable tolling, either before the ALJ or the Board.  Generally, the Board will not consider an issue that a party has not raised and briefed.[25]  Nevertheless even if Ndiaye had raised this issue in this case, she has raised no genuine issue of material fact relevant to the applicability of equitable tolling to her complaint.

First, there is no evidence that the Respondent actively misled the Complainant with respect to her rights to file a complaint, nor has the Complainant made any assertion that she was so misled.

Second, there is no genuine issue of material fact regarding whether Ndiaye was in some extraordinary way prevented from asserting her rights.  In fact, it appears that quite the opposite was true.  The Complainant contacted at least three different organizations seeking remedies for her situation.  Both the EEOC and the UCRC denied her claims on the merits.  Additionally, there is no evidence that the Complainant was prevented from seeking relief on the H-1B claim prior to filing her complaint in July of 2004.  Her counsel correctly identified the issue in his August 20, 2002 letter.  Since the Complainant was not prevented from asserting her rights, equitable tolling is not applicable.

Finally, there is no genuine issue of material fact regarding whether Ndiaye mistakenly raised the precise statutory claim but in the wrong forum.  The letter the Complainant's counsel, Richard I. Fleischer, wrote to the Human Resource Manager of CVS the appropriate statutory claim for the Complainant.  In it, the Complainant asserts that the Respondent fired her when she complained that she was inappropriately placed as a Pharmacy Service Associate rather than a Pharmacy Intern, as required by her H-1B visa.  In the present case, the Complainant should have filed with the Wage and Hour Division of the Department of Labor.[26]  The Complainant's letter to CVS dated August 20, 2002, did not constitute a filing in any forum, mistaken or not.  A forum is a court or other judicial body.[27]  CVS, as an employer and not a judicial body, does not meet the

---

[23]    *Higgins v. Glen Raven Mills, Inc.*, ARB No. 05-143, ALJ No. 2005-SDW-7, slip op. at 8 (ARB Sep. 29, 2006); *see Wilson v. Sec'y, Dep't of Veterans Affairs*, 65 F.3d at 404 (complaining party in Title VII case bears burden of establishing entitlement to equitable tolling).

[24]    *Accord Wakefield v. Railroad Retirement Bd.*, 131 F.3d 967, 970 (11th Cir. 1997); *Hemingway v. Northeast Utilities*, ARB No. 00-074, ALJ Nos. 99-ERA-014, 015, slip op. at 4-5 (ARB Aug. 31, 2000).

[25]    *Higgins* at *8.

[26]    20 C.F.R. § 655.806(a)(1)(2006).

[27]    BLACKS LAW DICTIONARY (8th ed. 2004)(West 2004).

definition of forum. There was no mistake in filing here, as the complaint was never filed in a venue qualifying as a forum.

Ndiaye raised no genuine issues of material fact in relation to the question of timely filing. The ALJ properly found that there were no material facts pertinent to the untimely filing of the Complainant's complaint. Additionally, the Complainant fails to provide any evidence of material fact which would allow her to claim relief under the doctrine of equitable tolling.

### CONCLUSION

The Complainant failed to raise any genuine issue of material fact regarding the untimely filing of her claim. She fails to provide any explanation for the fact that more than 12 months elapsed prior to the filing of her claim of an H-1B violation. Additionally, Ndiaye raised no genuine issue of material fact regarding the applicability of equitable tolling in evaluating her complaint since there is no showing that the Respondent misled Ndiaye as to her rights to file a claim; she was not prevented from filing; and she failed to file this claim in any forum prior to April 2004.

Accordingly, since there are no genuine issues of material fact, we **AFFIRM** the ALJ's Order Granting Motion for Summary Judgment and **DISMISS** the complaint.

**SO ORDERED.**

**M. CYNTHIA DOUGLASS**
**Chief Administrative Appeals Judge**

**DAVID G. DYE**
**Administrative Appeals Judge**

## <u>CERTIFICATE OF SERVICE</u>

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that

on February 27, 2007, I electronically filed the foregoing **REPLY IN OPPOSITION TO**

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court

using CM/ECF which will send notification of such filing to the following:

Seth M. Beausang, Esq.
Assistant U.S. Attorney
U.S. Attorney's Office
The Nemours Building
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE  19899-2046

By:    */s/ Stephen J. Neuberger*

Stephen J. Neuberger (# 4440)
The Neuberger Firm
Two East Seventh Street, Suite 302
Wilmington, DE 19801-3707
Phone: 302-655-0582