# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| CYBERWORLD ENTERPRISE TECHNOLOGIES, INC. d/b/a/ TEKSTROM, INC., : : : : Plaintiff, : : v. : : MICHAEL CHERTOFF, Secretary of : the Department of Homeland Security; : ALBERTO GONZALES, Attorney General; : ELAINE L. CHAO, Secretary of Labor; : EMILIO T. GONZALEZ, Director, United : States Citizenship and Immigration Services; : : Defendants. : | C.A. No. 1:06-cv-00402-*** |

## DEFENDANTS' RESPONSE TO CYBERWORLD/TEKSTROM'S REPLY IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COLM F. CONNOLLY
United States Attorney

SETH M. BEAUSANG (DE I.D. No. 4071)
Assistant United States Attorney
1007 N. Orange Street, Suite 700
P.O. Box 2046
Wilmington, Delaware 19899-2046
(302) 573-6277, ext. 149
(302) 573-6220 (fax)

OF COUNSEL:

JONATHAN L. SNARE
Acting Solicitor of Labor
United States Department of Labor

STEVEN J. MANDEL
Associate Solicitor
Fair Labor Standards Division

WILLIAM C. LESSER
Deputy Associate Solicitor

JONATHAN M. KRONHEIM
Counsel for Trial Litigation

JOAN BRENNER
Attorney
Office of the Solicitor                                Dated: March 28, 2007

**TABLE OF CONTENTS**

*Page*

ARGUMENT:

    I.    THE BOARD'S RULING THAT THE FAILURE TO ISSUE A DETERMINATION LETTER WITHIN A 30-DAY PERIOD DID NOT DEPRIVE THE SECRETARY OF JURISDICTION IS CONTROLLED BY BROCK V. PIERCE COUNTY AND MUST BE AFFIRMED . . . . . . . . . 1

    II.    DEBARMENT WAS MANDATORY BECAUSE OF CYBERWORLD/TEKSTROM'S ADMITTED FAILURE TO MAKE THE SECONDARY DISPLACEMENT INQUIRY . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**TABLE OF AUTHORITIES**

*CASES:*

    Brock v. Pierce County,
        476 U.S. 253 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 & passim

    St. Regis Mowhak Tribe, N.Y. v. Brock,
        769 F.2d 37 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    United States v. James Daniel Good Real Prop.,
        510 U.S. 43 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,8

    United States v. Montalvo-Murillo,
        495 U.S. 711 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*STATUTES:*

    Administrative Procedure Act:

        5 U.S.C. 556 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        5 U.S.C. 706(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    American Competitiveness and Workforce Improvement Act of 1998,
        Pub. L. 105-277, 112 Stat. 2681-641 *et seq.* . . . . . . . . . . . . . . . 3

i

*STATUTES -- continued:* *Page*

   Immigration and Nationality Act:

      Section 101(a)(15)(H)(i)(b), 8 U.S.C. 1101(a)(15)(H)(i)(b) . . . . .   3

      Section 212(n)(1)(E), 8 U.S.C. 1182(n)(1)(E) . . . . . . . . . . . . . .   10

      Section 212(n)(1)(F), 8 U.S.C. 1182(n)(1)(F) . . . . . . . . . . . . . .   10

      Section 212(n)(2)(A), 8 U.S.C. 1182(n)(2)(A) . . . . . . . . . . . . . .   6

      Section 212(n)(2)(B), 8 U.S.C. 1182(n)(2)(B) . . . . . . . . . . . . . .   7

      Section 212(n)(2)(C)(i)(I), 8 U.S.C. 1182(n)(2)(C)(i)(I) . . . . . . . .   10

      Section 212(n)(2)(C)(i)(II), 8 U.S.C. 1182(n)(2)(C)(i)(II) . . . . . .   10

*CODE OF FEDERAL REGULATIONS*:

   20 C.F.R:
      Section 655.810(b)(3)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

      Section 655.810(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*MISCELLANEOUS*:

   144 Cong. Rec. (Oct. 21, 1998):

      p. S12748 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

      p. S12751 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

   144 Cong. Rec. (Nov. 12, 1998):

      p. E2323 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

      p. E2324 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5,6

   65 Fed. Reg. (Dec. 20, 2000):

      p. 80110 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

      p. 80150 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

*MISCELLANEOUS -- continued:*   *Page*

    H.R. Rep. No. 657, 105th Cong., 2d Sess. (1998) . . . . . . . . . . . . . . . . . .   5

    H.R. Rep. No. 692, 106th Cong., 2d Sess. (2000) . . . . . . . . . . . . . . . . . .   3

    Office of the Inspector General, U.S. Department of Labor, *Final Report:*
    *The Department of Labor's Foreign Labor Certification Programs: The*
    *System is Broken and Needs to be Fixed* (May 22, 1996) . . . . . . . . . . . .   5

UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

| | |
|---|---|
| CYBERWORLD ENTERPRISE TECHNOLOGIES, INC. d/b/a/ TEKSTROM, INC., : : : : Plaintiff, : : v. : : MICHAEL CHERTOFF, Secretary of : the Department of Homeland Security; : ALBERTO GONZALES, Attorney General; : ELAINE L. CHAO, Secretary of Labor; : EMILIO T. GONZALEZ, Director, United : States Citizenship and Immigration Services; : : Defendants. : | C.A. No. 1:06-cv-00402-*** |

DEFENDANTS' RESPONSE TO CYBERWORLD/TEKSTROM'S
REPLY IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

In its Reply Brief ("Pl. Br."), Cyberworld/Tekstrom argues that because the Department of Labor's Wage and Hour Division did not complete its investigation and issue a determination letter within 30 days, the Secretary was deprived of jurisdiction. Cyberworld/Tekstrom's position is contrary to Brock v. Pierce County, 476 U.S. 253 (1986). Plaintiff's argument that debarment was improper is contrary to plain statutory language.

I.  THE BOARD'S RULING THAT THE FAILURE TO ISSUE A DETERMINATION LETTER WITHIN A 30-DAY PERIOD DID NOT DEPRIVE THE SECRETARY OF JURISDICTION IS CONTROLLED BY BROCK V. PIERCE COUNTY AND MUST BE AFFIRMED

In arguing that the Secretary lost jurisdiction for failing to meet the 30-day statutory time frame, plaintiff simply ignores the teachings of the unanimous Supreme

Court decision in Brock v. Pierce County, 476 U.S. 253 (1986). As noted in Defendants' opening brief, that case concerned whether the Secretary of Labor lost jurisdiction for failure to meet a 120-day statutory deadline. Like the H-1B statute at issue here, the statute in Pierce County provided that the Secretary "shall" make a determination within the statutory deadline.

The Supreme Court noted in that case that "the proposition that Congress intended the Secretary to lose the authority to recover misspent funds 120 days after learning of the misuse 'is not, to say the least, of the sort that commands instant assent." 476 U.S. at 258 (quoting St. Regis Mohawk Tribe, N.Y. v. Brock, 769 F.2d 37, 41 (2d Cir. 1985)). The Court went on to state that "[w]e would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake." 476 U.S. at 260. The Court has since explained, citing to Pierce County, that it has held that "if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanctions." United States v. James Daniel Good Real Prop., 510 U.S. 43, 63-64 (1993). It is undisputed that the H-1B statute provides no consequence for noncompliance with the 30-day deadline.

Cyberworld/Tekstrom attempts to avoid this holding, suggesting that this case merely involves its private right to a "license" to recruit foreign workers (Pl. Br. at 17 n.3). This unique view of immigration law is hardly what Congress intended. A dispassionate reading of the H-1B provisions makes plain that the H-1B statute is concerned with public rights. As a voluntary program, the statute permits employers to obtain and employ nonimmigrants on a temporary basis to fill specialized jobs in the

2

United States. *See* 8 U.S.C. 1101(a)(15)(H)(i)(b). In order to make available to employers the services of qualified nonimmigrant aliens to aid in fulfilling employment needs where there is a shortage of United States workers with the requisite skills, Congress enacted a complex and detailed statutory scheme that takes into consideration the need to meet the country's employment requirements while at the same time ensuring that protections are in place to protect U.S. citizens (*see* Defendants' Brief ("Def. Br.") in Support of Motion for Summary Judgment at 12-17).

This statutory scheme provides that the penalties to be imposed include debarment of violating employers from participation in the program for a period of time. In addition, the statutory provisions reflect the requirement of compliance with other employment and tax laws. As a result, these provisions safeguard against the erosion of United States workers' wages and moderate any economic incentive or advantage in hiring temporary foreign workers. *See, e.g.*, H.R. Rep. No. 692, 106th Cong., 2d Sess. 12 (2000) (discussion of the Labor Department's 1996 Office of Inspector General report).

Because of experience during the statute's early years, the important policy issue of safeguarding U.S. workers and limiting any potentially violative conduct by employers was of particular concern during the process of developing the requirements for and obligations of H-1B dependent employers, as reflected in the legislative history of ACWIA (the American Competitiveness and Workforce Improvement Act of 1998, Pub. L. 105-277, 112 Stat. 2681-641 *et seq.*). Much of this concern is reflected in the Preamble to the Interim Final Rule, 65 Fed. Reg. 80110, 80150 (Dec. 20, 2000). For example, in discussing the necessity for a covered employer to make the inquiry of a secondary employer, Senator Abraham is quoted as saying that the new attestation

3

requires a covered employer "to promise to inquire" as to the other employer's intent to displace a U.S. worker before placing an H-1B worker with another employer. 144 Cong. Rec. S12751 (Oct. 21, 1998) (statement of Sen. Abraham). The covered employer must also state that it has no knowledge that the other employer has done so or intends to do so. *Id.*

In Pierce County, there was concern in Congress over the growing misuse of CETA funds. 476 U.S. at 263-64. Here, Congress was especially troubled by the numerous "job shops" like Cyberworld/Tekstrom that would recruit foreign workers and send them to work for other companies. It was the job shops which engaged in the petition process and which were responsible for wages and working conditions.[1] Congress was certain that the protections of United States workers (and even protection of H-1B employees against exploitation) were being adversely affected by the prevalence and practices of these job shops. For example, the legislative history includes an excerpt from an audit by the Department of Labor's Office of Inspector General criticizing job contractors:

> We found that 6 percent of the * * * H-1B aliens * * * were contracted out by the petitioning employer to other employers. Some of the petitioning employers operate job shops--companies which hire predominantly, or exclusively, H-1B aliens then contract out these aliens to other employers. The current H-1B law does not prohibit this practice; however, there is a concern that these job shops are paying the H-1B

---

[1] "The employers most prone to abusing the H-1B program are called 'job contractors' or 'job shops.' Much, or all, of their workforces are composed of foreign workers on H-1B visas. Many of these companies make no pretense of looking for American workers and are in business to contract their H-1Bs out to other companies. The companies to which the H-1Bs are contracted benefit in that the wages paid to the foreign workers are often well below what comparable Americans would receive. Also, the companies don't have to shoulder the obligations of being the legally recognized employers -- the job contractors/shops remain the official employers." 144 Cong. Rec. E2323 (Nov. 12, 1998) (remarks of Rep. Lamar S. Smith).

4

>       aliens less than prevailing wage, making contracting out with job shops more appealing to the U.S. employer.
>
>       Our sample of * * * cases also included six petitions for another job shop contractor.  * * * For five of the six cases, the employer established the same prevailing wage--$27,000--for all jobs even though the jobs were located in four different States.  It is highly unlikely that the prevailing wage was the same for this job in all four locations.

H.R. Rep. No. 657, 105th Cong., 2d Sess. 10 (1998) (quoting Office of the Inspector General, U.S. Department of Labor, *Final Report:  The Department of Labor's Foreign Labor Certification Programs:  The System is Broken and Needs to be Fixed*, 21, 25-27 (May 22, 1996)) (alterations in original).

Furthermore, in its discussions regarding the increase in layoffs (particularly in high-tech firms), the Committee Report stated that there were reports that employers actually fired American workers and went to "job shops" for their replacements.  H.R. Rep. No. 657, at 21.  The Report states:  "The no-lay off attestation must be designed so that it cannot be evaded by an employer who fires American workers and replaces them with H-1B aliens who are technically employees of the job contractor.  The bill thus provides that the contracting firm, as well as the job contractor, must execute a no-lay off attestation." *Id.* at 21-22.

In his remarks, Congressman Smith also focused on the connection between the job shops and the secondary displacement inquiry:  "In enacting this provision, Congress intends that the employer make a reasonable inquiry and give due regard to available information.  Simply making a pro forma inquiry would not insulate a covered employer from liability should [the] 'other' employer displace an American worker [from] a job sufficiently similar to the one which would be performed by an H-1B worker."  144 Cong. Rec. at E2324.  Congressman Smith also identified that as one reason for notifying

5

the employer through "a clear statement on the labor condition application (LCA)" as to the scope of its liability, particular in regard to layoffs.  *Id.*  Congressman Smith emphasized that an employer "must exercise due diligence in meeting its responsibilities regarding the secondary employer."  *Id.*

The parallel between Congress' concerns with the practices of "job shops," and the congressional concern with the misuse of CETA funds in Pierce County is striking.  *See* Pierce County, 476 U.S. at 263-265.  In that case, the Court observed that "[t]here is no indication in the legislative history that Congress was concerned that the Secretary was treating prime sponsors too harshly; to the contrary, the House and Senate Reports consistently voice Congress' belief that the Secretary had not been aggressive enough."  *Id*. at 265.  Here too, Congress amended the H-1B statute to deal, among other things, with the problem of job shops.  As the Court concluded in Pierce County, Congress did not attempt to tie the hands of the Secretary to address the abuses which were the focus of its attentions.

Further, the H-1B statute is complaint driven.  *See* 8 U.S.C. 1182(n)(2)(A).  To deprive the Secretary of jurisdiction because of a failure to meet one of the statutory time limits would deprive injured complainants of redress, eliminating the opportunity for statutorily required compensation.  As stated by the Court, "106(b) cannot be jurisdictional, because it would then permit the Secretary's inaction to prejudice individual complainants seeking to enforce their rights under CETA."  Pierce County, 476 U.S. at 262.  The same considerations prevent that result in this case as well.

Cyberworld/Tekstrom also attempts to distinguish Pierce County by minimizing the actions required of the Secretary within the 30-day time frame (*see* Pl. Br. at 15, 17).

In fact, the demands on the Secretary are, if anything, more onerous here. In <u>Pierce County</u>, the Secretary was required to issue a determination within a period of 120 days. That determination was then subject to review by an ALJ and the Secretary. 476 U.S. at 256 n.3. Under the H-1B statute, the Secretary has only 150 days to complete the investigation, and obtain review by an ALJ and the Secretary. Moreover, there are <u>three</u> time limits included in the applicable provision:

> [T]he Secretary shall provide, within <u>30</u> days after the date such a complaint is filed, for a determination as to whether or not a reasonable basis exists to make a finding described in subparagraph (C). If the Secretary determines that such a reasonable basis exists, the Secretary shall provide for notice of such determination to the interested parties and an opportunity for a hearing on the complaint, in accordance with section 556 of title 5, United States Code, within <u>60</u> days after the date of the determination. If such a hearing is requested, the Secretary shall make a finding concerning the matter by not later than <u>60</u> days after the date of the hearing.

8 U.S.C. 1182(n)(2)(B) (emphases added). If one of these deadlines were to present a jurisdictional bar to continuation of a case, it is arguable that they all would. However, as stated in <u>Pierce County</u>, other factors enter into the process that are outside the control of the Secretary and may prevent meeting one or another of these deadlines. 476 U.S. at 261.[2] Accordingly, as in <u>Pierce County</u>, the Secretary has only a limited period in which

---

[2] Curiously, as part of its argument in favor of permitting discovery at this late stage of the case, Cyberworld/Tekstrom claims that the documents and answers to interrogatories that it sought were aimed at disclosing the possibility that circumstances outside of the Department of Labor's control existed to justify the Secretary's departure from the 30-day time limit (Pl. Br. at 22). However, Cyberworld/Tekstrom cannot justify its request for additional discovery, given its primary argument that the Department cannot go forward with this case because the statutory and regulatory requirements were not met in the first instance. In any case, it is difficult at best to perceive how such discovery might be of assistance to Cyberworld/Tekstrom. If documents containing information regarding reasons for delay were produced, it would help only the Secretary, not Cyberworld/Tekstrom. As indicated by the ALJ, the Secretary had offered to produce just such information had it been deemed necessary or useful at the time (AR 292 n.5).

to complete the entire action following a complaint; therefore, the conclusion that these time limits are directory rather than mandatory is fully supportable in this case as well.[3]

Cyberworld/Tekstrom also argues that it was "prejudiced" by the delay in issuing a determination letter because of the loss of witnesses.[4]  It is difficult to conceive of a basis for this claim.  Witnesses provide facts, but this case was dealt with on cross-motions for summary judgment and Cyberworld/Tekstrom's position involves only legal issues.  No factual matters were even mentioned in Cyberworld/Tekstrom's brief to the ALJ (AR 372-86; Cyberworld/Tekstrom's Memorandum in Support of Motion for Summary Decision).  Moreover, in its brief to the Board, Cyberworld/Tekstrom did not raise the issue of dissatisfaction with the adverse discovery ruling of the ALJ (AR 687-713; Cyberworld/Tekstrom's Memorandum of Law in Support of Petition for Review).[5]

---

This kind of flaw in Cyberworld/Tekstrom's logic also attends its argument that the misstatement of the proper regulatory provision in one part of the determination letter deprives the Secretary of authority to go forward (Pl. Br. at 32-34).  That argument was sufficiently refuted in Defendants' initial brief (*see* Def. Br. at 28-30 & n.22).

[3] The Court has followed this doctrine in other cases as well (*see* Def. Br. at 18 n.12).  Indeed, as stated *supra*, in James Daniel Good, the Court stated that it has held that "if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanctions."  510 U.S. at 63-64 (citing United States v. Montalvo-Murillo, 495 U.S. 711, 717-21 (1990) and Pierce County, 476 U.S. at 259-62 (other citation omitted)).

[4] Cyberworld/Tekstrom's "laches" argument was addressed in the Defendants' initial brief (Def. Br. at 20) and need not be repeated here.

[5] Cyberworld/Tekstrom now states:  "Since Cyberworld has asserted that it was prejudiced by the Administrator's 19 month delay, there is a disputed issue of material fact that a reasonable fact finder may resolve in Cyberworld's favor on the issue of a laches defense" (Br. at 27).  In the first place, Cyberworld/Tekstrom's laches defense is without merit, as demonstrated in Defendants' initial brief (Def. Br. at 20).  In the second place, Cyberworld/Tekstrom attempts to attribute a variety of legal rulings to "disputes of material fact" (*see* Pl. Br. at 2-3).  This case involves APA review of an administrative record and there is neither legal nor factual value to any argument concerning the reasons

8

Notwithstanding the anomalies in Cyberworld/Tekstrom's arguments, the response to Cyberworld/Tekstrom's concern may also be found in Pierce County. The Court emphasized that when "there are less drastic remedies available . . . , courts should not assume that Congress intended the agency to lose its power to act." 476 U.S. at 260. The Court pointed out that, in accordance with the Administrative Procedure Act ("APA"), 5 U.S.C. 706(1), an "aggrieved" person could bring an action in district court seeking to "compel agency action unlawfully withheld or unreasonably delayed." *Id.* at 260 n.7 (quoting the APA). Cyberworld/Tekstrom did nothing.[6]

Accordingly, the Secretary's jurisdiction to bring and pursue this case was not forfeited. Cyberworld/Tekstrom has not provided any persuasive reasons to deny the Secretary's motion for summary judgment on those grounds.

II.     DEBARMENT WAS MANDATORY BECAUSE OF CYBERWORLD/TEKSTROM'S ADMITTED FAILURE TO MAKE THE SECONDARY DISPLACEMENT INQUIRY

As noted in Defendants' opening brief, the statutory language is clear. Section (1) (F) of the H-1B statute provides that

> the employer will not place the nonimmigrant with another employer . . . where -- (i) the nonimmigrant performs duties . . . at one or more worksites owned, operated, or controlled by such other employer; and (ii) there are indicia of an employment relationship between the nonimmigrant and such other employer; unless the employer has inquired of the other

---

for delay. Furthermore, it would be entirely inappropriate in this context to allow Cyberworld/Tekstrom to engage in a fishing expedition for so-called "factual" matters outside the administrative record that are not relevant to the legal questions at issue here (Pl. Br. at 7-9). Therefore, Cyberworld/Tekstrom's contentions regarding discovery outside the administrative record are unavailing.

[6] There is one other similarity between this case and Pierce County that is worth noting. One of Cyberworld/Tekstrom's arguments (Pl. Br. at 20-22) is that the Secretary failed to abide by her own regulations. A similar argument was raised in Pierce County and was rejected by the Court, which found it "unpersuasive." 476 U.S. at 265.

9

> employer as to whether, and has no knowledge that . . . the other
> employer has displaced or intends to displace a United States worker.

8 U.S.C. 1182(n)(1)(F) (emphases added). Section (2)(C)(i) provides that

> [i]f the Secretary finds, after notice and an opportunity for hearing, a
> failure to meet a condition of paragraph . . . (1)(F), . . . the Secretary shall
> notify the Attorney General of such finding . . . and . . . the Attorney
> General shall not approve petitions filed with respect to that employer . . .
> during a period of at least 1 year.

8 U.S.C. 1182(n)(2)(C)(i)(I), (II) (emphases added).

Cyberworld/Tekstrom has never contested before the agency or before this Court that the prerequisites found in subsections (i) and (ii) of section (1)(F) are met, or alleged that it ever made the required inquiry. As such, the Congressional directive is clear: plaintiff's petitions may not be approved for at least one year. No amount of parsing of the regulations or the legislative history can change that result.

Cyberworld/Tekstrom attempts to minimize the requirement of making a displacement inquiry by emphasizing that there was no actual displacement (Pl. Br. 28-30). As the statute clearly provides, the inquiry is distinct from an actual occurrence of displacement. *Compare* 8 U.S.C. 1182(n)(1)(E) *with* 8 U.S.C. 1182(n)(1)(F).

Thus, Cyberworld/Tekstrom's repeated assertions that it should not be held responsible because it did not know where the employees would ultimately be placed does not excuse its failure to comply with the requirement that it make the requisite inquiry. Cyberworld/Tekstrom's knowledge or lack of knowledge of the actual placement of its employees with a third-party employer has no relevance to the question whether it was obligated to make the inquiry of its vendors, and to impose on them the obligation to make the inquiry of downstream employers. The secondary-displacement attestation is part of the Labor Condition Application ("LCA") and was absolutely

10

required of every dependent employer.  Cyberworld/Tekstrom signed a legal document swearing that it fulfilled the attestation's terms.  As an employer engaged in the business of securing substantial numbers of H-1B workers (*see* Pl. Br. at 1), Cyberworld/Tekstrom chose to engage in the business of placing these foreign workers.  It certainly had knowledge of the laws and rules with which it was required to comply.

     Debarment follows from the willful misrepresentation of a material fact on an LCA.  *See* 20 C.F.R. 655.810(b)(3)(ii), (d)(1).  It is undisputed that Cyberworld/Tekstrom failed to make the inquiry, even though it knew the inquiry was required and it legally promised to fulfill that obligation.   Accordingly, the standard for debarment has been met.

**CONCLUSION**

For the reasons stated here and in the Defendants' initial brief, this Court should reject Cyberworld/Tekstrom's arguments and grant the Defendants' motion for summary judgment.

Dated: March 28, 2007

        Respectfully submitted,

        COLM F. CONNOLLY
        United States Attorney


        _____
        Seth M. Beausang (DE I.D. No. 4071)
        Assistant United States Attorney
        1007 N. Orange Street, Suite 700
        P.O. Box 2046
        Wilmington, Delaware 19899-2046
        (302) 573-6277, ext. 149
        (302) 573-6220 (fax)

OF COUNSEL:

JONATHAN L. SNARE
Acting Solicitor of Labor
United States Department of Labor

STEVEN J. MANDEL
Associate Solicitor
Fair Labor Standards Division

WILLIAM C. LESSER
Deputy Associate Solicitor

JONATHAN M. KRONHEIM
Counsel for Trial Litigation

JOAN BRENNER
Attorney
Office of the Solicitor

## CERTIFICATE OF SERVICE

I, Seth M. Beausang, hereby attest under penalty of perjury that on this 28th day of March 2007, I caused a copy of the Defendants' Response To Cyberworld/Tekstrom's Reply In Opposition To Defendants' Motion For Summary Judgment to be served on the following counsel for Plaintiff by electronic filing:

Stephen J. Neuberger
The Neuberger Firm, P.A. 2
East 7th Street Suite 302
Wilmington, DE 19801
(302) 655-0582
Email: SJN@NeubergerLaw.com

      /s/ Seth M. Beausang
    Seth M. Beausang (De. I.D. No. 4071)