IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CYBERWORLD ENTERPRISE           :
TECHNOLOGIES,                   :
INC. d/b/a TEKSTROM, INC.,      :
                                :
            Plaintiff,          :
                                :
     v.                         :   Civil Action No. 06-402-JJF
                                :
JANET NAPOLITANO, Secretary,    :
Department of Homeland          :
Security, Eric H. Holder, Jr.,  :
Attorney General; HILDA L.      :
SOLIS, Secretary, Department    :
of Labor; and Michael Aytes,    :
Acting Deputy Director,         :
United States Citizenship and   :
Immigration Services,           :
                                :
            Defendants.         :

---

H. Ronald Klasko, Esquire of KLASKO, RULON, STOCK & SELTZER, LLP, Philadelphia, Pennsylvania.
Stephen J. Neuberger, Esquire of THE NEUBERGER FIRM, P.A., Wilmington, Delaware.

Attorneys for Plaintiff.

David C. Weiss, Esquire, Acting United States Attorney, and Seth M. Beausang, Esquire, Assistant United States Attorney of THE OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware.

Attorney for Defendants.

---

**MEMORANDUM OPINION**

March 25, 2009
Wilmington, Delaware.

Joseph Faunan
**Farnan, District Judge**

Pending before the Court is a Motion for Summary Judgment
(D.I. 34) filed by Defendants, Michael Chertoff, Alberto
Gonzales, Elaine L. Chao and Emilio T. Gonzalez. For the reasons
discussed, the Court will grant Defendants' Motion.

## I.   BACKGROUND

Plaintiff, Cyberworld Enterprise Technologies, Inc. d/b/a
Tekstrom, Inc. ("Cyberworld"), a Delaware corporation, is an
information technology consulting and staffing company,
specializing in software development and computer maintenance.
Cyberworld's business relies on the ability to recruit, employ
and train foreign nationals. (D.I. 1, Complaint ("Cmplt.") at ¶
1; Administrative Record ("AR") at 633.) The individuals hired
and trained by Cyberworld are then placed with other companies in
the United States who may need their expertise. (D.I. 47 at 3.)
As a result, Cyberworld files a significant number of petitions
and applications for nonimmigrant and immigrant workers. Since
1999, Cyberworld has petitioned for and hired approximately 600
nonimmigrant workers with H-1B visas. (Id.) Because more than
ninety percent of its workforce is comprised of H-1B
nonimmigrants, Cyberworld is classified as an "H-1B-dependent
employer" under the Immigration and Nationality Act ("INA"), 8
U.S.C. § 1182(n)(3), and is subject to certain regulations and
oversight of the Department of Labor ("DOL").

On August 9, 2001, a complaint was filed against Cyberworld concerning alleged violations of the INA and its regulations. (AR at 290.)  On November 5, 2001, the Wage and Hour Division of the DOL initiated an investigation of Cyberworld.  (AR at Ex. A; Cmplt. at ¶ 3.)  During the investigation, the DOL determined that no United States workers were actually displaced by Cyberworld, and Cyberworld properly paid the wages due all employees.  However, Cyberworld conceded that it committed a violation of the INA and its related regulations by failing to make the threshold inquiry as to whether United States workers might be displaced by its placement of H-1B nonimmmigrant workers at secondary employers.  (Cmplt. at ¶ 3; AR at 634 & Ex. B.)

More than nineteen months later, on March 20, 2003, the Administrator of the DOL's Wage and Hour Division issued a Determination that Cyberworld violated 8 U.S.C. § 1182(n)(1)(F) and 20 C.F.R. § 655.738.  (AR at 1-2, Cmplt. at ¶ 26.)  The Determination ordered Cyberworld to pay a civil monetary penalty of $3,400 and informed Cyberworld that it would be referred to the Attorney General for a one-year period of mandatory debarment from filing immigrant and nonimmigrant petitions for employees. (AR at 1-2, 635; Cmplt. at ¶ 3, 25.)  This debarment would preclude the Attorney General from granting any petitions filed by Cyberworld and would require the Employment and Training Administration of the DOL to invalidate any current Labor

Condition Applications ("LCAs") held by Cyberworld and to deny
acceptance of any new LCAs.  (AR at 2; Cmplt. at ¶ 3.)

    Cyberworld requested a hearing contending, among other
things, that the Administrator's failure to timely act deprived
the DOL of jurisdiction to impose sanctions.  (AR at 36-38;
Cmplt. at ¶ 4, 26.)  An Administrative Law Judge ("ALJ") issued a
Decision on September 23, 2003 and December 23, 2003,
respectively, upholding the Administrator's Determination and
rejecting Cyberworld's defense that the Administrator's action
was time-barred.  (AR at 291, 624-648.)

    Cyberworld appealed the ALJ's Decision to the Administrative
Review Board.  (Cmplt. at ¶ 26.)  The Administrative Review Board
affirmed the ALJ's decision, making it a final administrative
decision on May 24, 2006.  (AR at 809-811.)  Thereafter,
Cyberworld filed this appeal pursuant to 5 U.S.C. § 702 for
review of the decisions of the ALJ and Administrative Review
Board.

## II. STANDARD OF REVIEW

### A.  Summary Judgment

    Pursuant to Rule 56(c) of the Federal Rules of Civil
Procedure, a party is entitled to summary judgment if a court
determines from its examination of "the pleadings, depositions,
answers to interrogatories, and admissions on file, together with
the affidavits, if any," that there are no genuine issues of

3

material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976). However, a court should not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts . . . In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)(citations omitted). However, the mere existence of some evidence in support of the nonmovant will not be sufficient to support a denial of a motion for summary-judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, (1986).

B.  Administrative Procedures Act

Pursuant to the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by

4

agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. In reviewing an agency decision, the Court is required to

> hold unlawful and set aside agency action, findings, and conclusions found to be-

> > (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

> > (B) contrary to constitutional right, power, privilege, or immunity;

> > (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

> > (D) without observance of procedure required by law;

> > (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

> > (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706(2). In conducting this limited review, the Court may not substitute its judgment for that of the agency. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 413-15 (1971), overruled on other grounds, Califano v. Sanders, 430 U.S. 99, 97 (1977). Rather, the court's inquiry is limited to determining whether the agency "considered the relevant factors and articulated a rational connection between the facts found and the choice made" and "whether there has been a clear error of

5

judgment." <u>Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.</u>, 419 U.S. 281, 285-286 (1974).

In reviewing an agency's interpretation of law, the Court begins with the basic tenets of statutory construction and turns to the language of the statute to determine its plain meaning. <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 844 (1984). The agency's interpretation cannot conflict with the plain meaning of the statute. <u>Sullivan v. Everhart</u>, 494 U.S. 83 (1990). If the plain meaning is unclear, the Court may look to the legislative history of the statute to determine if the agency's construction is permissible. <u>Chevron</u>, 467 U.S. at 845. The Court gives substantial deference to the agency's interpretation of the statutes it administers and the regulations it promulgates, provided that the interpretation is permissible. In this regard, the Court must uphold an agency's permissible construction, even if the Court would have reached a different construction had the question originally arisen in a judicial proceeding. <u>Id.</u> at 843, n. 11.

## III. DISCUSSION

Cyberworld challenges the final decision of the Secretary of the DOL on two primary grounds. First, Cyberworld contends that the Secretary was deprived of jurisdiction to impose any penalties against Cyberworld because the Administrator of the DOL failed to issue a determination within the 30-day time frame

6

provided for in Section 1182(n)(2)(B). Second, Cyberworld

contends that the Secretary erred in concluding that debarment

was authorized under Section 1182(n)(2)(C) for Cyberworld's

violation of the INA's displacement inquiry requirement. The

Court will consider each of these issues in turn.

A.  Whether The Secretary Was Deprived Of Jurisdiction By
    The Failure To Issue A Determination Within 30 Days

With respect to investigating complaints of LCA violations

filed under the INA, Section 1182(n)(2)(B) provides:

the Secretary shall provide, within 30 days after the
date such a complaint is filed, for a determination as
to whether or not a reasonable basis exists to make a
finding described in subparagraph (C). If the Secretary
determines that such a reasonable basis exists, the
Secretary shall provide for notice of such
determination to the interested parties and an
opportunity for a hearing on the complaint, in
accordance with section 556 of Title , within 60 days
after the date of the determination. . . .

(emphasis added).

Cyberworld contends that the plain meaning of this provision

requires the Court to construe the 30-day time limitation as

mandatory, and therefore, the agency's interpretation of the time

limitation as directory is an impermissible statutory

construction. In support of its argument, Cyberworld points out

that Congress utilized the word "shall," which carries a

mandatory meaning, as opposed to the word "may," which carries a

permissive meaning. Because the statute utilizes the word "may"

in certain discrete instances, Cyberworld contends that Congress

7

knew how to establish permissive procedures when it wanted to, and chose instead to make the 30-day time limitation mandatory. Cyberworld also contends that reading the word "shall" to be permissive in certain contexts and not others within the same paragraph would lead to a piecemeal reading of the statute. Cyberworld further contends that the legislative history supports this construction because similar mandatory language was used by Congress in discussing the need to have the Secretary of Labor move swiftly in investigating and adjudicating complaints. See H.R. Doc. No. 101-732, pt. 1 at 65-66 (". . . the Secretary of Labor is to investigate and determine within 30 days . . ."; ". . . the Secretary must move swiftly to adjudicate the matter . . ."); 144 Cong. Rec. S12741, S12754 (Oct. 21, 1998) ("[A]s in current law regarding investigations of complaints, the investigation may only last 30 days.") (emphasis added).

Defendants contend that interpretation of the 30-day time limitation provided in Section 1182(n)(2)(B) is governed by the Supreme Court's decision in Brock v. Pierce County, 476 U.S. 253 (1986). Because Section 1182(n) does not provide a consequence for the Secretary's failure to comply with this time frame, Defendants contend that it cannot be construed as a jurisdictional limitation.

In Brock, the Supreme Court considered a provision of the Comprehensive Employment and Training Act which provided that the

8

Secretary of Labor "shall" issue a final determination as to the misuse of CETA funds within 120 days after receiving a complaint alleging misuse. Noting that the statutory scheme did not provide any consequences for the Secretary's failure to act within the specified time frame, the Supreme Court stated:

> We would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake. When, as here, there are less drastic remedies available for failure to meet a statutory deadline, courts shall not assume that Congress intended the agency to lose its power to act.

476 U.S. at 260.

Cyberworld attempts to distinguish Brock contending that the statutory scheme underlying Brock was complex and involved the protection of a public right. Cyberworld suggests that Section 1182(n) is a more simplistic statute that does not involve the protection of a public right. In the Court's view, however, Cyberworld's arguments are contradicted by the legislative history accompanying the H-1B statutory scheme.[1] See Preamble to the Interim Final Rule 65 Fed. Reg. 80110, 80150 (Dec. 20, 2000), 144 Cong. Rec. S12751, E2324 (Oct. 21, 1998) (statement of Sen. Abraham); H.R. Rep. No. 657, 105th Cong., 2d Sess. 10 (1998).

---

[1]      This includes amendments made to the INA by virtue of the American Competitiveness and Workforce Improvementn Act of 1998, Pub. L. 105-277, 112 Stat. 2681-641 et seq.

Further, the Court is unpersuaded by Cyberworld's argument that it was unduly prejudiced by the Secretary's delay such that the doctrine of laches should apply.  In particular, Cyberworld suggests that "employees who could serve as witnesses or who had knowledge of the events at issue left the company."  (D.I. 47 at 25).  In this case, however, Cyberworld admitted its violation of the INA, and the case before the ALJ and the Administrative Review Board turned on stipulated facts requiring no testimony from any witnesses or employees of Cyberworld.  In these circumstances, the Court cannot conclude that the Secretary's delay resulted in prejudice, and while prejudice is not required to apply the doctrine of laches, the Court finds no basis to apply laches here.  See, e.g., Utah Power & Light Co. v. United States, 243 U.S. 389, 409 (1917) ("As a general rule, laches or neglect of duty on the part of officers of the government is no defense to a suit by it to enforce a public right or protect a public interest.").

In sum, the Court concludes, based on the Supreme Court's decision in Brock, that the 30-day time limitation set forth in Section 1182(n)(2)(B) is not mandatory and the Secretary's non-compliance with this deadline did not deprive her of jurisdiction to impose penalties for Cyberworld's violation of the INA.

Accordingly, the Court will grant Defendants' Motion For Summary Judgment as it applies to this issue.[2]

    B.   Whether TheALJ  Erred In Concluding That Cyberworld Was Subject To Mandatory Debarment As A Result Of Its Statutory Violation

With regard to penalties for violations, the INA and its related regulations provide, in pertinent part:

> If the Secretary finds, after notice and the opportunity for a hearing, a failure to meet a condition of paragraph (1)(b), (1)(e), or (1)(f) . . .
> --
>
> > (I) the Secretary shall notify the Attorney General of such finding and may, in addition, impose such other administrative remedies (including civil money penalties in an amount not to exceed $1,000 per violation) as the Secretary determines to be appropriate; and
> >
> > (II) the Attorney General shall not approve petitions filed with respect to that employer under section 204 or 214(c) of this title during a period of at least 1 year for aliens to be employed by the employer.

8 U.S.C. § 1182(n)(2)(C)(i) (emphasis added).

> The Administrator shall notify the Attorney General pursuant to 655.855 that the employer shall be disqualified from approval of any petitions filed by, or on behalf of, the employer pursuant to section 204 or section 214(c) of the INA for the following periods:

-----

[2]    Cyberworld also contends that summary judgment is inappropriate because there are genuine issues of material fact concerning the reasons behind the Secretary's delay and that discovery is appropriate in this regard.  In light of the Court's ruling that the 30 day limitation period is directive and not mandatory, the Court concludes that discovery is not warranted, and there are no genuine issues of material fact that preclude summary adjudication of this issue.

> (1) <u>At least one year</u> for violations of any
> of the provisions specified in paragraph
> (b)(1)(i) through (iii) of this section.

20 C.F.R. § 655.810(d)(1) (emphasis added).

Cyberworld contends that the penalty of debarment was not authorized for its failure to make secondary displacement inquiries because knowledge of where its H-1B employees are placed is a prerequisite to the H-1B dependent employer's displacement inquiry and Cyberworld had no such knowledge of where its H-1B employees would ultimately be placed.   In addition, Cyberworld contends that when failure to make the displacement inquiry is the sole violation, mandatory disbarment is not required.   In advancing these arguments, Cyberworld also points out the contradiction in Defendants' argument, which is premised on ascribing a mandatory meaning to the word "shall" in 8 U.S.C. § 1182(n)(2)(C)(i) and 20 C.F.R. § 655.810(d)(1), but a permissive meaning to the word "shall" in 8 U.S.C. § 1182(n)(2)(B).

While the Court recognizes an inconsistency on the surface in the differing interpretations of the word "shall," the Court concludes that this inconsistency is readily reconciled through <u>Brock</u>, which applies uniquely to the procedural issue of time limitations imposed on agency action where no statutory consequence for the failure to adhere to those time limitations is imposed.   In contrast, the penalty provisions at issue here

are substantive in nature, and there is no case law similar to
Brock which would require the word "shall" to take on a
permissive meaning in this context. Accordingly, the Court reads
the statute and regulations to provide for a mandatory penalty of
one-year debarment.

With respect to Cyberworld's argument that the secondary
displacement inquiry presupposes a knowledge requirement, the
Court finds no support for Cyberworld's position in the statutory
text or regulations.[3]  In fact, the regulations suggest that the
displacement inquiry is not limited to the immediate vendors or
clients of the H-1B employer. For example, the regulations
recognize that the secondary or other employer, "would often be
(but is not limited to) the client or customer of an H-1B
employer that is a staffing firm or a service provider which
offers the services of H-1B nonimmigrants under a contract," but
the regulation goes on to impose responsibility for the
nondisplacement obligation on only the H-1B employer.  20 C.F.R.
§ 655.738(d)(3) ("Only the H-1B employer placing the nonimmigrant
with the secondary employer is subject to the non-displacement

---

[3]     The Court does not read the statute's silence on this
issue to be an ambiguity, and therefore, the Court will not turn
to the legislative history of the statute to illuminate its
meaning.  However, even if the statute's silence creates an
ambiguity, the Court defers to the Secretary's interpretation
because it is "a permissible construction of the statute."
Chevron, 467 U.S. at 842-843; Kosak v. Aguirre, 518 F.3d 210, 213
(3d Cir. 2008).

13

obligation on the LCA, and only that employer is liable in an
enforcement action pursuant to subpart I of this part if the
other/secondary employer, in fact, displaces any of its U.S.
worker(s) during the applicable time period."). The regulations
further provide the H1-B employer with guidance for discharging
its inquiry obligation:

> (i) The H-1B employer is required to exercise due
> diligence and to make a reasonable effort to enquire
> about potential secondary displacement, through methods
> which may include (but are not limited to)--
>
>> (A) Securing and retaining a written
>> assurance from the other/secondary employer
>> that it has not and does not intend to
>> displace a similarly-employed U.S. worker
>> within the prescribed period;
>>
>> (B) Preparing and retaining a memorandum to
>> the file, prepared at the same time or
>> promptly after receiving the other/secondary
>> employer's oral statement that it has not and
>> does not intend to displace a similarly-
>> employed U.S. worker within the prescribed
>> period (such memorandum shall include the
>> substance of the conversation, the date of
>> the communication, and the names of the
>> individuals who participated in the
>> conversation, including the person(s) who
>> made the inquiry on behalf of the H-1B
>> employer and made the statement on behalf of
>> the other/secondary employer); or
>>
>> (C) including a secondary displacement clause
>> in the contract between the H-1B employer and
>> the other/secondary employer, whereby the
>> other/secondary employer would agree that it
>> has not and will not displace similarly-
>> employed U.S. workers within the prescribed
>> period.

20 C.F.R. § 655.738(d)(5)(i) (emphasis added). The option of

providing a contract clause to protect the H-1B dependent
employer further supports the interpretation that knowledge is
not a prerequisite to the inquiry requirement. In addition, the
Court points out that the regulations refer to "other/secondary
employer," the use of which also supports the interpretation that
the inquiry obligation is not limited to the vendor with whom the
H-1B dependent employer is directly dealing.

    In sum, the Court cannot conclude that the ALJ erred in his
interpretation that the penalty provisions of Section 1182 are
mandatory and that lack of knowledge is not a defense to a
failure to the statutory obligation to inquire as to
displacement. Accordingly, the Court will grant Defendants'
Motion For Summary Judgment.

## IV. CONCLUSION

    For the reasons described the Court will grant Defendants'
Motion for Summary Judgment.

    An appropriate Order will be entered.